Richard Simmons (admitted *pro hac vice*)
Lisa M. Lewis
Brian D. Murphy
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

Bruce A. Montoya (admitted *pro hac vice*)
John Karl Shunk (admitted *pro hac vice*)
Andrew Smith (admitted *pro hac vice*)
MESSNER & REEVES LLC
1430 Wynkoop St. No. 300
Denver, CO 80202
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

MAXCIMO SCOTT and JAY ENSOR on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

             -against-

CHIPOTLE MEXICAN GRILL, INC.,

             Defendant.

Case No. 12-CIV-8333(ALC)(SN)

---------------------------------------------------------------- x

**DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION, LEAVE FOR <u>INTERLOCUTORY APPEAL, AND STAY OF PROCEEDINGS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT ..........................................................................................................................4

I.      THE COURT SHOULD RECONSIDER THAT ASPECT OF THE ORDER THAT REQUIRES CHIPOTLE TO COLLECT E-MAIL ADDRESSES THAT IT DOES NOT CURRENTLY POSSESS..........................................................................4

      A.     Applicable Standard.........................................................................................5

      B.     Chipotle Should Not Be Required to Collect E-Mail Addresses for Potential Opt-Ins That It Does Not Already Have....................................................5

II.     THE COURT SHOULD CERTIFY THE ORDER FOR IMMEDIATE INTERLOCUTORY APPELLATE REVIEW ....................................................................8

      A.     Applicable Standard.........................................................................................9

      B.     The Order Presents Controlling Questions of Law...............................................9

      C.     The Order Presents a "Substantial Ground for a Difference of Opinion" .............13

      D.     An Immediate Appeal of the Order Will "Materially Advance the Ultimate Termination of the Litigation"............................................................................16

III.    THE COURT SHOULD STAY THE PROCEEDINGS PENDING ITS RESOLUTION OF THE INSTANT MOTION AND THE SECOND CIRCUIT'S DISPOSITION OF CHIPOTLE'S REQUESTED INTERLOCUTORY APPEAL..........18

CONCLUSION...................................................................................................................20

TABLE OF AUTHORITIES

Page(s)

Cases

In re 650 Fifth Ave.
    No. 08-CV-10934 (RJH), 2012 WL 363118 (S.D.N.Y. Feb. 2, 2012) ..................................17

Ahmed v. T.J. Maxx Corp.
    No. 10-CV-3609 (ADS) (ETB), 2013 WL 2649544 (E.D.N.Y. June 8, 2013) .............. passim

Ali v. New York City Health and Hosp. Corp.
    No. 11-CIV-6393 (PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ........................15, 19

Alonso v. Uncle Jack's Steakhouse, Inc.
    648 F. Supp. 2d 484 (S.D.N.Y. 2009) .........................................................................................6

Certain Underwriters at Lloyds of London v. Ill. Nat. Ins. Co.
    No. 09-CIV-4418 (LAP), 2013 WL 310383 (S.D.N.Y. Jan. 25, 2013)....................................17

City of New York v. Veretta U.S.A. Corp.
    524 F.3d 384 (2d Cir. 2008)........................................................................................................9

Consub Delaware LLC v. Schahin Engenharia Limitada
    476 F. Supp. 2d 305 (S.D.N.Y. 2007).........................................................................................9

Damassia v. Duane Reade, Inc.
    No. 04-CIV-8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ...................................15

In re Deloitte & Touche, LLP Overtime Lit.
    No. 11-CIV-2461 (RMB) (THK), 2012 WL 340114 (S.D.N.Y. Jan. 17, 2012)........................6

Fengler v. Crouse Health Found., Inc.
    No. 08-CV-1221 (DNH/DEP), 2009 WL 2045161 (N.D.N.Y. July 2, 2009) ...........................7

Fetrow-Fix v. Harrah's Entertainment, Inc.
    No. 10-CV-0560 (RLH) (PAL), 2011 WL 6938594 (D. Nev. 2011) ......................................11

Gambino v. Harvard Protection Svcs. LLC
    No. 10-CIV-0983 (PAC), 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011)....................................6

Gardner v. Western Beef Prop., Inc.
    No. 07-CV-2345 (NGG) (JMA), 2013 WL 1629299 (E.D.N.Y. Mar. 25, 2013)...................10

German v. Federal Home Loan Mortg. Corp.
    No. 93-CIV-6941 (NRB), 2000 WL 1006521 (S.D.N.Y. July 19, 2000)................................17

Gordon v. Kaleida Health
    2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) .........................................................................8

Gorey v. Maheim Svcs. Corp.
No. 10-CV-1132 (JSG), 2010 WL 5866258 (S.D.N.Y. Nov. 10, 2010) ...................................6

Griffith v. Fordham Fin. Mgmt., Inc.
No. 12-CIV-1117 (PAC), 2013 WL 2247791 (S.D.N.Y. May 22, 2013)...............................15

Guillen v. Marshalls of MA, Inc.,
841 F. Supp. 2d 797 (S.D.N.Y. 2012)............................................................................ *passim*

Gulf Oil Co. v. Bernard
452 U.S. 89 (1981)........................................................................................................7

Hamadou v. Hess Corp.
-- F. Supp. 2d --, 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013)................................................10

Ikikhueme v. Culinart, Inc., et al.
No. 13-CIV-293 (JMF) (S.D.N.Y. June 3, 2013) ....................................................................15

Indergit v. Rite Aid Corp.
No. 08-CIV-9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16, 2010) ..............................15

Jenkins v. The TJX Companies Inc.
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...........................................................................16, 19

Karlo v. Pittsburgh Glass Works, LLC
880 F. Supp. 2d 629 (W.D. Pa. 2012)......................................................................................11

Kuzinski v. Schering Corp.
614 F. Supp. 2d 247 (D. Conn. 2009)..............................................................................9, 13, 16

Limarvin v. Edo Rest. Corp.
No. 11-CIV-7356 (DAB), 2013 WL 371571 (S.D.N.Y. Jan. 31, 2013)...................................5

