OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

April 28, 2014

**VIA ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

     *Re:*  *Scott v. Chipotle Mexican Grill Inc.*, No. 12 Civ. 8333 (ALC) (SN)

Dear Judge Netburn:

  We represent Plaintiffs in the above-referenced Fair Labor Standards Act ("FLSA") and state law class and collective action. Plaintiffs respectfully request a pre-motion conference to discuss their intended motion for a protective order regarding the scope of opt-in discovery. Although the parties have met and conferred extensively and agreed on several issues, Chipotle's "final" position on other issues is not fair or consistent with the intended efficiencies of the collective action mechanism.

  **I.**  **Relevant Procedural History and History of Negotiations Regarding Opt-In Discovery**

  On June 20, 2013, Judge Carter granted Plaintiffs' motion for conditional certification and notice pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"). ECF No. 68. Notice to class members issued on November 21, 2013, and 582 individuals have opted in to the case. Chipotle deposed the two current named plaintiffs on April 21 and 22, 2014. Plaintiffs took the fist portion of a Fed. R. Civ. P. 30(b)(6) deposition on April 18, 2014 in Denver, CO.

  On December 6, 2013, Plaintiffs asked Chipotle to meet and confer regarding the scope of opt-in discovery. Ex. B at 1 n.1. On December 23, 2013, Chipotle responded, expressing its unwillingness to discuss opt-in discovery until the close of the opt-in period. Ex. C at 1. Chipotle made a proposal regarding the opt-in discovery it would seek after Plaintiffs again prodded Chipotle to do so in a March 25, 2014 letter. Ex. D at 2-3.

  *Chipotle's Initial Proposal and Amended Initial Proposal*

  Chipotle initially proposed that it take 114 depositions (20 percent of the opt-in plaintiffs), that Chipotle unilaterally select all deponents, and that it serve written discovery requests on the 114 opt-ins it would depose. Ex. A. A few days later, on April 1, 2014, Chipotle reversed course and "clarif[ied]" that Chipotle would seek to serve written discovery on *all* opt-in plaintiffs, not just the opt-in plaintiffs it chose to depose. Ex. E. Chipotle also insisted that Plaintiffs agree to dismiss the claims of any opt-in who fails to participate in discovery. Ex. A.

The Honorable Sarah Netburn
April 28, 2014
Page 2 of 5

*Plaintiffs' Good Faith Response*

On April 9, 2014, in response to Chipotle's proposal, Plaintiffs proposed:

- Written discovery of 30 opt-in plaintiffs (chosen as follows: 10 selected by Chipotle, 10 selected by Plaintiffs, and 10 selected randomly);
- Depositions of 15 of the 30 opt-in plaintiffs (5 hours for first 5, 3 hours for the rest);
- Deponents travel to major cities within 30 miles; and
- If any opt-ins are unable or unwilling to participate, a replacement selected using the original selection method.

Ex. A. Plaintiffs also informed Chipotle that they would not consent to dismissal of opt-ins who do not participate because opt-in discovery should not be used as a mechanism to whittle down the class. *Id. See Saleem v. Corp. Transp. Grp., Ltd., Inc.*, No. 12 Civ. 8450 (S.D.N.Y.), ECF No. 378 (Sept. 8, 2013 Order attached as Ex. F) (denying defendant's request to dismiss opt-in plaintiffs who did not participate in discovery).

*Chipotle's "Final" Offer*

On April 16, 2014, Chipotle made what it deemed a "final offer" agreeing to limit depositions to 10 percent of opt-ins (approximately 57 individuals) but continued to insist on written discovery from *all* opt-in plaintiffs. Chipotle also insisted on unilateral control over the selection process and on requiring Plaintiffs to dismiss the claims of any opt-in plaintiff who fails to participate in discovery. Chipotle also stated for the first time that it would require a 3-month extension of the June 20, 2014 discovery deadline. In an email exchange of April 22 and 23, 2014, Chipotle confirmed that this was its final position. Notwithstanding that representation, in telephonic meet and confers on April 24 and 25, 2014, Chipotle agreed to compromise on some of its positions, but continued to insist on serving written discovery on all opt-in plaintiffs, and on striking opt-ins who do not respond.

## II.     Legal Framework for Opt-in Discovery

The Court should exercise its "broad discretion" to manage the opt-in discovery process.[1] *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011). Courts routinely limit the scope of opt-in discovery in order to preserve the efficiencies inherent in the collective action mechanism.[2]

---

[1]     In general, a court may limit the extent of discovery if the discovery sought is "unreasonably cumulative or duplicative," or the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

[2]     *See, e.g.*, *Sand v. Greenberg*, No. 08 Civ. 7840, 2009 WL 6540161, at *1 (S.D.N.Y. July 23, 2009) (rejecting defendants' request to depose 40 opt-in plaintiffs, and allowing 10 opt-in plaintiff depositions); *Scott v. Bimbo Bakeries USA, Inc.*, No. 10 Civ. 3154 , 2012 WL 6151734,

