**SheppardMullin**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
212.653.8701 main fax
www.sheppardmullin.com

212.634.3059 direct
bmurphy@sheppardmullin.com

May 2, 2014

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Scott v. Chipotle Mexican Grill, Inc.*; 12-CV-8333 (ALC) (SN)

Dear Judge Netburn:

As the Court is aware, we represent defendant Chipotle Mexican Grill, Inc. ("Chipotle") in the above-referenced action. We write in accordance with the Court's Order dated April 28, 2014 and in response to Plaintiffs' pre-motion conference request letter concerning the scope of discovery from Opt-In Plaintiffs in this case. For the reasons set forth below, Plaintiffs' preemptive request for a protective order and attempt to limit Chipotle from taking the discovery to which it is entitled should be rejected.

**Relevant Background**

Plaintiffs filed a Complaint on November 15, 2012 alleging claims for overtime premised on alleged misclassification under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). See Docket No. 1. On February 13, 2013, Plaintiffs amended the Complaint to add overtime claims under Missouri Labor Law ("MLL"). See Docket No. 17. The Court conditionally certified a collective action under the FLSA on June 20, 2013, pursuant to which notice was distributed. See Docket No. 68. On April 25, 2014, Plaintiffs filed a Motion to Amend the First Amended Complaint to add claims arising under Colorado, Washington, North Carolina and Illinois state law. See Docket Nos. 726-28. The Court ordered fact discovery to close on June 20, 2014. See Docket No. 95.

Chipotle has taken discovery with respect to the two Named-Plaintiffs, including completing each of their depositions on April 21 and 22. Chipotle, in turn has produced 10,464 pages of discovery in response to Plaintiffs' discovery requests and has produced a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) for a full-day deposition to address the 25 categories of testimony Plaintiffs identified. The parties have since attempted to negotiate the scope of discovery to be taken from the approximately 582 Opt-In Plaintiffs that have joined this action to date. The parties were able to reach a number of agreements in this

# **Sheppard**Mullin

The Honorable Sarah Netburn
May 2, 2014
Page 2

regard, including that: (i) Chipotle will be entitled to depose 10% of the Opt-In Plaintiffs, as well as the existing Named-Plaintiffs and any new Named-Plaintiffs joined into the action if Plaintiffs' Motion to Amend the Amended Complaint is granted;[1] (ii) Chipotle will select 50% of the Opt-In Plaintiffs for deposition, Plaintiffs will select 25%, and the remaining 25% will be randomly selected; (iii) any Opt-In Plaintiffs who do not appear for deposition will be replaced by the same selection method that identified the non-appearing Opt-In Plaintiff; and (iv) Opt-In Plaintiffs selected for deposition living within 30 miles of a major city must travel to such city for the depositions, with other Opt-In Plaintiffs being dealt with on a case-by-case basis. The parties continue to disagree with respect to the following issues: (i) the number of Opt-In Plaintiffs that Chipotle may serve written discovery (Document Requests and Interrogatories) on; (ii) the length of the depositions of Opt-In Plaintiffs; and (iii) the procedure for and impact of an Opt-In Plaintiff's failure to participate in discovery.

## SCOPE OF WRITTEN DISCOVERY FROM OPT-IN PLAINTIFFS

Chipotle has proposed serving a maximum of three Interrogatories and five Document Requests on all Opt-In Plaintiffs, and a maximum of five Interrogatories and ten Document Requests on all Opt-In Plaintiffs selected for deposition. Plaintiffs have proposed that Chipotle be limited to serving Document Requests and Interrogatories on only 15 randomly-selected Opt-In Plaintiffs and only Document Requests on all Opt-In Plaintiffs that are deposed. Plaintiffs' preemptive attempt to limit Chipotle's ability to serve targeted written discovery on all Opt-In Plaintiffs is without merit for three reasons.

First, and most importantly, Plaintiffs fail to acknowledge Chipotle's due process rights and the import of the Supreme Court's decisions in Wal-Mart v. Dukes, 131 S.Ct. 2541 (2011) and Comcast v. Behrend, 133 S.Ct. 1426 (2013) on Chipotle's Opt-In Plaintiff discovery proposal, the anticipated certification briefing by the parties, and an eventual trial. In Dukes the Supreme Court made it clear that an employer is entitled to litigate its individualized defenses even in the face of putative class claims and that this right may render certification inappropriate. See 131 S.Ct. at 2561 ("[A] class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.").[2] In Comcast, in turn, the Supreme Court made it clear that the damages sought in a putative class action must be susceptible to class-wide proof to warrant certification. See 133 S.Ct. at 1435.

---

[1]     Plaintiffs seem to suggest that the 10% deposition threshold should include those of the two Named-Plaintiffs that already occurred as well as any additional Named-Plaintiffs added to the case. To the extent this is Plaintiffs' intent, Chipotle disagrees with the proposal since the subject of this letter and the subject of the parties' negotiations have been the scope of Opt-In Plaintiff discovery. Thus, Chipotle intends to depose 10% of the Opt-In Plaintiffs, exclusive of any depositions of the Named-Plaintiffs.

[2]     Chipotle's right to litigate individual defenses is true with respect to the putative state law claims under Rule 23 and under the FLSA's two-step certification process. See Indergit v. Rite Aid Corp., No. 08-CIV-9361, 293 F.R.D. 632, 639 (S.D.N.Y. 2013) ("In determining whether to decertify, courts look to the following factors…defenses available to defendants which appear to be individual to each plaintiff.").

# **SheppardMullin**

Although Dukes and Comcast are in their infancy, particularly as applied in the wage and hour context, a number of Courts have made their importance in wage and hour misclassification cases clear. As the Hon. Paul Oetken recently opined in a putative class and collective overtime action brought on behalf of a collective of Assistant Store Managers:

> [W]here an employer fails to keep computerized or otherwise accessible records, contacting employees individually might be required in a wage and hour case, even where those employees' theory of liability – lack of payment for overtime wages in violation of state law – tracks completely its theory of damages – payment of time and one-half. Accordingly, those individual damages accounts might indeed predominate over the common questions linking the class together for liability purposes.

* * * * *

> [C]ertification of both liability and damages together may nevertheless prove untenable in light of Dukes, as due process concerns imbue defendants with the right to defend each claim when damages are too individualized.

Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 587-88 (S.D.N.Y. 2013) (refusing to certify class as to damages and noting possibility of individualized damages issues overwhelming common issues related to liability such that certification of liability class may also be inappropriate); see also Indergit, 293 F.R.D. at 659.[3]

Under this Supreme Court precedent, Chipotle is entitled to explore its individualized defenses with respect to each Opt-In Plaintiff's claims as a matter of right lest its due process entitlements be violated. See Jacob, 293 F.R.D. at 589 ("[D]ue process concerns imbue defendants with the right to defend each claim when damages are too individualized."). These defenses may bear directly on liability issues, such as whether a given Opt-In Plaintiff primarily performed managerial duties or not, or directly on damages issues, such as whether a given Opt-In Plaintiff worked more than 40 hours in any workweek. Chipotle cannot know whether the individualized defenses it is entitled to litigate even exist with respect to any given Opt-In Plaintiff, however, until it takes discovery from each of the individuals against whom it is entitled to present such individualized defenses. Plaintiffs' request that the Court preemptively undermine Chipotle's right in this regard flies in the face of the Supreme Court's rejection of the

---

[3]     Chipotle acknowledges that Comcast and Dukes arose in the context of Rule 23 certification motions. However, a growing number of courts have recognized the utility of Dukes and Comcast in the FLSA certification analysis. See, e.g., See Karlo v. Pittsburgh Glass Works, LLC, 880 F. Supp. 2d 629, 647 (W.D. Pa. 2012); Scott v. Family Dollar Stores, Inc., 2012 WL 113657, at *4 (W.D.N.C. 2012) (holding that the "similarly situated" standard under Section 216(b) and the "commonality" standard under Rule 23(a)(2) are "nearly identical"); Fetrow-Fix v. Harrah's Entertainment, Inc., 2011 WL 6938594, at *9 (D. Nev. 2011); Ruiz v. Serco, Inc., 2011 WL 7138732, at *6-7 (W.D. Wis. 2011); MacGregor v. Farmers Ins. Exchange, 2011 WL 2981466, at *4 (D.S.C. 2011). In any event, Rule 23 is implicated directly in this case in at least New York and Missouri.

