UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MAXCIMO SCOTT and JAY ENSOR, on behalf
of themselves and all others similarly situated,

                                     **Plaintiffs,**                12-CV-08333 (ALC)(SN)

             -against-                                      **ORDER**

CHIPOTLE MEXICAN GRILL, INC.,

                                     **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        Plaintiffs filed a complaint on November 15, 2012, and an amended complaint on February 13, 2013, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Minimum Wage Act, N. Y. Lab. Law, art. 6 §§ 190 *et seq.*, art. 19 §§ 650 *et seq* ("NYLL"). On December 7, 2012, the Honorable Andrew L. Carter, Jr. referred this matter to a magistrate judge for general pretrial supervision, and on that same date, the matter was reassigned to my docket. On June 20, 2013, Judge Carter conditionally certified plaintiffs' collective action under FLSA.

        On April 28, 2014, plaintiffs filed a letter motion for conference regarding the scope of discovery for opt-in plaintiffs, and on May 2, 2014, Chipotle filed a response letter. The Court held a telephone conference on May 6, 2014, and issued an Order on that same day resolving several of the opt-in discovery issues. The Court, however, allowed further submissions on the contested issue of service of interrogatories and document requests on all 582 opt-in plaintiffs. On May 15, 2014, Chipotle submitted its letter, which included its three proposed interrogatories and three proposed document requests. On May 22, 2014, plaintiffs filed a

response letter requesting that the proposed interrogatories and document requests be served on only the opt-in plaintiffs to be deposed as well as 15 randomly selected opt-ins.

For the reasons that follow, plaintiffs' request is granted. Defendants may serve the three proposed interrogatories and three proposed document requests on only the opt-in plaintiffs that will be deposed and the 15 additional randomly selected opt-in plaintiffs.

## DISCUSSION

While "[a] party must be afforded a meaningful opportunity to establish the facts necessary to support his claim," In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008), the Court has broad discretion to limit discovery, particularly when such discovery may be duplicative, more readily obtained from another source, or when the burden or expense outweighs the benefits of the discovery. Fed. R. Civ. P. 26(b)(2)(C). See also S.E.C. v. Rajaratnam, 622 F.3d 159, 181 (2d Cir. 2010) ("The right of access to discovery materials is frequently qualified in the interest of protecting legitimate interests."); Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) ("The decision to limit the open and far-reaching discovery permitted under the Federal Rules of Civil Procedure is left to the discretion of the trial court in light of the relevant facts and circumstances of a particular case." (citing Nixon v. Warner Commc'ns, 435 U.S. 589, 599 (1978)); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) (recognizing the district court's "sound discretion" to manage discovery in FLSA collective action); Morales v. Plantworks, Inc., 05 Civ. 2349 (DC), 2006 WL 278154, *2 (S.D.N.Y. Feb. 2, 2006) (in FLSA collective action, the district court has "broad discretion to grant certification, to allow discovery, and to regulate notice" (citation and quotation marks omitted)).

Chipotle submitted three proposed interrogatories and three proposed document requests for each of the 582 opt-in plaintiffs. The interrogatories seek the identities of other Chipotle staff members who either observed the opt-in plaintiff performing his or her duties as an apprentice or were supervised by the opt-in plaintiff, and the dates or number of days in a week when the opt-in plaintiff was the highest ranking manager on duty in the restaurant. Chipotle further seeks all documents or materials obtained by the opt-in plaintiffs from Chipotle that relate to the duties performed as an apprentice, documents relating to the opt-in plaintiffs' efforts to obtain other employment (*e.g.*, resumes), and documents created or obtained by the opt-in plaintiffs pertaining to the number of hours worked, the identities of co-workers, bonus compensation, and employment history or goals while working at Chipotle.

Chipotle contends that this individualized discovery for each of the opt-in plaintiffs is essential to protecting its due process rights, as recently defined by the Supreme Court in Wal-Mart Stores v. Dukes, 131 S. Ct. 2541 (2011), and Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013). In Dukes, the Supreme Court held that certification of a nationwide class of female employees based on claims of employment discrimination was inconsistent with Federal Rule of Civil Procedure 23(a), which requires the party seeking class certification to prove that the class has common questions of law or fact. Specifically, the Supreme Court rejected a "Trial by Formula," in which the plaintiffs would hold a trial for a sample set of class members' claims of sex discrimination and then multiple the average backpay award to determine the class-wide recovery without further individualized proceedings. Under this proposal, Wal-Mart would have been denied its right to litigate its defenses to individual claims of discrimination, as liability for all but the sample set would have never been tried. Chipotle contends that Dukes requires individualized discovery of opt-in plaintiffs so that it can litigate its individualized

defenses, and that the denial of this information might, in fact, render certification inappropriate.