Lin v. Benihana Nat. Corp.
275 F.R.D. 165 (S.D.N.Y. 2011) ..............................................................................................6

MacGregor v. Farmers Ins. Exchange
No. 10-CV-3088, 2011 WL 2981466 (D.S.C. 2011)...............................................................11

Macpherson v. Firth Rixson Ltd.
No. 12-CV-6162 (CJS), 2012 WL 2522881 (W.D.N.Y. June 28, 2012)..................................5

Montanile v. NBC
216 F. Supp. 2d 341 (S.D.N.Y. 2002)......................................................................................5

Morangelli v. Chemed Corp.
275 F.R.D. 99 (E.D.N.Y. July 8, 2011) ...................................................................................5

Myers v. Hertz Corp.
    624 F.3d 537 (2d Cir. 2010)...................................................................................... *passim*

Nken v. Holder
    556 U.S. 418 (2009)...................................................................................................18

Ofori v. Central Parking Sys. of New York, Inc.
    No. 06-CV-0128 (KAM), 2010 WL 335498 (E.D.N.Y. Jan. 22, 2010) ....................................9

Pippins v. KPMG LLP
    No. 11-CIV-0377 (CM) (JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012).......................10, 12

Qi Zhang v. Bally Produce, Inc.
    No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274 (E.D.N.Y. Apr. 22, 2013).......................10

Ravenell v. Avis Budget Car Rental, LLC
    No. 08-CV-2113, 2010 WL 2921508 (E.D.N.Y. July 19, 2010).......................................14, 16

Retirement Bd. Of Policemen's Annuity and Ben. Fund v. Bank of New York Mellon
    No. 11-CIV-5459 (WHP), 2013 WL 593766 (S.D.N.Y. Feb. 14, 2013)...............................17

Riverkeeper, Inc. v. U.S. E.P.A.
    No. 06-CIV-12987 (PKC), 2007 WL 4208757 (S.D.N.Y. Nov. 26, 2007)............................20

Romero v. H.B. Automotive Group, Inc.
    No. 11-CIV-386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ...................................10

Rosario v. Valentine Ave. Discount Store, Co., Inc.
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) .........................................................................8

Ruiz v. Serco, Inc.
    10-CV-394 (BBC), 2011 WL 7138732 (W.D. Wis. 2011)....................................................11

Santiago v. Pinello
    647 F. Supp. 2d 239 (E.D.N.Y. 2009) .........................................................................9

Scott v. Family Dollar Stores, Inc.
    2012 WL 113657 (W.D.N.C. 2012) .............................................................................11

Stevens v. HMS Host Corp., et al.
    No. 10-CV-3571 (ILG) (VVP) (E.D.N.Y. June 15, 2012), aff'd at 2012 WL 4801784
    (E.D.N.Y. Oct. 10, 2012) ......................................................................................... *passim*

Sutherland v. Ernst & Young LLP
    No. 10-CIV-3332 (KMW) (MHD), 2012 WL 751970 (S.D.N.Y. Mar. 6, 2012)...................18

Vasquez v. Vitamin Shoppe Indus. Inc.,
    No. 10-CIV-8820 (LTS) (THK), 2011 WL 2693712 (S.D.N.Y. 2011)....................................12

Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd.
   956 F.2d 1245 (2d Cir. 1992)......................................................................................5

Wal-Mart Stores, Inc. v. Dukes
   131 S.Ct. 2541 (2011).............................................................................................10

Winfield v. Citibank, N.A.
   843 F. Supp. 2d 397 (S.D.N.Y. 2012)......................................................................15

Zamboni v. Pepe West 48th Street LLC
   No. 12-CIV-3157 (AJN) (JCF), 2013 WL 978935 (S.D.N.Y. Mar. 12, 2013)....................6, 7

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") respectfully submits this Memorandum of Law in Support of its Motion for Partial Reconsideration of the Court's June 20, 2013 Order (the "Order") and Granting Leave for Interlocutory Appeal and a Stay of these Proceedings.

## PRELIMINARY STATEMENT

Chipotle does not seek reconsideration of the entire Order granting Plaintiffs' Motion for Conditional Certification.  Instead, Chipotle submits that the Court committed "clear error" warranting reconsideration of that aspect of its Order that directed Chipotle to contact putative class members to obtain their personal e-mail addresses for production to Plaintiffs.  Chipotle submits that reconsideration is appropriate because neither of the parties briefed this unexpected issue to the Court prior to the argument.  However, it is now apparent that imposing such an intrusive burden on Chipotle is unsupported and would present a host of practical issues that counsel against continued enforcement of this aspect of the Court's order.  Accordingly, Chipotle submits that it should only have to produce e-mail addresses that are maintained electronically and that it previously obtained through voluntary disclosure by applicants.

Separately, Chipotle respectfully requests that the Court certify the entire Order for immediate interlocutory appeal so that the Second Circuit Court of Appeals can provide clear guidance on both the standard at conditional certification as well as the evidence a plaintiff must offer to meet it.  It has become overwhelmingly apparent that there is an irreconcilable disagreement among New York District Courts as to the evidence necessary to meet the "similarly situated" standard even when faced with nearly identical evidentiary records.  There is even disagreement among the District Courts as to what evidence may be appropriately considered.  Finally, although many litigants cite Myers v. Hertz Corp., for the proposition that the Second Circuit has adopted a "two-step" certification analysis in Fair Labor Standards Act

("FLSA") collective actions, the Second Circuit merely opined in dicta that the approach was "sensible," but did not reduce this approach to a holding. Given the proliferation of FLSA collective actions in this Circuit and the unjustifiably harsh financial costs borne by employers forced to engage in lengthy and expansive discovery, the time is ripe for the Second Circuit to offer clear guidance to parties and District Courts.