The Honorable Sarah Netburn
April 28, 2014
Page 3 of 5

An important goal of Court-managed opt-in discovery in FLSA collective actions is ensuring that the subset of opt-ins selected for discovery is "fairly representational" – in both quantity and quality.  See *Donovan v. Bel-Lock Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985). See also *Reich v.  S. New Eng. Telcomms. Corp.*, 121 F. 3d 58, 67-68 (2d Cir. 1997) ("a very small sample of *representational* evidence can suffice") (emphasis added); *Chao v. Vidtape,* 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), *aff'd in part and modified in part,* 2003 WL 21243085 (2d Cir. May 29, 2003) ("Testimony from a group of employee witnesses … is sufficient representation to calculate … wages owed to the enterprise's entire workforce.").[3]  To provide for a "fairly representational" set of deponents, the deponents should be selected randomly or, in the alternative, both parties should be permitted to participate in selecting the witnesses.[4]

Another important goal of Court-managed opt-in discovery is to prevent waste and inefficiency.  District courts should not permit excessive individualized discovery in class and collective actions because it is costly, inefficient, and inconsistent with the class and collective action device.[5]

---

at *6 (E.D. Pa. Dec. 11, 2012) (limiting written discovery to 10 percent of opt-in plaintiffs and depositions to no more than fifteen in total); *Smith v. Family Video Movie Club, Inc.*, No. 11 Civ. 1773, 2012 WL 4464887, at *2 (N.D. Ill. Sept. 27, 2012) (finding that Fed. R. Civ. P. 26 empowers the court with "broad discretion to curtail a party's access to relevant information" in a collective action).

[3]  This derives from the proof standard set forth in *Anderson v. Mt. Clemens Pottery Co.*, which allows proof of overtime hours "as a matter of just and reasonable inference." 328 U.S. 680, 687 (1946).

[4]  *See, e.g., Helmert v. Butterball, LLC*, No. 08 Civ. 342, 2011 WL 3157212, at *1 (E.D. Ark. July 27, 2011) (noting that the Court had authorized depositions of 20 randomly selected opt-in plaintiffs); *Mullins v. City of New York*, 523 F. Supp. 2d 339, 355 (S.D.N.Y. 2007) (describing random selection for identifying deponents), *rev'd on other grounds* 653 F.3d 104 (2d Cir. 2011); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) (limiting discovery of 1500 opt-ins to random representative sampling); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 232 (W.D.N.Y. 2006) (limiting post-notice discovery to a reasonable sampling); *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (finding discovery of all opt-ins in collective action "just too onerous" and holding that plaintiff opt-ins should be deposed on a representative basis by job category); *Abadeer v. Tyson Foods, Inc.*, No. 09 Civ. 125, ECF No. 120 (M.D. Tenn. Nov. 25, 2009) (limited discovery to 16 named plaintiffs and ordering that plaintiffs and defendant will each select eight) (order attached as Ex. G); *Mims v. Carrier Corp.*, 06 Civ. 206, ECF No. 140 (E.D. Tx. June 28, 2010) (order attached as Ex. H).

[5]  *See, e.g*, *Sand*, 2009 WL 6540161, at *1 (rejecting defendants' request to depose 40 opt-in plaintiffs, and allowing 10 opt-in plaintiff depositions); *Higueros v. New York State Catholic Health Plan, Inc.*, No. 07 Civ. 418, 2009 WL 3463765, at *2 (E.D.N.Y. 2009) (holding that unlimited discovery of opt-ins "would defeat the very purpose contemplated by Congress in authorizing these collective actions"); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, MDL No. 1743, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009) ("[defendants are] not entitled to individualized discovery from each and every opt-in Plaintiff"); *Geer v. Challenge Fin. Investors*

The Honorable Sarah Netburn
April 28, 2014
Page 4 of 5

### III. Proper Scope of Opt-in Discovery

#### A. *Written Discovery*

Chipotle insists on serving 3 interrogatories and 5 document requests on all 582 opt-in plaintiffs; and on serving 5 interrogatories and 10 document requests on opt-in plaintiffs it selects for deposition (i.e., 10 percent of opt-ins, or 57 opt-ins). Ex. A. This is excessive.

Plaintiffs agree that written discovery from opt-in plaintiffs should be limited to 3 interrogatories and 5 document requests, but only from a random sample of opt-in plaintiffs. *See Bel-Lock Diner, Inc.*, 780 F.2d at 1116; *S. New Eng. Telcomms. Corp.*, 121 F. 3d at 67-68 ("a very small sample of *representational* evidence can suffice") (emphasis added). Plaintiffs propose that Chipotle be allowed to serve interrogatories and document requests on 15 randomly-selected opt-ins and, in addition, document requests on the 57 plaintiffs whom it will depose.[6]

#### B. *Opt-in Depositions*

**1.   Number of Depositions**: In its "final offer," Chipotle insisted on deposing 10 percent of the opt-in plaintiffs (approximately 57 plaintiffs). Ex. A. Although Plaintiffs do not believe that 57 depositions are necessary or appropriate, they will agree to this number to avoid a dispute. The 57 depositions, however, should include any named plaintiff depositions. Plaintiffs respectfully request that the Court "so order" this agreement. In addition, Plaintiffs respectfully request that the Court order the parties to meet and confer after 15 depositions to discuss whether further depositions are necessary or appropriate.