# **Sheppard**Mullin

The Honorable Sarah Netburn
May 2, 2014
Page 4

"trial by formula" approach and would, in fact, require Chipotle to present its defenses at trial on the basis of a sample of allegedly representative evidence.[4]  See Duane Reade, 293 F.R.D. at 588 ("Nevertheless, reading Dukes and Comcast together, it appears that there are due process implications for defendants, which render the so-called "trial by formula" approach, whereby representative testimony is utilized to determine damages for an entire class, inappropriate where individualized issues of proof overwhelm damages calculations.").  In light of these fundamental due process considerations, Chipotle respectfully submits that it should be entitled to serve limited and targeted discovery requests on all Opt-In Plaintiffs.

Second, Plaintiffs paradoxically fail to acknowledge that they have requested discovery concerning not just all Opt-In Plaintiffs, but all Apprentices, whether they opted-in to the action or not.  Specifically, Plaintiffs served a Third Request for the Production of Documents on March 31 seeking extensive information about the employment circumstances of each and every Opt-In Plaintiff and each and every Apprentice Chipotle has employed in any state at any time since November 15, 2006.[5]  See Ex. A.  Plaintiffs served a Fourth Request for the Production of Documents on April 17 seeking extensive documents related to all Opt-In Plaintiffs while continuing to insist that only a small portion of Opt-In Plaintiffs should be the subject of discovery.  See Ex. B.  Some of the more notable examples include Plaintiffs' overbroad and burdensome requests for payroll information for every Opt-In Plaintiff, personnel files for all Opt-In Plaintiffs, and work schedules for all Opt-In Plaintiffs.  It is the epitome of hypocrisy for Plaintiffs to contend that they are entitled to such expansive discovery to support their claims, but Chipotle is not entitled to discrete and targeted discovery to defend against each of their claims.  Plaintiffs' objection to the scope of Opt-In Plaintiff discovery is simply without merit given their own approach in this case.

Third, all Opt-In Plaintiffs have been notified of and agreed that they might be subject to discovery obligations by virtue of their voluntarily joining this lawsuit.  Specifically, the Notice stated:

> You may be asked to provide documents, to sit for a deposition and/or to testify at trial.

See Ex. C.  Thus, Plaintiffs cannot contend that Opt-In Plaintiffs' participation in discovery would constitute unfair surprise or that it was otherwise not contemplated.  And, as stated elsewhere, Chipotle intends to serve just three Interrogatories and five Document Requests targeted to elicit responses concerning any defenses Chipotle may be entitled to assert against an

---

[4]     If there were any doubt as to the nature of Plaintiffs' limiting proposal, Plaintiffs expressly state that they are proposing "fairly representational" discovery to calculate the "wages owed to the enterprise's entire workforce," a proposal that directly conflicts with the Supreme Court's rejection of the "trial by formula" approach.  See Docket No. 729 at 3.  Each of the cases Plaintiffs cite in support of this position pre-date Dukes and Comcast.

[5]     The Court's December 20, 2013 Order denied Plaintiffs' request for substantially similar information related to the more limited group of approximately 3,400 Apprentices eligible to join the FLSA collective at that time.  See Docket No. 410.

# **SheppardMullin**

individual Opt-In Plaintiff to both defend against the merits of that claim and highlight the impropriety of certification.  Although Plaintiffs casually refer to alleged "inefficiencies" that will arise, the practical outcome is that each Opt-In Plaintiff will be burdened for only a few moments of their time in supplying responses bearing on their right to participate in a lawsuit that they voluntarily joined.

For each of these reasons, Chipotle respectfully requests that the Court permit it to: (i) serve a maximum of three Interrogatories and five Document Requests on all Opt-In Plaintiffs; and (ii) a maximum of five Interrogatories and ten Document Requests on all Opt-In Plaintiffs selected for deposition.

## LENGTH OF DEPOSITIONS OF OPT-IN PLAINTIFFS

Chipotle proposes that the depositions of all Named-Plaintiffs last for seven hours, that depositions of the first ten Opt-In Plaintiffs last for five hours, and that all remaining depositions last four hours.[6]  Plaintiffs propose that the depositions of all Opt-In Plaintiffs be limited to three hours.  Irrespective of the time limit set, the parties agree that the depositions may exceed the agreed-upon limit if Chipotle has a good-faith need to do so.

Given the cost of depositions, Chipotle has every intention of completing each deposition as quickly as possible and in less than five or four hours where possible.  However, our experience in these cases has demonstrated that there is an efficiency that can be achieved after the first ten or so depositions, such that the bulk of the depositions thereafter can ultimately be limited to four hours and likely completed in an even shorter time frame.  However, to avoid the necessity of raising disputes with the Court each and every time Chipotle exceeds the three hours that Plaintiffs have proposed, Chipotle submits that a four-hour limit is appropriate after the first ten Opt-In Plaintiff depositions occur to accommodate the efficiency curve.[7]

In addition, Chipotle requests the five-hour length for depositions of the first ten Opt-In Plaintiffs to account for the need to take discovery from Opt-In Plaintiffs that may also be part of a putative class in New York or Missouri.  Chipotle intends to target Opt-In Plaintiffs in these states for the five-hour depositions to maximize the value and efficiency of the deposition.  An

---

[6]     Plaintiffs represent that Chipotle proposes that 50% of the Opt-In Plaintiff depositions last for five hours.  See Docket No. 729 at 4.  To the contrary, during the parties' meet and confer session on April 25, 2014, Chipotle communicated that it would only need five hours for the first ten Opt-In Plaintiff depositions and four hours for all Opt-In Plaintiff depositions thereafter.

[7]     While Chipotle hopes it will not become necessary, the Court may be asked to intervene if the efficiency in which depositions are taken is impeded again.  During the 30(b)(6) deposition in Denver, Plaintiffs' counsel took extended breaks which materially impeded the pace of the deposition.  Further, and perhaps more troubling, during the course of that deposition, Plaintiffs' counsel physically obstructed Chipotle's counsel from entering the conference room where the deposition of the 30(b)(6) witness was taking place following a break. While the obvious attempt at physical intimidation occurred while the parties were off the record and was disputed when Chipotle's counsel insisted on noting it for the record, it cannot be overlooked and may be raised with the Court in another context. Chipotle maintains that the time it seeks to depose Opt-In Plaintiffs is reasonable, particularly given such disruptive behavior.

# **SheppardMullin**

additional hour (or two hours if Plaintiffs' three-hour proposal is accepted) for this limited group asserting multiple claims is not unreasonable.

Accordingly, Chipotle respectfully requests that the Court permit five hours for the first ten Opt-In Plaintiff depositions, seven hours for any Named-Plaintiff depositions, and four hours for all remaining Opt-In Plaintiff depositions.

## FAILURE TO PARTICIPATE IN WRITTEN DISCOVERY

Plaintiffs prematurely raise to the Court the parties' disagreement concerning the consequences of an Opt-In Plaintiff failing to participate in discovery. Specifically, Plaintiffs will not agree "not to oppose any motion by Chipotle to strike the consents of opt-ins who fail to participate in discovery." Put another way, Plaintiffs intend to oppose any motion by Chipotle in this regard, which Chipotle concedes is their right. While Chipotle raised the issue to avoid future disputes, no such motion is pending rendering Plaintiffs' reference to the issue now in a letter concerning a requested protective order premature and making it is unclear what relief Plaintiffs are seeking from the Court. To the extent Plaintiffs request that Chipotle be precluded from making such a motion entirely, Plaintiffs have not offered any authority in that regard, and there is none.