"The weight of authority rejects the argument that Dukes bars certification in wage and hour cases." Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases). In Dukes, the Supreme Court focused on the need for a common contention that is capable of class-wide resolution: "Without some glue holding the alleged *reasons* [behind all of Wal-Mart's individual employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." Dukes, 131 S. Ct. at 2552 (emphasis in original). "Unlike the claims in [Dukes], Plaintiffs' NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights." Youngblood v. Family Dollar Stores, Inc., 09 Civ. 3176 (RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (citations and quotation marks omitted).

Chipotle's decision to classify all apprentices as exempt employees is the glue that the Supreme Court found lacking in Dukes. The opt-in plaintiffs all have the same job title, same primary duties, and same exemption classification. "If the mere existence of possible exemptions could defeat conditional certification, 'no FLSA action that is premised upon an alleged misclassification under [an] . . . exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.'" Jackson v. Bloomberg, L.P., 13 Civ. 2001 (JPO), 2014 WL 1088001, at *6 (S.D.N.Y. Mar. 19, 2014) (quoting Indergit v. Rite Aid Corp., 08 Civ. 9361 (PGG), 2010 WL 2465488, at *9

(S.D.N.Y. June 16, 2010) (alteration in original)). See also Jacob v. Duane Reade, Inc., 11 Civ. 0160 (JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) (rejecting defendants' argument that the need for individualized inquiries precluded conditional certification because "[d]efendants did not consider the differences in ASMs' job duties sufficient to require Duane Reade to undertake an individual analysis before categorically classifying all ASMs as exempt from FLSA"). Accordingly, the concerns raised by the Supreme Court in Dukes are simply not present in this FLSA collective action, where the common question is whether *Chipotle's policy* to deem all apprentices as exempt employees was proper.

In Comcast, the Supreme Court reversed an order granting class certification because the plaintiffs relied on a regression model that "did not isolate damages resulting from any one theory of antitrust impact." 133 S. Ct. at 1431. Unlike in Comcast, however, if the opt-in plaintiffs prove liability, their damages will be calculated based on the wages each employee lost due to Chipotle's unlawful practices. There is no disconnect between the theory of liability and damages. To the extent that Chipotle is arguing that Comcast overruled Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946), superceded by statute on other grounds, the Court declines to read into Comcast a principle that would fundamentally undermine the use of the collective action in the wage and hour context. Indeed, many courts have rejected such a proposition. See Jackson, 2014 WL 1088001, at *15 (citing cases). Anderson established a burden-shifting analysis in FLSA cases to determine whether a plaintiff, assuming he could prove a violation, could show a reasonable basis for calculating damages. See Kuebel v. Black & Decker Inc., 643 F.3d 352, 364-65 (2d Cir. 2011) (citing Brown v. Family Dollar Stores of IN, LP, 534 F.3d 593, 596 (7th Cir. 2008)) ("The Anderson test . . . addresses whether there is a reasonable basis for calculating damages, assuming that a violation [of FLSA] has been

5

shown."). To the extent Chipotle failed to maintain adequate and accurate employment records, the plaintiffs will be entitled to damages if they produce "sufficient evidence to show the amount and extent of that work as a matter of *just and reasonable inference*." Anderson, 328 U.S. at 687 (emphasis supplied); see also Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 67 (2d Cir. 1997). Thus, under Anderson, damages from wage and hour violations may be awarded, "even though the result be only approximate." Anderson, 328 U.S. at 687-88. Comcast's requirement that there be a nexus between liability and damages does nothing to undermine this principle. Accordingly, the Court finds that neither Dukes nor Comcast entitles Chipotle to individualized discovery from each opt-in as a matter of law. Notwithstanding that conclusion, the Court next considers whether, in its discretion, such discovery is consistent with the principles embodied in Rule 26.