In addition, even assuming the Myers analysis is appropriate, the Order departs from that standard. The Order is the first in New York to grant conditional certification on the basis of a smattering of job postings without any evidence that such postings constitute a job description or that such job postings are applicable at all stores. The Order also relied on six declarations that contained verifiable inaccuracies and which otherwise set forth classic "unsupported assertions" concerning the alleged job duties of unidentified Apprentices working in unidentified stores, which the Second Circuit has held to be insufficient to support conditional certification. Even in Stevens v. HMS/Host Corp., relied on heavily by the Court during oral argument, the evidence consisted of at least four plaintiff depositions, a 30(b)(6) deposition in which various admissions were made concerning the uniformity of duties among class members, a uniform job description, and uniform training materials. No similar evidence was before this Court and it was therefore error to hold that Plaintiffs submitted evidence that they and putative class members were "similarly situated" with respect to a "common plan or policy that violates the law." Certification of the Order for immediate interlocutory appeal is therefore appropriate.

For each of these reasons, and the reasons set forth below, Chipotle respectfully requests that the Court: (i) reconsider the Order insofar as it requires Chipotle to affirmatively seek the e-mail addresses of putative class members and direct Chipotle to produce only those e-mail addresses that it maintains electronically and previously collected through voluntary disclosure by applicants; (ii) certify the Order for immediate interlocutory appeal to the Second Circuit; and

(iii) stay all proceedings pending the Court's decision on this Motion and, if Chipotle's request is granted, until the Second Circuit has ruled on Chipotle's anticipated application.

## STATEMENT OF FACTS

Plaintiff Maxcimo Scott filed a Complaint on behalf of himself and others similarly situated alleging violations of the FLSA and New York Labor Law on November 15, 2012.  See Docket No. 1.  On February 13, 2013, Plaintiff Scott filed an Amended Complaint adding Plaintiff Jay Ensor (together with Plaintiff Scott, "Plaintiffs") and alleging additional claims under Missouri state law.  See Docket No. 17.  On March 4, 2013, before Chipotle's Answer to the Amended Complaint was due, Plaintiff filed a Motion for Conditional Certification with respect to their FLSA claims.  See Docket Nos. 29-31.  In support of their Motion, Plaintiffs relied primarily upon declarations from Plaintiffs and four additional declarants and job postings from 53 of Chipotle's more than 1,400 stores.

On June 20, 2013, the Court held oral argument (the "Oral Argument").  The Court appeared to conclude that conditional certification was warranted because Plaintiffs established that they were similarly situated to other putative plaintiffs with respect to a "common plan or policy that violated the law" based upon Plaintiffs' "contention that the plaintiffs are potential victims of the unlawful policy of being misclassified as exempt employees when their duties were non-exempt." (June 20 Tr. 30:25-31:3).[1]  The Court further elaborated:

> The plaintiff's contention is not simply that there is a policy to classify these apprentices as exempt.  The plaintiff's contention is that there is a policy to classify these apprentices as exempt and then the next more important part of that in that that these apprentices, by their duties, were in fact not exempt under the FLSA….It is not that they're merely claiming that they have submitted declarations that I know you disagree with that contradict that description and indicate if you believe those declarations, that while the description indicates that

---

[1]     All references to "June 20 Tr." are to the transcript from the June 20, 2013 Oral Argument, attached to the Murphy Declaration as Exhibit A.

these duties are exempt, the reality of the apprentice's duties and what they did would classify them as non-exempt.

(June 20 Tr. 31:22-32:13).  The Court appeared to rely heavily on <u>Stevens v. HMS/Host Corp.</u>, No. 10-CIV-3571, 2012 WL 4801784 (E.D.N.Y. Oct. 10, 2012), and opined that the Court there granted conditional certification based upon "evidence [of] identical job classification and training materials across all assistant store managers nationwide and [] testimony from former assistant store managers across the country…regarding their actual job duties."[2]  (June 20 Tr. 50:6-52:23; 54:10-55:6).  Thus, the Court held:

> I find that the plaintiffs have met their low standard of proof and they've established that plaintiffs may be similarly situated to other individuals with respect to whether or not an FLSA violation has occurred.  Plaintiffs have made their modest factual showing.

(June 20 Tr. 57:22-58:1).  On June 20, 2013, the Court reduced its oral order to writing and granted Plaintiffs' Motion "for the reasons set forth on the record."  <u>See</u> Docket No. 68.

## <u>ARGUMENT</u>

## I.   THE COURT SHOULD RECONSIDER THAT ASPECT OF THE ORDER THAT REQUIRES CHIPOTLE TO COLLECT E-MAIL ADDRESSES THAT IT DOES <u>NOT CURRENTLY POSSESS</u>

During the June 20 Oral Argument, counsel to Chipotle advised the Court that it did not require Apprentices to provide e-mail addresses at the time of their hire or during their employment and that it did not otherwise collect personal e-mail addresses.[3]  The Court

---

[2]       Procedurally, the <u>Stevens</u> decision relied on by the Court involved the employer's objection to a Magistrate Judge's Report and Recommendation granting conditional certification.  <u>See id.</u> at *1.  A review of the Magistrate Judge's decision reveals that the evidence before the Court was markedly different, and significantly more substantive, than that found here.  <u>See</u> Murphy Decl. Ex. B.  Chipotle addresses these important differences in connection with its request for a short stay in Point III, <u>infra</u>.

[3]       Specifically, Mr. Murphy stated: "I don't believe any of the apprentices have any store-granted or store-authorized e-mails so we would be looking for, I assume at that point, personal e-mails and I don't think there is any requirement on the job application at Chipotle that they collect personal e-mail addresses."  (June 20 Tr. at 59:19-25).  This has since been confirmed, with one exception: certain former Apprentices, who have been promoted to the position of Restaurateur or higher, may now have Chipotle e-mail addresses.  Counsel to Plaintiff confirmed at the Oral Argument, however, that Plaintiffs do not want business e-mail addresses.  (June 20 Tr. 60:15-19).

nevertheless ordered Chipotle to affirmatively seek out the e-mail addresses of any potential opt-ins that were unknown to it for production to Plaintiffs. (June 20 Tr. at 76:23-25). Recognizing that this issue had not been briefed by the parties prior to the Oral Argument, Chipotle respectfully submits that this aspect of the Order was in "clear error" and warrants reconsideration.