**2.   Selection Process for Depositions**: The parties have compromised and agreed that Chipotle will select 50%, plaintiffs will select 25%, and 25% will be selected randomly. Plaintiffs' respectfully request that the Court "so order" this agreement.

**3.   Length of Depositions**: Chipotle seeks to take 7-hour depositions of the named plaintiffs, 5-hour depositions of approximately 28 opt-in plaintiff deponents; and 4-hour depositions of approximately 29 opt-in plaintiff deponents. Plaintiffs agree to 7-hour depositions of the named plaintiffs, but believe that all opt-in plaintiff depositions should be limited to 3 hours.[7] Given the sheer volume of depositions that Chipotle intends to take, and the fact that travel will likely be required for a large number of these depositions, limiting the depositions to 3

---

*Corp.*, No. 05 Civ. 1109, 2007 U.S. Dist. LEXIS 33499, at *13 (D. Kan. May 4, 2007) (granting protective orders against noticed depositions for all 272 named and opt-in plaintiffs).

[6]   *See, e.g., Scott*, 2012 WL 6151734, at *6 (limiting written discovery to 10 percent of opt-in plaintiffs and depositions to no more than fifteen in total).

[7]   Courts routinely limit the time for individual opt-in depositions. *See, e.g., Allen v. Sears Roebuck and Co.*, No. 07 Civ. 11706, 2010 WL 2243967, at *1 (E.D. Mich. June 4, 2010) (3 hour limit each); *Byard v. Verizon W. Virginia, Inc.*, No. 11 Civ. 132, 2013 WL 5535913, at *5 (N.D. W. Va. Oct. 7, 2013) (3 hour limit each).

The Honorable Sarah Netburn
April 28, 2014
Page 5 of 5

hours makes sense because it will allow the parties to hold multiple depositions per day. Plaintiffs propose that the 3-hour time limit should be a presumed limit that Chipotle may exceed if it has a good-faith need to do so on a case-by-case basis.

       **4.**     **Deposition Location**: The parties agree that deponents located within 30 miles of a major city should travel to such city for deposition, and deponents located further away be dealt with on a case by case basis. Ex. A. Plaintiffs propose that for opt-in plaintiffs who must travel more than 30 miles, the deposition may be taken by video at the option of the opt-in plaintiff.

### C. *Dismissal of Opt-in Plaintiffs Who Do Not Participate*

Chipotle insists that Plaintiffs agree not to oppose any motion by Chipotle to strike the consents of opt-ins who fail to participate in discovery. Ex. A. Opt-in plaintiffs who do not participate in discovery should not be dismissed from the case, as long as Chipotle is able to take the number of depositions the Court orders and obtains the amount of written discovery the Court orders. Discovery on opt-in plaintiffs should not be a mechanism to cull the collective. *See, e.g., Ayers v. SGS Control Svs., Inc.*, No. 03 Civ. 9077, 2007 WL 646326, at *13 (S.D.N.Y. Feb. 27, 2007) (declining to dismiss opt-ins because, among other reasons, Defendants were not prejudiced since they had taken discovery from other opt-in Plaintiffs).[8]

### D. *Extension of Discovery*

Chipotle asserts that it needs a 3-month discovery extension to conduct the broad opt-in discovery it seeks and to obtain discovery from the new named plaintiffs whom Plaintiffs seek to add in their pending motion to amend, ECF Nos. 726, 727, 728. Although Plaintiffs disagree that such a long discovery extension is necessary, to avoid a dispute, Plaintiffs will not oppose Chipotle's request for a three-month discovery extension.[9]

                                                          Respectfully submitted,

                                                          Justin M. Swartz

Enclosures
cc: All counsel (via ECF)

---

[8]   *See also Saleem v. Corp. Transp. Grp., Ltd., Inc.*, No. 12 Civ. 8450 (S.D.N.Y.), ECF No. 378 (attached as Ex. F) (denying defendant's request to dismiss opt-in plaintiffs who did not participate in discovery); *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2008 WL 7863502, at *7 (S.D.N.Y. May 9, 2008); *Hinterberger v. Catholic Health Sys., Inc.*, 284 F.R.D. 94, 104-05 (W.D.N.Y. 2012); *Geer*, 2007 U.S. Dist. LEXIS 33499, at *13.

[9]   Plaintiffs, of course, respectfully reserve their right to seek a discovery extension if Chipotle is unable to produce documents and witnesses that Plaintiffs request within the time allotted.