When and if that motion must be filed, Chipotle notes that the dismissal of the claims of an Opt-In Plaintiff that fails to participate in discovery is routine and not, as Plaintiffs suggest, rare. See, e.g., Enriquez v. Cherry Hill Market Corp., No. 10-CV-5616 (FB)(MDG), 2012 WL 6626008, at *1 (E.D.N.Y. Dec. 20, 2012); Gordon v. Kaleida Health, No. 08-CV-378S(F), 2013 WL 2250431, at *4-6 (W.D.N.Y. May 21, 2013); Johnson v. Wave Comm. GR LLC, No 10-CV-346 (DNH/ATB), 2013 WL 992511, at *4 (N.D.N.Y. Jan. 29, 2013); Roach v. T.L. Cannon Corp., No. 10-CV-0591 (TJM/DEP), 2012 WL 2178924, at *4 (N.D.N.Y. May 15, 2012); Hamelin v. Faxton St. Luke's Healthcare, No. 08-CV-1219 (DNH/DEP), 2010 WL 3430406, at *4 (N.D.N.Y. July 19, 2010); Seever v. Carrols Corp., 528 F. Supp. 2d 159, 165 (W.D.N.Y. 2007). The propriety of such a result is only confirmed by Dukes rejection of the "trial by formula" approach, which by implication, would necessitate the dismissal of claims of any Opt-In Plaintiff who refuses to participate in discovery and denies Chipotle its right to litigate its individual defenses against such individual. This is, however, a matter to be addressed when and if Chipotle files such a motion.

## EXTENSION OF DISCOVERY

By Order dated October 8, 2013, the Court ordered fact discovery to close five months after the close of the Opt-In Plaintiff notice period, or on or about June 20, 2014. See Docket No. 95. Although the parties appear to disagree concerning which parties' conduct necessitates an extension of the discovery deadline, the parties agree that an extension until September 19, 2014 is ultimately appropriate and therefore respectfully request that the Court order the same.[8] Chipotle must note, however, that Plaintiffs have repeatedly represented that the parties

---

[8]     Chipotle respectfully reserves its right to seek a further discovery extension, if necessary.

**Sheppard**Mullin

contemplated the extension solely to accommodate discovery of the four putative class claims Plaintiffs seek to add by virtue of their Motion for Leave to File the Second Amended Complaint. See Docket No. 727 at 3-4 ("Chipotle asserted for the first time that it would require a three-month extension of discovery in light of Plaintiffs' motion to amend."). To the contrary, the requested extension is necessary to accommodate both the potential new claims as well as discovery, including ESI and Opt-In Plaintiff discovery, as to the existing FLSA, NYLL and MLL claims, and to address Plaintiffs' burdensome and overbroad discovery requests, the most recent set of which was served on April 17, 2014.

We look forward to discussing this matter further with the Court during a telephonic conference. In the interim, should Your Honor have any questions, please do not hesitate to contact us.

Respectfully submitted,

Brian D. Murphy
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:     All Counsel of Record

# EXHIBIT A

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Naomi B. Sunshine
Melissa L. Stewart
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, admitted *pro hac vice*
Keith M. Stern, admitted *pro hac vice*
1515 S. Federal Hwy, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MAXCIMO SCOTT and JAY ENSOR on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**CHIPOTLE MEXICAN GRILL, INC.,**<br><br>**Defendant.** | **No. 12 Civ. 8333 (ALC) (SN)** |

### PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York, Plaintiffs request that Defendant, Chipotle Mexican Grill, Inc., produce the documents and electronically-stored information described below for inspection and copying within 30 days of the date of these requests at the offices of Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York 10016, unless otherwise indicated herein.

Defendant is also required to serve written responses within 30 days of the date of these requests.

## DEFINITIONS

For purposes of this Request for Production of Documents, the following definitions apply:

a.  "Documents and Electronically Stored Information" (hereinafter "Documents" or "ESI") means any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the original and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to: correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other Communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectus, financial statements, schedules, affidavits, contracts, cancelled checks, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind, including without limitations, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, mechanical or electrical recordings or representations of any kind (including without limitations tapes, cassettes, disks, recording); electronic mail and information about electronic mail (including message contents, header information, metadata fields discussed below (and also referred to as "load file fields"), and logs of electronic mail system usage; all databases (including all records and fields and structural information in such databases); all word processing, spreadsheets, presentations or other program files; and any other ESI.

b.  "Person" includes corporations, partnerships, and other business or legal entities, as well as individuals.

c.  "Plaintiffs" refers to all Named and Opt-in Plaintiffs who have filed consents to join this lawsuit.

d.  "Defendant" and "you" and "your" refers to the Defendant, CHIPOTLE MEXICAN GRILL, INC., however substituted or amended.

e.  "Apprentice" refers to Apprentices, Apprentice Managers, and persons in similar positions with comparable duties, however titled.

f.  "Related to," "relating to," "concerning," "regarding" or "pertaining" each mean explaining, containing, corresponding to, evidencing or discussing, or to be in any way legally, logically, or factually connected with the matter inquired of, whether directly or indirectly.

2

g.  Reference to "this lawsuit" shall mean the above-styled action, *Scott et al. v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (S.D.N.Y.).

h.  "Communication" means any oral or written statement, dialogue, colloquy, discussion or conversation, and also means any transfer of thoughts or ideas between person by means of documents and includes any transfer of data from one location to another by electronic or similar means.

i.  If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

j.  "Each" shall mean each and every.

k.  "And" and "or" are used herein both in the conjunctive and disjunctive.

l.  Terms not defined herein shall have their plain and ordinary meaning, except that terms of art shall be understood to have the same meaning attributed to them by the U.S. Department of Labor.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.  Unless otherwise indicated, all requests pertain to the entirety of the period between November 15, 2006 and the present, and should be updated regularly.

2.  With respect to each document produced, Plaintiffs request that Defendant specifies the Request(s) to which the document is responsive.

3.  Pursuant to Fed. R. Civ. P. 34, each document shall be produced as it is kept in the usual course of business and shall be organized and labeled with the categories in these requests.

4.  At or before the filing of the complaint in this case, Defendant was under a duty to preserve documents and ESI related to this matter. Accordingly, Plaintiffs expect that Defendant and its counsel will prevent the destruction or alteration of any documents requested

3

herein by the operation of any electronic information system (routine or otherwise) and hereby put Defendant on notice that any destruction or alteration of such documents, or any action that makes such documents more difficult or expensive to access and use, without completing a meet and confer process with Plaintiffs' counsel regarding such action, will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f). If Defendant does not believe that it can reasonably comply with this instruction, Plaintiffs request that Defendant contact Plaintiffs, in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

5.      Unless otherwise indicated, Plaintiffs request that Defendant produce responsive documents pursuant to the agreements reached by the parties after their meet and confer discussions about the preferred format for such production. Plaintiffs request that Defendant not unilaterally select an electronic format for production.

6.      Alternatively, if Defendant does not wish to meet and confer about the format for production of documents, Plaintiffs request such documents as follows:

a.      Documents should be provided on DVD, CD or external hard drive. The volume of the ESI will determine whether documents are provided on CD, DVD or hard drives.

b.      Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

c.      Defendant may compress and/or encrypt the production archive for delivery purposes, but should provide passwords for any compressed archives under separate cover, along with a description of any software needed to decrypt the archive.

d.      A cover letter or fact sheet should be included describing in as much detail as practicable the contents of the collection.

e.      Documents created or stored electronically should not be produced in hard copy. All ESI should be produced with the metadata requested below.

f.      All documents should be produced as they are ordinarily maintained, for example, organized by custodian or source.

g.      All productions should be free of computer viruses.

h.      All deliverables should include a metadata load file that is a .DAT or .TXT format with standard Concordance delimiters, and contain all fields outlined below. Image load files should be provided in .OPT format.

i.      Documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example, with a placeholder.

j.      All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a

separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

        k.     Paper documents should be scanned and processed to TIFF files. If a document is available to Defendant both in paper and electronic form, Plaintiffs request that Defendant produce the requested document in electronic form, as described herein.