Plaintiffs contend that Chipotle's written discovery requests would unnecessarily burden the opt-in plaintiffs and their counsel and defeat the purpose of the collective action. Plaintiffs further contend that the representational discovery they have proposed is sufficient for Chipotle to assert its defenses to the collective action.

The Court is not persuaded that limited or representational discovery will harm Chipotle's ability to present a full defense. The FLSA envisions a collective action process in which claims of similarly situated workers are adjudicated collectively rather than individually. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (the purpose of the collective action to allow "for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims") (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)). Although there is no "bright line

formulation" or "percentage threshold" for determining the adequacy of representational evidence, "it is well-established that the [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." Reich, 121 F.3d at 67. See also Higueros v. New York State Catholic Health Plan, Inc., 07 Civ. 0418 (ADS)(ETB), 2009 WL 3463765, at *2 (E.D.N.Y. Oct. 21, 2009) (denying defendant's request to depose all opt-in plaintiffs because "deposing each of the forty-seven plaintiffs would defeat the very purpose contemplated by Congress in authorizing these collective actions"); Hinterberger v. Catholic Health Sys., Inc., 284 F.R.D. 94, 103 (W.D.N.Y. 2012) (noting that the "[u]se of a sample to avoid burdensome and even impractical discovery in cases involving numerous parties is of course a well-recognized technique"). Accordingly, the Court concludes that representative sampling is an appropriate method of discovery in this FLSA collective action.

    Here, the parties have agreed that Chipotle may depose 10% of the opt-ins, exclusive of the named plaintiffs. Chipotle will select 50% of these opt-ins, plaintiffs will select 25%, and the remaining 25% will be selected randomly. The approximately 58 opt-in plaintiffs to be deposed, along with additional randomly selected 15 opt-in plaintiffs, will be required to respond to the proposed interrogatories and document requests. The Court finds this percentage to be acceptable for representational discovery. See e.g., Reich, 121 F.3d at 61; 67-68 (affirming an overtime award on behalf of approximately 1500 workers based upon the testimony of 2.6% of the class); Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 283 (E.D.N.Y. 2013) (parties designated 9% (39 opt-ins) of the 432 opt-in plaintiffs as "Discovery Plaintiffs" for representational discovery); Goodman v. Burlington Coat Factory Warehouse Corp., 292 F.R.D. 230, 234 (D.N.J. 2013) (rejecting defendants' claim that written discovery

7

on all 572 plaintiffs was necessary to fully protect their interests and permitting written discovery on the 35 plaintiffs to be deposed and an additional 25 plaintiffs selected by defendants, approximately 10% of the class); Scott v. Bimbo Bakeries USA, Inc., 10 Civ. 3154 (MSG), 2012 WL 6151734, at *6 (E.D. Pa. Dec. 11, 2012) (limiting written discovery to 10% of the approximately 650 opt-in plaintiffs to balance defendants' needs and the burden on plaintiffs and their counsel).

Furthermore, Chipotle's request to seek written discovery from each individual opt-in plaintiff is unduly burdensome. Chipotle itself is in possession, or should be in possession, of much of the information or documentation it seeks, including names of supervisors, work schedules, performance reviews, and bonus compensation. Furthermore, it is likely that the information provided by the opt-in plaintiffs on these topics will be generic, unhelpful, or perhaps even inaccurate, as the information will be based on the memories of the opt-in plaintiffs; therefore, the responses from the opt-ins likely would be less reliable than the electronic data maintained by Chipotle. See Goodman, 292 F.R.D. at 234 (denying request to serve written discovery on all 572 plaintiffs in FLSA case because much of the information was likely to be in the defendants' possession and "boiler plate" answers would not advance the case).

Given the purpose of a collective action, the fact that Chipotle should be in possession of much of the information it seeks, and the burden to opt-in plaintiffs for what would likely be generic or inaccurate information, plaintiffs' request to limit written discovery to the opt-in plaintiffs to be deposed and the additional 15 randomly selected opt-ins is GRANTED.[1] If an

---

[1] In the event that individual damages become an unmanageable issue after the parties' class certification and decertification motions are resolved, the Court can always provide notice to opt-in plaintiffs regarding how they can proceed to prove damages.

opt-in plaintiff fails to respond to the written discovery requests, he or she will be replaced by the original method of selection.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:  New York, New York
        June 6, 2014