### A.    Applicable Standard

A motion for reconsideration is appropriate where there is "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); Morangelli v. Chemed Corp., 275 F.R.D. 99, 123 (E.D.N.Y. July 8, 2011); FED. R. CIV. P. 59(E); LOCAL CIV. R. 6.3. Chipotle readily acknowledges that a motion for reconsideration is "not intended as a vehicle for a party dissatisfied with the Court's ruling…nor to secure a rehearing on the merits with regard to issues already decided," Montanile v. NBC, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002), and does not proceed on that basis.

### B.    Chipotle Should Not Be Required to Collect E-Mail Addresses for Potential Opt-Ins That It Does Not Already Have Electronically

There does not appear to be any authority in any federal district authorizing the imposition of the extreme burden on an employer of having to affirmatively obtain e-mail addresses from current and former employees for production to a plaintiff for purposes of facilitating notice. Instead, while Chipotle is unable to locate any New York District Court decisions opining on the issue directly, a survey of recent decisions reveals that New York courts typically direct an employer to produce only known e-mail addresses. See Limarvin v. Edo Rest. Corp., No. 11-CIV-7356 (DAB), 2013 WL 371571, at *4 (S.D.N.Y. Jan. 31, 2013) ("The Court finds that Plaintiffs are entitled to discovery of…last known e-mail addresses."); Macpherson v.

Firth Rixson Ltd., No. 12-CV-6162 (CJS), 2012 WL 2522881, at *5 (W.D.N.Y. June 28, 2012) (same); In re Deloitte & Touche, LLP Overtime Lit., No. 11-CIV-2461 (RMB) (THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) ("The Court further concludes that the production of personal telephone numbers and known e-mail addresses" is appropriate); Lin v. Benihana Nat. Corp., 275 F.R.D. 165, 178 (S.D.N.Y. 2011) (same); Gambino v. Harvard Protection Svcs. LLC, No. 10-CIV-0983 (PAC), 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) (same); Gorey v. Maheim Svcs. Corp., No. 10-CV-1132 (JSG), 2010 WL 5866258, at *6 (S.D.N.Y. Nov. 10, 2010) (same); Alonso v. Uncle Jack's Steakhouse, Inc., 648 F. Supp. 2d 484, 490 (S.D.N.Y. 2009) ("The Court finds that Plaintiffs are entitled to discovery of the names [and] last known e-mail addresses.").

This approach is sensible given the myriad of practical hurdles Chipotle would face in attempting to comply with the Court's current directive.  First, the putative class includes numerous former Apprentices who no longer work for Chipotle.  Chipotle does not have any reasonable means for contacting such individuals beyond "cold calling" using last known telephone numbers or corresponding using last known mailing addresses.  That is, Chipotle will undertake to contact former Apprentices with the same information Plaintiffs already have.  If Chipotle is successful, then Plaintiffs necessarily would have been as well, meaning that e-mail notice would be unnecessary.  It is likely that Chipotle will be unsuccessful obtaining e-mail addresses, which some former Apprentices may consider sensitive personal information, through this method.  As a result, Chipotle will be unable to provide Plaintiffs with a full complement of e-mail addresses.

Second, if Chipotle is forced to contact current and former Apprentices to obtain their e-mail addresses, Chipotle will necessarily have to discuss this action with such individuals. Communications with potential opt-ins are fraught with peril given the restrictions on the nature

of any communications between an employer and a putative opt-in.  <u>See</u> <u>Zamboni v. Pepe West</u> <u>48th Street LLC</u>, No. 12-CIV-3157 (AJN) (JCF), 2013 WL 978935, at *2-3 (S.D.N.Y. Mar. 12, 2013) (noting that communications with potential class members must be "litigation-neutral"); <u>see also</u> <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 100-102 (1981).  This concern is particularly acute here where the reason for the communication will necessarily invite questions concerning the action as well as the need for what some may consider sensitive personal information.  <u>See</u> <u>Zamboni</u>, 2013 WL 978935, at *3 (noting that communications between an employer and a current employee that is a member of the putative class "may be deemed inherently coercive."). Further, because Chipotle may not communicate with Apprentices who have opted-into the lawsuit, Chipotle will be forced to continuously monitor which Apprentices have filed consent forms to steer clear of this restriction.  <u>See</u>, <u>e.g.</u>, <u>Fengler v. Crouse Health Found., Inc.</u>, No. 08-CV-1221 (DNH/DEP), 2009 WL 2045161 at *2 (N.D.N.Y. July 2, 2009) (prohibiting communications with individuals that have already opted-into the litigation).  Despite its best efforts, Chipotle may run afoul of this restriction if there is a delay between the filing of a consent form and its filing on the docket.  Chipotle will be set up to fail.

Third, even if Chipotle was able to secure e-mail addresses and produce them to Plaintiffs, it will likely be sometime after Plaintiffs have already disseminated the notice by regular mail.  As a consequence, certain Apprentices will receive what is, in effect, a reminder notice.  The Court already rejected Plaintiffs' request to send a duplicative and unnecessary reminder notice during the Oral Argument.  (June 20 Tr. 61:7-8)  Receipt of a second notice may also invite confusion as to the timeframe within which a potential opt-in must respond unless the e-mail notice is revised, as a reminder notice would be, to account for the truncated notice period.  Any such revisions would have to be agreed to between the parties and submitted

to the Court for approval before being distributed by e-mail to the putative class resulting in the further expenditure of time and resources by the parties and the Court.