        l.     For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

        m.     Documents originating in spreadsheet or presentation programs such as Excel or Powerpoint should be produced in native form. For deliverables containing native files such as Excel and PowerPoint files, a native file path/link should be included in the metadata load file. Additionally a Bates-stamped TIFF placeholder should be included in the production and reflected in the image load file. The number of native files per folder should be limited to 1,000 files.

        n.     In the event that responses to these requests contain ESI from proprietary or non-proprietary databases, the parties will meet and confer to discuss the fields contained in the database and the best means of producing responsive information from them, such as running reports or queries. In the event that ESI will be produced directly from a database, the ESI should be produced in a comma delimited file or in Excel format, with all formulae and records of irregular or manual manipulation of data reflected. If proprietary software is required to access or use documents in their native format, please supply such software. A written list of all database fields and a reasonable description for each field, or a "database dictionary" should be included.

o. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

p. For deliverables containing multi-media files, the following production format should be used:

i. Audio Data Files: Audio data files should be produced in audio Windows Media Audio ("WMA") format or "MP3" format.

ii. Video Files: Video files should be produced in Audio/Video Interleaved ("AVI") format.

iii. Image Files: If providing color images, files should be produced in "JPEG/JPG" format with a resolution of 150 to 300 DPI.

q. Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email and attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email and attachment |
| **PARENTID** | First bates number of parent email. (Populate in child(ren) record(s) only) | Emails and attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **FAMLYRNG OR ATTACHRNG** | Family (Range of bates related documents (i.e email & attachment) - this field will be populated for all records in the family.) | Hard copy, edoc, emails and attachments (populated through processing) |
| **BEGATTACHID** | First BATES of attachment(s) | Hard copy, edoc, emails and attachments (populated through processing) |
| **ENDATTACHID** | Last BATES of family (populate on families only) | Hard copy, edoc, emails and attachments (populated through processing) |
| **CUSTODIAN** | Person from whom file was obtained | Hardcopy (if coded), edoc, email and attachment (populated through processing) |
| **PRPERTIES OR RCRDTYPE** | Record Type – will be either "email", "attachment", "edoc" or "hardcopy" | |
| **FROM** | Email Author | Emails (populated through processing) |
| **TO** | Recipient | Emails (populated through processing) |
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **SUBJECT** | Subject | Emails (populated through processing) |
| **DOCTITLE** | Document Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc or attachment (populated through processing) |
| **DOCDATE** | Document Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email and Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Date sent 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc or attachment (populated through processing) |

8

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| TIMESVD | Time saved 00:00:00 AM/PM | (populated through processing) |
| DATERCVD | Date received/accessed, format MM/DD/YYYY | Emails (populated through processing) |
| TIMERCVD | Time received 00:00:00 AM/PM | (populated through processing) |
| PAGECOUNT | Document page count | Edoc or attachment (populated through processing) |
| ATTILE | File name/Attachment Name | Electronic files and/or attachments (populated through processing) |
| APPLICAT | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files and/or emails, attachments (populated through processing) |
| FOLDERID OR ORIGFOLDERPATH OR FILEPATH | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. Path of email in mailbox (populate for email attachments also); Filepath of edocs or scanned docs (if requested) | Electronic files and/or emails, attachments (populated through processing) |
| DOCLINK or NATIVEFILE | Active link reflecting current filepath back to the native file | Electronic files and/or emails, attachments (populated through processing **and only provided if receiving native files**.) |
| FILEEXTEN | In the event of attachments or emails, this will enable us to search by document type.  Sample contents: *PST, MSG, PDF, DOC, PPT, HTM*, etc. etc. | Electronic files and/or emails, attachments (populated through processing) |
| AUTHOR | In the event of attachments, this field contains the 'author' of the document | For Hard Copy docs (if coded) or electronic files and or attachments (populated through processing) |
| HASH | Hash value for de-dupe | Electronic files and/or attachments (populated through processing) |
| HEADER | Contains all the routing information from the header section of an email message | Emails (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|------------|-------------|----------|
| **TEXT** | Text of email in the event of emails; text of attachment in the event of attachments;  We recognize that some attachments will not have text that can be properly rendered into text (JPGs, GIFs, Flash Files, etc.), but for those flat files such as PDFs which do not have extractable text, we would like them OCR'd, and the contents placed in the TEXT field. | For Hardcopy, electronic files, emails and attachments. |

7.      With respect to each request, Defendant is requested to provide all documents in Defendant's possession, custody, or control that are known to Defendant or that Defendant can locate or discover through reasonably diligent efforts.

8.      If Defendant cannot respond or produce documents in response to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons for Defendant's inability to respond or produce documents in response to the remainder of the Requests.

9.      If, to Defendant's knowledge, documents responsive to one or more requests were never in Defendant's possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

10.      If any responsive document was formerly in Defendant's possession, custody, or control but has been eliminated from Defendant's possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

a.      The basis for withholding such document;

b.      A generic description of the document being withheld;

10

    c.  The date the information contained in the document was learned or the document created;

    d.  The identity of the individual(s) who learned the information or authored the document;

    e.  The date the document was transmitted or otherwise made available to anyone; and

    f.  The specific Request(s) to which the withheld document relates.

  11.  If requested documents are maintained in a file, folder, or other container, please produce the file, folder, or other container, or a complete copy of same, with the documents. For ESI that originates in a digital folder structure, please produce the folder names and relationships as metadata.

  12.  The scope of your search for ESI shall include all forms of ESI collection, preservation, transmission, communication and storage, including:

    a.  All ESI generated and maintained in the ordinary course of business, including ESI stored on mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored;

    b.  Distributed data or removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including email hosted by Internet service providers, handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, and flash memory drives;

    c.  Forensic copy or backup ESI, including archive and backup data tapes and discs;

11

        d.       Network ESI, including voice mail systems, email servers, ISP servers, network servers, cloud servers and fax servers;

        e.       Legacy ESI, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

        f.       Metadata, i.e., information regarding a particular data set which describes how, when and by whom it was collected, created, accessed and modified and how it is formatted; and

        13.     Unless otherwise indicated in writing, the failure to produce any documents in response to any request herein means that such documents do not exist, or are not in Defendant's possession, custody, or control, or the possession, custody, or control of Defendant's agents or anybody acting on Defendant's behalf.

        14.     To the extent documents responsive to these requests have already been produced by Defendant, state the unique identifier (e.g., MD 5 Hash value) or Bates number for each responsive document that was previously produced.

## REQUESTS

1.   Computerized and machine-readable data containing the following information for all Apprentices employed by Defendant during the relevant period, including: (1) unique employee number or other identifier; (2) name; (3) work location(s), including restaurant number, city, and state, throughout the relevant period; and (4) start and end dates of employment for each location.

2.   Computerized and machine-readable data containing the following information for all former Service Managers and Kitchen Managers employed by Defendant during the relevant period (but who are no longer employed by Chipotle), including: (1) unique employee number or other identifier; (2) name; (3) title; (4) work location(s), including restaurant number, city, and state throughout the relevant period; (5) start and end dates of employment for each location and each relevant position; (6) last known address(es); (7) last known e-mail addresses; and (8) last known telephone number(s).

3.   Computerized and machine-readable data containing the following information for all former General Managers and/or Restaurateurs employed by Defendant during the relevant period (but who are no longer employed by Chipotle), including: (1) unique employee number or other identifier; (2) name; (3) title; (4) all work location(s) supervised, including restaurant number, city, and state, throughout the relevant period; (5) start and end dates for supervision of each location; (6) last known address(es); (7) last known e-mail addresses; (8) last known telephone number(s); and (9) for Restaurateurs, the Restaurateur's designated Restaurateur level(s) throughout the relevant time period.

4.   Computerized and machine-readable data containing the following information for all former Field Support Leaders (including, but not limited to, Team Directors, Area Managers, Team Leaders, Apprentice Team Leaders, and all other similar job titles) employed by Defendant during the relevant period (but who are no longer employed by Chipotle), including: (1) unique employee number or other identifier; (2) name; (3) title; (4) all work location(s) supervised, including restaurant number, city, and state, throughout the relevant period; (5) start and end dates for supervision of each location; (6) last known address(es); (7) last known e-mail address; and (8) last known telephone number(s).