Finally, Chipotle submits that reconsideration is warranted on this discrete issue because receipt of notice by e-mail is a secondary consideration to receipt of notice by mail and is often times not even authorized by New York District Courts. See, e.g., Rosario v. Valentine Ave. Discount Store, Co., Inc., 828 F. Supp. 2d 508, 521-22 (E.D.N.Y. 2011); Gordon v. Kaleida Health, 2009 WL 3334784, at *10 (W.D.N.Y. Oct. 14, 2009); see also Stevens v. HMS Host Corp., et al., No. 10-CV-3571 (ILG) (VVP) (E.D.N.Y. June 15, 2012) (attached as Ex. B to the Murphy Declaration).   Accordingly, imposing a burden on Chipotle to affirmatively solicit current and former Apprentices for their e-mail addresses in circumstances so burdensome, rife with risk, and administratively difficult is unnecessary.

For each of these reasons, Chipotle respectfully requests that the Court reconsider its Order and direct Chipotle to produce only those e-mail addresses that it currently has in its possession electronically by virtue of voluntary disclosures by applicants.[4]

## II.   THE COURT SHOULD CERTIFY THE ORDER FOR IMMEDIATE INTERLOCUTORY APPELLATE REVIEW

The Court should certify the Order for immediate interlocutory appeal so that the Second Circuit Court of Appeals can decide whether to consider if conditional certification was appropriately granted.  Further, certification for immediate interlocutory appeal will provide the Second Circuit with an opportunity to provide direction to the District Courts as to the appropriate standard governing conditional certification and the evidence necessary to satisfy it.

---

[4]       Chipotle may have a small number of additional e-mail addresses for putative class members that provided one voluntarily on a resume or some other hard-copy document residing in their personnel file. The number is likely to be small since Chipotle did not require disclosure.  Given the size of the putative class, it would take hundreds of hours to review personnel files for e-mail addresses, with a small yield likely.  In light of the burden and marginal benefit, Chipotle respectfully submits that the Court should only order production of electronically maintained e-mails.

The lack of consistency in conditional certification orders issued by New York District Courts, often times issued in the face of nearly identical evidentiary records, reveals that the Second Circuit's dicta in Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010) requires further elaboration.

###### A.    Applicable Standard

Pursuant to 28 U.S.C. § 1292(b), a District Court can grant certification if: (i) the order appealed from presents a "controlling question of law;" (ii) there is "substantial ground for difference of opinion;" and (iii) it appears "an immediate appeal from the order will materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); City of New York v. Veretta U.S.A. Corp., 524 F.3d 384, 391 (2d Cir. 2008); Kuzinski v. Schering Corp., 614 F. Supp. 2d 247, 249 (D. Conn. 2009).  The decision to certify an order for interlocutory appeal rests within the discretion of the District Court.  See Ofori v. Central Parking Sys. of New York, Inc., No. 06-CV-0128 (KAM), 2010 WL 335498, at *2 (E.D.N.Y. Jan. 22, 2010).  Because each of the criteria for certification are met here, Chipotle respectfully requests that the Court certify the Order for immediate interlocutory appeal.

###### B.    The Order Presents Controlling Questions of Law

A controlling question of law is one that could be decided "quickly and cleanly without having to study the record," and one where "determination of the issue on appeal would materially affect the litigation's outcome."  Santiago v. Pinello, 647 F. Supp. 2d 239, 243 (E.D.N.Y. 2009); Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007).  There are a number of purely legal issues that the Second Circuit should address.

First, the Second Circuit can confirm whether the two-step certification inquiry is appropriate, which it has thus far described only as "sensible," and describe precisely what its

contours are.[5]  See Myers, 624 F.3d at 555.  Many courts in this District have recognized that what is often referred to as the holding of Myers is, in fact, dicta.  See Qi Zhang v. Bally Produce, Inc., No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *2 (E.D.N.Y. Apr. 22, 2013) ("In Myers, the Second Circuit offered some guidance, in dicta, on the analysis applicable at the first stage of a collective action."); Gardner v. Western Beef Prop., Inc., No. 07-CV-2345 (NGG) (JMA), 2013 WL 1629299, at *4 (E.D.N.Y. Mar. 25, 2013) ("In a recent decision, the Second Circuit offered some guidance, in dicta, on the analysis applicable at the notice stage of a collective action."); Hamadou v. Hess Corp., -- F. Supp. 2d --, 2013 WL 164009, at *7 (S.D.N.Y. Jan. 16, 2013) (same); Romero v. H.B. Automotive Group, Inc., No. 11-CIV-386 (CM), 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012) (same); Pippins v. KPMG LLP, No. 11-CIV-0377 (CM) (JLC), 2012 WL 19379, at *5 (S.D.N.Y. Jan. 3, 2012) (same).  Given the frequency with which FLSA collective actions are filed in this District, and the financial stakes involved for employers faced with defending such actions, there is a compelling need for confirmation as to the appropriate approach in this Circuit.

Second, in the context of setting forth the appropriate certification inquiry, the Second Circuit can determine whether Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011), which post-dated Myers, is applicable at the conditional certification stage as Chipotle argued in opposition to Plaintiff's Motion.  See Docket No. 45 at 21-23.  A growing number of Courts have recognized the potential utility of Dukes in the conditional certification analysis given the overlap between the "commonality" inquiry of Rule 23 and the "similarly situated" inquiry of

---

[5]     In Myers, the Second Circuit suggested that to warrant conditional certification, plaintiffs must demonstrate that they and members of the putative class are "similarly situated" with respect "to whether an FLSA violation has occurred."  Myers, 624 F.3d at 554.  To meet this standard, a plaintiff must make a "modest factual showing" that they and potential opt-ins "together were victims of a common policy or plan that violated the law."  Id.  This showing cannot be made with "unsupported assertions."  Id.

Section 216(b).  See Karlo v. Pittsburgh Glass Works, LLC, 880 F. Supp. 2d 629, 647 (W.D. Pa. 2012) (stating, in dicta, that Dukes is instructive in the context of collective action certifications); Scott v. Family Dollar Stores, Inc., 2012 WL 113657, at *4 (W.D.N.C. 2012) (holding that the "similarly situated" standard under Section 216(b) and the "commonality" standard under Rule 23(a)(2) are "nearly identical"); Fetrow-Fix v. Harrah's Entertainment, Inc., No. 10-CV-0560 (RLH) (PAL), 2011 WL 6938594, at *9 (D. Nev. 2011); Ruiz v. Serco, Inc., 10-CV-394 (BBC), 2011 WL 7138732, at *6-7 (W.D. Wis. 2011); MacGregor v. Farmers Ins. Exchange, No. 10-CV-3088, 2011 WL 2981466, at *4 (D.S.C. 2011).  It is an argument that is being advanced with increasing frequency and is therefore ripe for consideration by the Second Circuit.