5.   Computerized and machine-readable data containing the following information for the relevant period for each Chipotle location nationwide, including: (1) the assigned restaurant number, city, and state for each location; (2) whether General Manager(s) and/or Restaurateur(s) were assigned to supervise each location; (3) the time period(s) that each General Manager and/or Restaurateur was assigned to supervise each location; (4) the name and title of each General Manager and/or Restaurateur who was assigned to supervise each location, including designated Restaurateur level; (5) if any General Manager and/or Restaurateur supervised multiple locations, the locations (including store number, city, and state) under simultaneous supervision; (6) the number of Apprentices assigned to each location throughout the relevant period; and (7) the number and type of

13

hourly managers, including Kitchen Manager(s) and Service Manager(s), assigned to each location throughout the relevant period.

Dated: New York, New York
March 31, 2014

**OUTTEN & GOLDEN LLP**

By:

_____
Justin M. Swartz

Justin M. Swartz
Ossai Miazad
Naomi B. Sunshine
Melissa L. Stewart
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, *pro hac vice*
Keith M. Stern, *pro hac vice*
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

*Attorneys for Plaintiffs*

14

# EXHIBIT B

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Naomi B. Sunshine
Melissa L. Stewart
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, admitted *pro hac vice*
Keith M. Stern, admitted *pro hac vice*
1515 S. Federal Hwy, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **MAXCIMO SCOTT and JAY ENSOR on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**CHIPOTLE MEXICAN GRILL, INC.,**<br><br>**Defendant.** | **12 Civ. 8333 (ALC) (SN)** |

### PLAINTIFFS' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs MAXCIMO SCOTT and JAY ENSOR, on behalf of themselves and all others

similarly situated, pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Rule

26.3 of the United States District Courts for the Southern and Eastern Districts of New York,

hereby request that Defendant, CHIPOTLE MEXICAN GRILL, INC., produce the below

requested documents according to the Federal Rules of Civil Procedure.

1

## DEFINITIONS

For purposes of this Request for Production of Documents, the following definitions apply:

a.  **"Documents and Electronically Stored Information"** (hereinafter **"Documents"** or **"ESI"**) means any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the original and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but limited to: correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other Communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectus, financial statements, schedules, affidavits, contracts, cancelled checks, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind, including without limitations, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, mechanical or electrical recordings or representations of any kind (including without limitations tapes, cassettes, disks, recording); electronic mail and information about electronic mail (including message contents, header information, metadata fields discussed below (and also referred to as "load file fields"), and logs of electronic mail system usage; all databases (including all records and fields and structural information in such databases); all word processing, spreadsheets, presentations or other program files; and any other ESI.

b.  **"Person"** includes corporations, partnerships, and other business or legal entities, as well as individuals.

c.  **"Opt-In Plaintiffs"** refers to all individuals who have filed Consents to Join as Opt-In Plaintiffs in this action.

d.  **"Plaintiffs"** refers to all plaintiffs in this case, including named plaintiffs MAXCIMO SCOTT and JAY ENSOR and all **Opt-in Plaintiffs**.

e.  **"Defendant"** and **"you"** and **"your"** refers to the Defendant, CHIPOTLE MEXICAN GRILL, INC., however substituted or amended.

f.  **"Apprentice"** refers to Apprentices, Apprentice Managers, Apprentice Restaurant Managers and persons in similar positions with comparable duties, however titled.

g.  **"Related to,"** **"relating to,"** **"concerning,"** **"regarding"** or **"pertaining"** each mean explaining, containing, corresponding to, evidencing or discussing, or to be in any way

legally, logically, or factually connected with the matter inquired of, whether directly or indirectly.

h.      Reference to "**this lawsuit**" shall mean the above-styled action, *Scott et al. v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (S.D.N.Y.).

i.      "**Communication**" means any oral or written statement, dialogue, colloquy, discussion or conversation, and also means any transfer of thoughts or ideas between person by means of documents and includes any transfer of data from one location to another by electronic or similar means.

j.      If not expressly stated, "**control**" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

k.      "**Each**" shall mean each and every.

l.      "**And**" and "**or**" are used herein both in the conjunctive and disjunctive.

m.      Terms not defined herein shall have their plain and ordinary meaning, except that terms of art shall be understood to have the same meaning attributed to them by the U.S. Department of Labor.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.      Unless otherwise indicated, **all** requests pertain to the entirety of the period between November 15, 2006 and the present, and should be updated regularly ("relevant time period").

2.      With respect to each **document** produced, **Plaintiffs** request that **Defendant** specifies the Request(s) to which the **document** is responsive.

3.      Pursuant to Fed. R. Civ. P. 34, **each document** shall be produced as it is kept in the usual course of business and shall be organized and labeled with the categories in these requests.

3

4.      At or before the filing of the complaint in this case, **Defendant** was under a duty to preserve documents and ESI related to this matter.  Accordingly, **Plaintiffs** expect that **Defendant** and its counsel will prevent the destruction or alteration of any **documents** requested herein by the operation of any electronic information system (routine or otherwise) and hereby put **Defendant** on notice that any destruction or alteration of such **documents**, or any action that makes such **documents** more difficult or expensive to access and use, without completing a meet and confer process with **Plaintiffs'** counsel regarding such action, will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f).  If **Defendant** does not believe that it can reasonably comply with this instruction, **Plaintiffs** request that **Defendant** contact **Plaintiffs,** in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

5.      Unless otherwise indicated, **Plaintiffs** request that **Defendant** produce responsive **documents** pursuant to the agreements reached by the parties after their meet and confer discussions about the preferred format for such production.  **Plaintiffs** request that **Defendant** not unilaterally select an electronic format for production.

6.      Alternatively, if **Defendant** does not wish to meet **and** confer about the format for production of **documents**, **Plaintiffs** request such **documents** as follows:

a.      **Documents** should be provided on DVD, CD **or** external hard drive. The volume of the ESI will determine whether **documents** are provided on CD, DVD or hard drives.

b.      **Documents** should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

4

c.      **Defendant** may compress **and/or** encrypt the production archive for delivery purposes, but should provide passwords for **any** compressed archives under separate cover, along with a **description** of **any** software needed to decrypt the archive.

d.      A cover letter **or** fact sheet should be included **describing** in as much detail as practicable the contents of the collection.

e.      **Documents** created **or** stored electronically should not be produced in hard copy. All **ESI** should be produced with the metadata requested below.

f.       **All** documents should be produced as they are ordinarily maintained, for example, organized by custodian or source.

g.      **All** productions should be free of computer viruses.

h.      **All** deliverables should include a metadata load file that is a .DAT or .TXT format with standard Concordance delimiters, **and** contain all fields outlined below. Image load files should be provided in .OPT format.

i.       **Documents** should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  The Bates number should be consistent across the production, contain no special characters, **and** be numerically sequential within a given **document**. Attachments to **documents** should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the **documents** to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example, with a placeholder.

j.       All unredacted **documents** should be provided with complete document-level extracted text files.  In the event a **document** contains text which is to be redacted, OCR

5

text files should be provided for **any** un-redacted portions of the **documents**.  Document-level OCR text files should be provided for any unredacted portions of redacted **documents and** for **all** hard copy scanned documents.  The extracted full text **and/or** OCR text for **all** deliverables should be in separate document-level TXT files.  These TXT files may either be provided in a separate folder **or** included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

k.       Paper **documents** should be scanned and processed to TIFF files.  If a **document** is available to **Defendant** both in paper **and** electronic form, **Plaintiffs** request that **Defendant** produce the requested **document** in electronic form, as **described** herein.

l.       For email collections, the parent-child relationships (the association between emails **and** attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

m.      **Documents** originating in spreadsheet or presentation programs such as Excel or Powerpoint should be produced in native form.  For deliverables containing native files such as Excel and PowerPoint files, a native file path/link should be included in the metadata load file. Additionally a Bates-stamped TIFF placeholder should be included in the production **and** reflected in the image load file. The number of native files per folder should be limited to 1,000 files.