Third, whatever certification standard it ultimately endorses, the Second Circuit can identify the modicum of evidence necessary to meet the standard.  As set forth in more detail in Point II.C., infra, District Courts in this Circuit have reached conflicting decisions as to the appropriateness of conditional certification when faced with nearly identical evidentiary records. This inconsistency is borne from a disagreement among the District Courts as to whether one or more declarations is sufficient to support certification, what the content of those declarations must be, whether deposition testimony is also necessary, whether generalizing as to the existence of other putative class members that may perform similar duties in a declaration constitutes an "unsupported assertion," whether there must be evidence of a policy or practice that compels or requires the performance of non-exempt duties, and what the necessary "representative sample" of evidence is, such as declarations from multiple states, to support certification on a nationwide basis.[6]  There is also disagreement concerning what type of evidence may even be considered.

---

[6]     For example, this Court appeared to distinguish Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS) (ETB), 2013 WL 2649544 (E.D.N.Y. June 8, 2013) during the Oral Argument on the ground that there were declarations from plaintiffs who worked in only two states, whereas here, there are declarations from plaintiffs who worked in seven states.  (June 20 Tr. 27:10-20; 50:6-52:23).  That two of fifty states is insufficient to support certification as in Ahmed, but seven of fifty states is sufficient to support certification as here, appears to be arbitrary

For instance, some District Courts have refused to consider defense declarations, while others have relied on defense declarations to find conditional certification inappropriate.  Compare Pippins, 2012 WL 19379, at *12 (refusing to consider defense declarations) with Vasquez v. Vitamin Shoppe Indus. Inc., No. 10-CIV-8820 (LTS) (THK), 2011 WL 2693712, at *3 (S.D.N.Y. 2011) (considering defense declarations).  An interlocutory appeal of the Order will provide the Second Circuit with the opportunity to eliminate this uncertainty and, as a result, reduce motion practice concerning conditional certification.

Finally, the Court can review the Order to determine whether conditional certification was properly granted.  There are a number of purely legal questions that may change this result:

1. Was conditional certification appropriately granted on the basis of job postings from less than five percent of Chipotle's stores without any evidence that such job postings constitute a job description or that the job postings are identical at all stores?

2. Did the declarations submitted by Plaintiffs constitute "unsupported assertions" insofar as they purported to testify to the duties performed by unnamed Apprentices working in unidentified stores?

3. Does the submission of declarations from declarants who worked in only seven states support conditional certification of a nationwide class?

4. Is it appropriate to consider defense declarations at the conditional certification stage?

5. Assuming the Second Circuit adheres to its dicta in Myers, is the aforementioned evidence sufficient to demonstrate that Plaintiffs and potential opt-ins are "similarly situated" with respect to a "common plan or policy that violates the law?"

Importantly, the Second Circuit can resolve these questions "quickly and cleanly without having to study the record," since discovery is in its infancy and the evidentiary record Plaintiffs' relied on to support their Motion was compiled before Chipotle even filed its Answer.  To be

---

– as even this Court initially appeared to suggest, (June 20 Tr. at 19:1-8; 26:10-27:1) – and could be clarified by the Second Circuit.

sure, the factual record referenced by this Court to support the Order consisted solely of: (i) six declarations that contain verifiable misrepresentations and set forth classic "unsupported assertions" concerning the duties allegedly performed by unidentified Apprentices in unidentified stores; and (ii) job postings from just 53 of Chipotle's more than 1,400 stores along with supposition that such postings constitute a job description applicable at all of Chipotle's stores. The Second Circuit can therefore easily determine whether this evidence is sufficient to demonstrate that a "common plan or policy that violates the law" exists and whether Plaintiffs and a nationwide collective of putative class members are "similarly situated" with respect thereto.

### C.     The Order Presents a "Substantial Ground for a Difference of Opinion"

The litany of divergent decisions in the District Courts on motions for conditional certification premised on similar factual records readily evidences that there is a "substantial ground for a difference of opinion." See, e.g., Kuzinski, 614 F. Supp. 2d at 251 (noting that differing results reached by district courts satisfies this prong of the analysis). For example, in Stevens, 2012 WL 4801784, at *2, the Court granted conditional certification of a nationwide class of Assistant Store Managers. The record relied on by the Court, developed after limited discovery, included four plaintiff depositions (representing four states), a Rule 30(b)(6) deposition, a job description applicable at all stores, and a uniform training manual applicable to all putative class members. See Murphy Decl. Ex. B at pp. 5-6. The plaintiffs testified that, despite a lawful job description requiring the performance of exempt duties, in practice they performed non-exempt duties in contravention of their classification. See id. at pp. 6-8. The Court thus held that:

> [U]niform training and job descriptions "make good business sense," but when
> combined with a "uniform classification" of these individuals as exempt, it leads

to the conclusion that they are "similarly situated" for FLSA collective action notice purposes.

See id. at p. 8.

Likewise, in Ravenell v. Avis Budget Car Rental, LLC, No. 08-CV-2113, 2010 WL 2921508 (E.D.N.Y. July 19, 2010), the Court conditionally certified a nationwide class of Shift Managers.  See id. at *4.  The record included a uniform job description and training materials together with the deposition testimony of the plaintiff and the opt-ins disavowing the performance of duties in accordance with the job description.  See id. at *3.  Following a brief analysis, the Court held that this evidence "support[ed] plaintiffs' position that they were 'subjected to an allegedly unlawful nationwide corporate policy."  Id. at *4.