n.       In the event that responses to these requests contain **ESI** from proprietary or non-proprietary databases, the parties will meet and confer to discuss the fields contained in the database and the best means of producing responsive information from them, such as running reports or queries.  In the event that **ESI** will be produced directly from a database, the **ESI** should be produced in a comma delimited file **or** in Excel format, with all formulae **and** records

of irregular **or** manual manipulation of data reflected. If proprietary software is required to access **or** use **documents** in their native format, please supply such software. A written list of all database fields **and** a reasonable description for each field, or a "database dictionary" should be included.

        o.     **All** images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers **and** confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder **and** the number of TIFF files per folder should be limited to 1,000 files.

        p.     For deliverables containing multi-media files, the following production format should be used:

        i.     Audio Data Files: Audio data files should be produced in audio Windows Media Audio ("WMA") format **or** "MP3" format.

        ii.     Video Files: Video files should be produced in Audio/Video Interleaved ("AVI") format.

        iii.     Image Files: If providing color images, files should be produced in "JPEG/JPG" format with a resolution of 150 to 300 DPI.

        q. Metadata to be produced: The following metadata fields should be produced for **each document** to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. **All** requests should be read to include a request for **all** metadata associated with **all documents** responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email and attachment |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **ENDDOC** | Ending bates | Hardcopy, edoc, email and attachment |
| **PARENTID** | First bates number of parent email. (Populate in child(ren) record(s) only) | Emails and attachments (populated through processing) |
| **FAMLYRNG OR ATTACHRNG** | Family (Range of bates related documents (i.e email & attachment) - this field will be populated for all records in the family.) | Hard copy, edoc, emails and attachments (populated through processing) |
| **BEGATTACHID** | First BATES of attachment(s) | Hard copy, edoc, emails and attachments (populated through processing) |
| **ENDATTACHID** | Last BATES of family (populate on families only) | Hard copy, edoc, emails and attachments (populated through processing) |
| **CUSTODIAN** | Person from whom file was obtained | Hardcopy (if coded), edoc, email and attachment (populated through processing) |
| **PRPERTIES OR RCRDTYPE** | Record Type – will be either "email", "attachment", "edoc" or "hardcopy" | |
| **FROM** | Email Author | Emails (populated through processing) |
| **TO** | Recipient | Emails (populated through processing) |
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **SUBJECT** | Subject | Emails (populated through processing) |
| **DOCTITLE** | Document Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc or attachment (populated through processing) |
| **DOCDATE** | Document Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email and Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Date sent 00:00:00 AM/PM | Emails (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc or attachment (populated through processing) |
| **TIMESVD** | Time saved 00:00:00 AM/PM | (populated through processing) |
| **DATERCVD** | Date received/accessed, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMERCVD** | Time received 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | Document page count | Edoc or attachment (populated through processing) |
| **ATTILE** | File name/Attachment Name | Electronic files and/or attachments (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files and/or emails, attachments (populated through processing) |
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. Path of email in mailbox (populate for email attachments also); Filepath of edocs or scanned docs (if requested) | Electronic files and/or emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files and/or emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments or emails, this will enable us to search by document type. Sample contents: *PST, MSG, PDF, DOC, PPT, HTM*, etc. etc. | Electronic files and/or emails, attachments (populated through processing) |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the document | For Hard Copy docs (if coded) or electronic files and or attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| HASH | Hash value for de-dupe | Electronic files and/or attachments (populated through processing) |
| HEADER | Contains all the routing information from the header section of an email message | Emails (populated through processing) |
| TEXT | Text of email in the event of emails; text of attachment in the event of attachments;   We recognize that some attachments will not have text that can be properly rendered into text (JPGs, GIFs, Flash Files, etc.), but for those flat files such as PDFs which do not have extractable text, we would like them OCR'd, and the contents placed in the TEXT field. | For Hardcopy, electronic files, emails and attachments. |

7.     With respect to each request, **Defendant** is requested to provide all **documents** in **Defendant's** possession, custody, or control that are known to **Defendant** or that **Defendant** can locate or discover through reasonably diligent efforts.

8.     If **Defendant** cannot respond or produce **documents** in response to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons for **Defendant's** inability to respond or produce **documents** in response to the remainder of the Requests.

9.     If, to **Defendant's** knowledge, documents responsive to one or more requests were never in **Defendant's** possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

10.     If **any** responsive **document** was formerly in **Defendant's** possession, custody, or control but has been eliminated from **Defendant's** possession in any way, including, but not

limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

      a.      The basis for withholding such **document**;

      b.      A generic description of the **document** being withheld;

      c.      The date the information contained in the document was learned or the document created;

      d.      The identity of the individual(s) who learned the information or authored the document;

      e.      The date the document was transmitted or otherwise made available to anyone; and

      f.      The specific Request(s) to which the withheld document relates.

11.      If requested **documents** are maintained in a file, folder, **or** other container, please produce the file, folder, **or** other container, **or** a complete copy of same, with the **documents**. For ESI that originates in a digital folder structure, please produce the folder names and relationships as metadata.

12.      The scope of your search for **ESI** shall include **all** forms of **ESI** collection, preservation, transmission, communication **and** storage, including:

      a.      **All ESI** generated and maintained in the ordinary course of business, including **ESI** stored on mainframe computers **or** local and network computers or drives or servers or any other media or location where **ESI** can be or is stored;

      b.      Distributed data **or** removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic **or** floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including email hosted by

11

Internet service providers, handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, **and** flash memory drives;

      c.     Forensic copy **or** backup **ESI**, including archive **and** backup data tapes **and** discs;

      d.     Network **ESI**, including voice mail systems, email servers, ISP servers, network servers, cloud servers **and** fax servers;

      e.     Legacy **ESI**, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded **or** obsolete;

      f.     Metadata, i.e., information regarding a particular data set which describes how, when and by whom it was collected, created, accessed **and** modified **and** how it is formatted; **and**

    13.     Unless otherwise indicated in writing, the failure to produce **any documents** in response to **any** request herein means that such **documents** do not exist, **or** are not in **Defendant's** possession, custody, or control, **or** the possession, custody, **or** control of **Defendant's** agents or anybody acting on **Defendant's** behalf.

    14.     To the extent **documents** responsive to these requests have already been produced by **Defendant**, state the unique identifier (e.g., MD 5 Hash value) or Bates number for each responsive document that was previously produced.

## REQUESTS

1. Computerized, machine-readable, and computer-manipulable data (including but not limited to data stored in People Soft and any other payroll or other system used by **Defendant**) containing the following information for **Plaintiffs** for the entire period of their employment with **Chipotle**: (1) unique employee number or other identifier; (2) name; (3) work location(s), including city, state, and restaurant number; (4) start and end dates (or number of workweeks worked) for each location; (5) job titles held at each location and in each time period; (6) pay data showing the breakdown of regular earnings and other non-discretionary earnings, on a workweek-by-workweek basis, including but not limited to bonuses and commissions paid; (7) leaves or absences.

2. For each pay period of **Plaintiffs'** employment with **Defendant**, all computerized, machine-readable, and computer-manipulable data and any other documents evidencing the amount paid to **Plaintiffs**, the number of hours worked by **Plaintiffs**, all deductions from **Plaintiffs'** compensation, and the periods for which **Plaintiffs** were absent from work, including but not limited to workweek-by-workweek data for each **Plaintiff** throughout applicable period from **Defendant's** Aloha and People Soft systems, as well as any other similar systems used by **Defendant**.

3. Computerized, machine-readable, and computer-manipulable pay data showing the breakdown of regular earnings (including hourly rate of pay), overtime earnings, and other non-discretionary earnings, including bonuses and commissions paid to individuals employed by **Defendant** as Service Managers and Kitchen Managers throughout the relevant period.