In contrast, faced with similar evidence, other District Courts have denied conditional certification.   In Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797 (S.D.N.Y. 2012) ("Guillen II"), the plaintiff supported his motion with his declaration and those of four opt-in plaintiffs attesting to the performance of non-exempt duties in contravention of a uniform job description.  See id. at 799.  The Court characterized the evidence as "very thin" that could not "plausibly lead to the inference that ASMs nationwide are performing non-exempt tasks."  Id. at 800.  Continuing, the Court stated:

> Guillen's argument boils down to the proposition that any employee classified as exempt by a company that does business nationwide is entitled to approval of a collective action for all employees of that business – who may number in the thousands and be spread across 50 states – simply based on the employee's testimony that he was required to perform non-exempt tasks.  We reject this argument because it ignores the requirement that plaintiff show he is similarly situated to the employees he proposes to include in the collective action with respect to his claim that he performed non-exempt duties.

Id. at 801.  The Court thus denied conditional certification based upon evidence identical to that in Ravenell.  See id. at 803-04.

-14-

Likewise, in <u>Khan v. Airport Management Svcs., LLC</u>, No. 10-CIV-7735, 2011 WL 5597371 (S.D.N.Y. 2011), the Court declined to conditionally certify a nationwide class of Warehouse Managers. <u>See</u> <u>id.</u> at *5. The plaintiff relied on four declarations, "centralized job descriptions," and "the fact that decisions by defendants to classify managerial positions as exempt [were] made on a nationwide level." <u>Id.</u> at *4. The Court rejected this evidence as insufficient to meet even the "modest" burden. The Court held that because the job description itself was not illegal, the plaintiff was required to "show that he and the other [putative plaintiffs] were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." <u>Id.</u> The plaintiff declarations were insufficient to meet this standard because they consisted of "unsupported assertions" and "vague and conclusory statements." <u>Id.</u>[7]

The foregoing opinions and their competing evaluations of similar evidence is representative of the discord among the District Courts. Just as some District Courts have evaluated evidence consisting of uniform job descriptions and declarations/deposition testimony disavowing the performance of duties in conformity with those job descriptions and granted conditional certification – <u>Winfield v. Citibank, N.A.</u>, 843 F. Supp. 2d 397 (S.D.N.Y. 2012); <u>Indergit v. Rite Aid Corp.</u>, No. 08-CIV-9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16, 2010); <u>Damassia v. Duane Reade, Inc.</u>, No. 04-CIV-8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) – other District Courts have found the same evidence insufficient to support conditional certification – <u>Ikikhueme v. Culinart, Inc., et al.</u>, No. 13-CIV-293 (JMF) (S.D.N.Y. June 3, 2013); <u>Griffith v. Fordham Fin. Mgmt., Inc.</u>, No. 12-CIV-1117 (PAC), 2013 WL 2247791 (S.D.N.Y. May 22, 2013); <u>Ali v. New York City Health and Hosp. Corp.</u>, No. 11-CIV-

---

[7]      Notably, in both form and substance, the declarations found insufficient to support certification in <u>Khan</u> were nearly identical to those submitted by Plaintiffs here.

6393 (PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013); Jenkins v. The TJX Companies Inc.,

853 F. Supp. 2d 317 (E.D.N.Y. 2012).

That there is a "substantial ground for a difference of opinion" is most readily apparent

by reference to Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS) (ETB), 2013 WL 2649544

(E.D.N.Y. June 8, 2013).  There, Judge Spatt granted an employer's motion to vacate the report

and recommendation granting conditional certification issued by Magistrate Judge Boyle.  See

id. at *1.  Magistrate Judge Boyle found it significant that the plaintiff offered declarations from

putative class members in multiple states, whereas Judge Spatt found it insignificant.  See id. at

*12.  Magistrate Judge Boyle held that the plaintiff need only make a minimal evidentiary

showing of the existence of a "de-facto illegal policy in contravention of a facially legal policy,"

whereas Judge Spatt emphasized that "a plaintiff needed to produce significant evidence of a de-

facto illegal policy where an official legal policy exist[s]."  See id. at *13 (citing Jenkins, 853 F.

Supp. 2d at 323) (emphasis added).  Magistrate Judge Boyle found the decisions in Ravenell and

Stevens applicable, whereas Judge Spatt found them readily distinguishable.  See id. at *14.

Thus, two judges reviewing the same evidence on the same motion reached opposite conclusions

based upon their competing interpretations of the evidence sufficient to support conditional

certification.

Accordingly, given the variance in District Court decisions on motions for conditional

certification based upon similar evidence, this prong of the analysis is satisfied.  See, e.g.,

Kuzinski, 614 F. Supp. 2d at 251.

**D.    An Immediate Appeal of the Order Will "Materially Advance the Ultimate
        Termination of the Litigation"**

An immediate appeal of the Order will also "materially advance the ultimate termination

of the litigation."  "An immediate appeal is considered to advance the ultimate termination of the

litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." Retirement Bd. Of Policemen's Annuity and Ben. Fund v. Bank of New York Mellon, No. 11-CIV-5459 (WHP), 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013).  This requirement is also met if "it would speed the District Court's consideration of the merits of the parties' claims or defenses."  In re 650 Fifth Ave., No. 08-CV-10934 (RJH), 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012).

If the Second Circuit accepts Chipotle's anticipated application for an interlocutory appeal and rules in Chipotle's favor, hundreds if not thousands of potential opt-ins will no longer be entitled to participate in this case.  This will unavoidably circumscribe the scope of both documentary and testimonial discovery and advance and shorten the time for trial, which cannot be achieved if the parties are forced to wait until Chipotle makes a motion for decertification after the close of fact discovery.  See Certain Underwriters at Lloyds of London v. Ill. Nat. Ins. Co., No. 09-CIV-4418 (LAP), 2013 WL 310383, at *1 (S.D.N.Y. Jan. 25, 2013) (noting that avoiding time and expense of discovery materially advances the termination of the litigation); German v. Federal Home Loan Mortg. Corp., No. 93-CIV-6941 (NRB), 2000 WL 1006521, at *2 (S.D.N.Y. July 19, 2000) (holding that simplification of discovery satisfies this standard).