4. All **documents**, regardless of by whom prepared, which evidence the number of hours worked by **Plaintiffs** for **Defendant** during the entire period of **Plaintiffs'** employment with Chipotle, including but not limited to computerized, machine-readable, and computer-manipulable data from **Defendant's** Aloha system (or any similar system in use during the relevant time period).

5. All daily time records, time slips, time cards, schedules, cash register or POS system log-ins/log-outs, security system records, telephone records, computer records, emails, or other records maintained by **Defendant** evidencing the time **Plaintiffs** arrived at work, were on break, were at lunch, or departed from work.

6. All work schedules and **documents relating to** work schedules from any stores at which **Plaintiffs** were employed by Defendant as **Apprentices**, including but not limited to computerized, machine-readable, and computer-manipulable scheduling data in excel spreadsheets, Menu Link, Prep Deployment Tools, ERS, and any other similar data, program, or format used by **Defendant** throughout the relevant period.

7. A complete copy of **Opt-In Plaintiffs'** personnel files.

8. All performance reviews, including self-reviews completed by **Plaintiffs** and reviews completed by their supervisors, pertaining to **Plaintiffs**.

13

9.   All performance reviews, including self-reviews completed by Restaurateurs and General Managers and reviews completed by their supervisors, pertaining to all Restaurateurs and General Managers who worked with or oversaw **Plaintiffs** as **Apprentices** during the relevant period.

10.  Any and all documents which evidence the terms and conditions of **Plaintiffs'** employment as **Apprentices** with **Defendant**, including correspondence and forms regarding **Plaintiffs'** promotions to Apprentice roles, offer letters, company manuals, personnel manuals, employee handbooks, training materials, and orientation materials that **Plaintiffs** as **Apprentices** were provided by **Defendant** or that applied to **Plaintiffs** as **Apprentices**.

11.  Any and all **documents** constituting job descriptions for the **Apprentice** position held by **Plaintiffs**.

12.  Any and all documents containing information related, pertaining to, or regarding the job duties of **Plaintiffs** as **Apprentices**.

13.  Documents that contain or reflect the amount of time required to perform a given task, assignment, duty, or function performed by **Plaintiffs**.

14.  Time studies, observational studies, and/or time and motion studies concerning tasks performed, time spent on tasks performed, and/or hours worked by **Plaintiffs** as **Apprentices**.

15.  All documents relating to labor matrices at all restaurants where **Plaintiffs** worked as **Apprentices** during the relevant period.

16.  All documents relating to **Defendant's** policies, procedures, and practices regarding whether an **Apprentice** position should or should not be staffed at **Defendant's** restaurant locations.

17.  The corporate or organizational chart of **Defendant** for each **store** and each **region** in which **Plaintiffs** were employed, throughout the relevant time period.

18.  Any and all **documents relating to** policies, procedures, standards and/or criteria for performance evaluations, other reviews, promotions, bonuses, and/or discipline of persons holding the **Apprentice** position during the relevant period that pertain to the regions in which **Plaintiffs** were employed.

19.  Any and all payroll practice guidelines, record-keeping guidelines, time-keeping guidelines, directives, memoranda or other documents regarding the practices of **Defendant** with respect to the compensation of **Plaintiffs** as **Apprentices** and opportunities, if any, for bonuses of **Plaintiffs** as **Apprentices**, and the policies and practices of the **Defendant** relating to maintenance of records of  hours worked by **Plaintiffs** as **Apprentices**.

20. Any and all **documents** relating to the hours of operation at each **Chipotle** restaurant at which **Plaintiffs** worked as **Apprentices** during the relevant period.

21. Any and all **documents** referring or relating to the practices and/or procedures that **Plaintiffs** as **Apprentices** were required or recommended to undertake and/or the instructions they were required to follow in performing any job task, assignment, duty, or function.

22. Any and all New Hire or Orientation materials that **Plaintiffs** received or should have received pursuant to **Chipotle** policies, practices or procedures at any time during their employment with **Chipotle**.

23. All documents of any kind or format **relating to** formal and informal training materials provided by **Chipotle** to **Plaintiffs** (1) for any positions **Plaintiffs** held or worked in prior to **Plaintiffs'** becoming **Apprentices** and (2) for the **Apprentice** position, including without limitation, training checklists, training programs, training standards, syllabi, outlines, manuals, videos, presentations, software and any other training materials or training guides.

24. Any and all **documents** referring, **relating, or pertaining** to **Defendant's** policies, procedures, practices regarding the minimum, recommended, suggested, permitted, or required number of hours per week that **Apprentices** were expected to work.

25. Any and all **documents**, internal e-mails, correspondence, memos, and notes of meetings **relating, referring, or pertaining to** decisions, discussions, plans, communications, and/or reports about the FLSA classification (exempt or non-exempt) of the **Apprentice** position.

26. Any and all documents, internal e-mails, correspondence, memos, and notes of meetings relating, referring, or pertaining to decisions, discussions, plans, communications, and/or reports about classifying or reclassifying the **Apprentice** position as exempt or non-exempt at any time between 2006 and the present.

27. Any and all documents regarding the policies and practices of **Defendant** with respect to the payment, reporting, oversight, or auditing of overtime compensation paid to **Apprentices**.

28. If **Chipotle** claims that it has relied upon any opinion, ruling, regulation, interpretation or document drafted, issued or promulgated by the United States Department of Labor as a basis for its decision to not pay **Plaintiffs** overtime compensation as **Apprentices**, produce all documents relied upon by **Defendant**.

29. All correspondence, reports, schedules, work papers, opinions and other documents that pertain to any audits, reconciliations, reviews or investigations of **Defendant** by the U.S. Department of Labor, Wage and Hour Division, or any State agency during or after 2003 for any position considered by **Chipotle** to be a management position, including but not limited to the **Apprentice** position held by **Plaintiffs**.

30.     All pleadings, all answers to interrogatories, all responses to requests for admissions, all settlement documents, releases, waivers and confidentiality agreements that pertain to any wage and hour lawsuits filed against **Defendant** by any other current or former employees (including but not limited to employees who held the title of **Apprentice**) during or after 2003.

31.     Any and all **documents relating to Defendant's** good faith defenses for its failure to pay overtime wages to **Plaintiffs** as **Apprentices**.

32.     Any and all memoranda or **documents pertaining to** or evidencing Chipotle's decision to classify the **Apprentice** position held by **Plaintiffs** as exempt or non-exempt from the overtime requirements of the FLSA, the New York Labor Law **and/or** Missouri Labor Law.

33.     Any and all documentation, memoranda or evidence relating to **Defendant's** contention that **Plaintiffs** are exempt from overtime requirements pursuant to the administrative or executive exemption.

34.     Any and all **documents** reflecting that **Plaintiffs**, as **Apprentices**, supervised two (2) or more other employees.

35.     Any and all **documents** related to any disciplinary action that **Plaintiffs**, as **Apprentices**, may have taken or initiated regarding another employee while employed by **Defendant**.

36.     Any and all **documents** related to **Plaintiffs'** authority as **Apprentices** regarding any other employee(s) or category of employee(s).

37.     All e-mails, memoranda or other writings concerning lunch or meal break policies applicable to **Plaintiffs** as **Apprentices** for the time period between 2006 and the present.

38.     Any and all **documents** supporting the affirmative defenses raised by **Defendant** to **Plaintiffs'** claims as set forth in **Chipotle's** Answer to the First Amended Complaint.

Dated: New York, New York          Respectfully submitted,
      April 17, 2014

                                    **OUTTEN & GOLDEN LLP**
                                    By:

                                    /s/ Justin M. Swartz
                                    Justin M. Swartz

                                    Justin M. Swartz
                                    Ossai Miazad
                                    Naomi B. Sunshine
                                    Melissa L. Stewart
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016

16

Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, *pro hac vice*
Keith M. Stern, *pro hac vice*
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

*Attorneys for Plaintiffs*

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**MAXCIMO SCOTT and JAY ENSOR on behalf
of themselves and all others similarly situated,**

**Plaintiffs,**

**12 Civ. 8333 (ALC)(SN)**

**-against-**

**CHIPOTLE MEXICAN GRILL, INC.,**

**Defendant.**

# COURT-AUTHORIZED NOTICE

**If you are or were employed as an APPRENTICE at CHIPOTLE for one or
more weeks between June 20, 2010 and the present, please read this notice.**

**A collective action lawsuit may affect your legal rights.**

*This is a court-authorized notice.
This is not a solicitation from a lawyer.*

The purpose of this Notice is to advise you of the lawsuit that has been filed against CHIPOTLE MEXICAN
GRILL, INC., and to advise you of your legal rights in connection with that suit.