Moreover, direction from the Second Circuit on the appropriate certification analysis and evidentiary standards will likely have ramifications beyond this case and may curtail what is, at this point, standard yet time-consuming motion practice in FLSA cases.  With the benefit of clear guidelines, parties are likely to assess their prospects of success in seeking or opposing conditional certification.  Parties may, as a result, simply stipulate to the entry of a certification order, preserving the resources of both litigants and District Courts.

For each of these reasons, Chipotle respectfully requests that the Court certify the Order for immediate interlocutory appeal.

**III.   THE COURT SHOULD STAY THE PROCEEDINGS PENDING ITS RESOLUTION OF THE INSTANT MOTION AND THE SECOND CIRCUIT'S DISPOSITION OF CHIPOTLE'S REQUESTED INTERLOCUTORY APPEAL**

Chipotle requests a short stay of the proceedings pending the Court's resolution of the instant motion, the Second Circuit's disposition of Chipotle's request for an appeal and, if granted, the Second Circuit's disposition of the appeal.  The Court may order a stay in its discretion when: (i) the applicant has made a strong showing that he is likely to succeed on the merits; (ii) the applicant will be irreparably injured absent a stay; (iii) the issuance of the stay will not substantially injure other parties; and (iv) the public interest favors the granting of a stay. See Nken v. Holder, 556 U.S. 418 (2009); Sutherland v. Ernst & Young LLP, No. 10-CIV-3332 (KMW) (MHD), 2012 WL 751970, at *1 (S.D.N.Y. Mar. 6, 2012).  These standards are met here.

To begin, Chipotle is likely to succeed on the merits of the appeal in two respects.  First, as set forth in Point II.C., supra, there is widespread disagreement among the District Courts concerning the evidence necessary to support the granting of conditional certification.  The proliferation of FLSA litigation, and collective litigation in particular, counsel in favor of the Second Circuit reducing its dicta in Myers to a holding, detailing the contours of the analysis, and setting guidelines for the evidence that will suffice to meet the standard ultimately adopted.  Thus, if this Court certifies the Order for immediate interlocutory review, the Second Circuit is likely to allow an appeal to resolve these pressing issues.

Second, and more importantly, Chipotle will likely succeed in establishing that the evidentiary record upon which the Order was based is wholly insufficient to support certification. The Order is the first to conditionally certify a class where the plaintiffs did not present evidence of a job description applicable at all stores, but instead provided only a sampling of job advertisements from less than five percent of those stores and merely opined, without basis, that

-18-

such postings constituted job descriptions uniformly applicable nationwide.  In addition, the declarations relied on by the Order contain verifiable inaccuracies and set forth classic "unsupported assertions," nearly identical to those rejected in <u>Khan</u>.  The Order's reliance on <u>Stevens</u> is also misplaced given the wealth of evidence before the Court in <u>Stevens</u> that simply was not present here including at least four plaintiff depositions, a Rule 30(b)(6) deposition conceding a uniformity in primary duties, a uniform job description and uniform training materials.  Finally, the Order is irreconcilable with the holdings of numerous post-<u>Myers</u> decisions including <u>Guillen II</u>, <u>Ahmed</u>, <u>Vasquez</u>, <u>Jenkins</u>, <u>Ali</u>, <u>Khan</u> and <u>Ikikheme</u>.  As such, Chipotle is likely to succeed on the merits of its appeal.

Moreover, in the absence of a stay, Chipotle will be irreparably harmed.  Chipotle will be forced to proceed with expansive discovery at a substantial investment of time and resources. Multiple Courts have recognized that "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."  <u>Ahmed</u>, 2013 WL 2649544, at *10; <u>Guillen II</u>, 841 F. Supp. 2d at 803.  More importantly, once notice is issued to putative class members, as inappropriate as it may be, it is virtually impossible to "undo" the effect among its current workforce.

Plaintiffs cannot argue that the issuance of a stay would injure them or other putative class members.  Chipotle agrees to toll the statute of limitations for the claims of any putative class members with claims that are timely as of the Court's ruling on this motion for the duration of the stay.

Lastly, the public interest favors the granting of the requested stay.  The Second Circuit will have the opportunity to clarify the appropriate standard and evidence necessary to meet it on motions for conditional certification.  This will reduce inconsistent decisions and conserve

judicial resources.  See Riverkeeper, Inc. v. U.S. E.P.A., No. 06-CIV-12987 (PKC), 2007 WL 4208757, at *2 (S.D.N.Y. Nov. 26, 2007) ("There is a public interest in prompt adjudication but also in an orderly and efficient use of judicial resources.").  Accordingly, a short stay is appropriate.

## CONCLUSION

For each of the foregoing reasons, Chipotle respectfully submits that the Court should enter an Order: (i) modifying the June 20, 2013 Order insofar as it required Chipotle to affirmatively seek the e-mail addresses of putative class members not currently in its possession; (ii) certifying the June 20, 2013 Order for immediate interlocutory appeal; and (iii) entering a stay of the proceedings in this action until a determination on Chipotle's requested interlocutory appeal is reached.

Dated:  New York, New York
       July 5, 2013

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**


By:  /s/ Brian D. Murphy
     Richard Simmons (admitted *pro hac vice*)
     Lisa M. Lewis
     Brian D. Murphy
     30 Rockefeller Plaza
     New York, NY 10112-0015
     Tel:  (212) 653-8700
     Fax:  (212) 653-8701

     Bruce A. Montoya (admitted *pro hac vice*)
     John Karl Shunk (admitted *pro hac vice*)
     Andrew Smith (admitted *pro hac vice*)
     MESSNER & REEVES LLC
     1430 Wynkoop St. No. 300
     Denver, CO 80202
     Telephone:  (303) 623-1800
     Facsimile:  (303) 623-0552

     *Attorneys for Chipotle Mexican Grill, Inc.*