- The lawsuit claims that Chipotle Mexican Grill, Inc., ("Chipotle" or "Defendant") failed to pay
  Apprentices overtime wages required by law.

- The lawsuit is proceeding as a collective action on behalf of Apprentices who are or were employed by
  Chipotle (excluding those employed in California) at any time since June 20, 2010.

- The Court has authorized the parties to send out this notice of the lawsuit. The Court has not decided who
  is right and who is wrong. Your legal rights may be affected, and you have a choice to make now.

- Chipotle denies the claims asserted in the lawsuit and maintains that Apprentices were properly paid at all
  times and are not owed any overtime wages.

If you have questions, please call Naomi Sunshine, Esq. of
Outten & Golden, LLP at (212) 245-1000 or e-mail to nsunshine@outtengolden.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **ASK TO BE INCLUDED** | If you choose to be included in this case, you keep the possibility of getting money or benefits that may come from a trial or a settlement in this lawsuit.<br><br>**If you wish to be included, you must complete and return the form at the end of this Notice by January 20, 2014.** |
| **DO NOTHING** | By doing nothing, you will not be included in this lawsuit. This means that you give up the possibility of getting money or benefits that may come from a trial or settlement in this lawsuit if those bringing the lawsuit are successful. You keep any rights to sue Chipotle separately about the same legal claims in this lawsuit, but the limitations period on your legal claims continue to run. Each day that you do not take action to protect your claims, they diminish. |

- Your options are explained in this notice. To ask to be included in the lawsuit, you must act before **January 20, 2014**.

If you choose to be included in this case and a settlement or judgment is obtained in this case, you will be notified about how to ask for a share of any money or benefits, if any, obtained from Chipotle.

**This notice contains information that affects your rights. Please read it carefully.**

### 1. Why did I get this notice?

You are getting this notice because Chipotle's records show that you work or worked at Chipotle as an Apprentice since June 20, 2010. A lawsuit has been brought against Chipotle claiming that it violated the overtime provisions of federal wage and hour laws. The Court has authorized this notice in order to inform you of the case and your right to join. The Honorable Andrew Carter, United States District Judge in the Southern District of New York, is overseeing this collective action. The lawsuit is known as *Scott et al. v. Chipotle Mexican Grill, Inc.*, 12 Civ. 8333 (ALC)(SN).

### 2. What is this lawsuit about?

This lawsuit is about whether Chipotle properly paid Apprentices in accordance with federal labor laws. In particular, this notice relates to claims that Chipotle violated federal and state wage and hour laws by failing to pay Apprentices premium overtime pay – at a rate of 1.5 times their hourly rate – for hours worked in excess of 40 per workweek.

### 3. What is a collective action and who is involved?

In a collective action lawsuit, one or more persons who have similar claims can bring a lawsuit that includes others who have similar claims. All Apprentices who decide to participate in the case are part of the "Collective" or are "Collective Action Members." The current and former employees who brought this lawsuit – and all of the Collective Action Members – are called the Plaintiffs. The company that they have sued – Chipotle – is called the Defendant. One court resolves the issues for everyone who decides to join the case.

If you have questions, please call Naomi Sunshine, Esq. of
Outten & Golden, LLP at (212) 245-1000 or e-mail to nsunshine@outtengolden.com.

### 4. Why is this lawsuit a Collective Action?

The Court has conditionally authorized this case to proceed as a collective action under §216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

### 5. What is Chipotle's position?

Chipotle denies all of the named Plaintiffs' material allegations and maintains that the named Plaintiffs and Collective Action Members are exempt from the overtime provisions of the FLSA and are not owed any overtime pay under the FLSA, and are also not entitled to liquidated damages, attorneys' fees, and costs. Chipotle also maintains that its pay practices for its Apprentices at all times fairly and lawfully compensated them for all the time they spent working.

### 6. What damages is the lawsuit seeking?

The lawsuit is seeking to recover unpaid overtime pay and "liquidated damages," which doubles the amount of wages owed. The lawsuit is also seeking recovery of costs and attorneys' fees.

### 7. What happens if I join the lawsuit?

If you choose to join this lawsuit, you will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable. You will also share in any proceeds from a settlement or judgment favorable to the Collective. By joining this lawsuit, you designate the named Plaintiffs as your representative, and to the fullest extent possible, you designate the named Plaintiffs to make decisions on your behalf concerning the case, the method and manner of conducting the case, the approval of settlements, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into will be binding on you if you join the lawsuit. You may be asked to provide documents, to sit for a deposition and/or to testify at trial.

### 8. Can Chipotle and/or my current employer retaliate or fire me if I join the lawsuit?

No. It is a violation of Federal law for Chipotle or any other employer to fire, discipline, or in any manner discriminate or retaliate against you for taking part in this case.

### 9. How do I ask the Court to include me in the case?

Enclosed is a form called "Plaintiff Consent Form." **If you choose to join this lawsuit, it is extremely important that you read, sign, and promptly return the Plaintiff Consent Form.** The Plaintiff Consent form is addressed and may be mailed as a postcard for your convenience. If you do not have the Plaintiff Consent Form in postcard format, you may mail the Plaintiff Consent Form in an envelope to the following address:

Clerk of the Court
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

If you have questions, please call Naomi Sunshine, Esq. of
Outten & Golden, LLP at (212) 245-1000 or e-mail to nsunshine@outtengolden.com.

The signed Plaintiff Consent Form must be postmarked by **January 20, 2014. If your signed Plaintiff Consent Form is not postmarked by January 20, 2014, you may not be able to participate in the federal law portion of this lawsuit or share in a monetary recovery.**

### 10. Do I have a lawyer in this case?

If you choose to join this lawsuit you will be represented by Plaintiffs' Counsel: Fitapelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, New York 10016, (212) 300-0375, www.fslawfirm.com; Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York 10016, (212) 245-1000, www.outtengolden.com; and Shavitz Law Group, P.A., 1515 S. Federal Hwy, Boca Raton, Florida 33432, (561) 447-8888, www.helpingworkers.com, unless you hire your own lawyer (see Section 12).

### 11. How will the lawyers be paid?

The named Plaintiffs have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if Plaintiffs do not win, there will be no attorneys' fees or costs chargeable. Under the fee agreement, in the event there is a recovery, Plaintiffs' counsel will apply to the Court for a portion of any settlement obtained or money judgment entered in favor of Plaintiffs and Opt-in Plaintiffs in the amount of the greater of (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the amount of time expended on the lawsuit, or (2) one-third of the gross settlement or judgment amount. Fees may be part of a settlement obtained or money judgment entered in favor of Plaintiffs, or may be ordered by the Court to be separately paid by Chipotle, or may be a combination of the two.

### 12. Am I permitted to get my own lawyer?

If you do not hire your own lawyer, Plaintiffs' Counsel will be working on your behalf. However, you are allowed to hire your own lawyer or initiate a separate lawsuit at your own expense.

### 13. What happens if I do nothing at all?

If you choose not to join, you will not be eligible to participate in the federal portion of this lawsuit.

### 14. This notice has been authorized by the Court.

This notice and its contents have been authorized by Judge Andrew Carter of the U.S. District Court, Southern District of New York. The Court has not yet ruled on whether Plaintiffs' claims or Defendants' defenses have any merit.

If you have questions, please call Naomi Sunshine, Esq. of
Outten & Golden, LLP at (212) 245-1000 or e-mail to nsunshine@outtengolden.com.