# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
212.653.8701 main fax
www.sheppardmullin.com

212.634.3059 direct
bmurphy@sheppardmullin.com

November 18, 2014

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Scott v. Chipotle Mexican Grill, Inc.*; 12-CV-8333 (ALC) (SN)

Dear Judge Netburn:

As the Court is aware, we represent defendant Chipotle Mexican Grill, Inc. ("Chipotle") in the above-referenced action. We write in accordance with the Court's Order dated October 31, 2014 and in response to Plaintiff's pre-motion letter dated October 29, 2014 concerning Plaintiffs' intention to seek the depositions of five of Chipotle's most senior executives, including its two highest executives. For the reasons set forth below, Chipotle respectfully submits that the Court should not permit Plaintiffs to seek two of these depositions.

### BACKGROUND

Plaintiffs served Chipotle with seven deposition notices on August 15, 2014. Plaintiffs targeted Chipotle's most senior executives, including Steve Ells (Founder and Co-Chief Executive Officer), Monty Moran (Secretary and Co-Chief Executive Officer), Michael Duffy (Restaurant Support Officer), Gretchen Selfridge (Restaurant Support Officer), Tim Spong (Director of Security, Safety and Risk), Barry Koch (Executive Team Director, Southeast Operations), and David Chrisman (Director of Training). Plaintiff had not previously served any deposition notices on Chipotle for lower-level executives or other employees who would necessarily have more information concerning the duties performed by Plaintiffs, which informs the ultimate exemption inquiries in this case.

Plaintiffs served these deposition notices nearly eight months after the Opt-In Period ended and discovery commenced in earnest and at a time when discovery was scheduled to close on September 19, 2014. See Docket No. 736. Plaintiffs could not have had any expectation that Chipotle would have been able to schedule depositions of its most senior leadership on such notice even if the depositions were not otherwise objectionable. More

importantly, however, is that Plaintiffs served these deposition notices two days after Chipotle rejected Plaintiffs' demand to mediate the case.[1] The timing was not coincidental.

Chipotle initially objected to the bulk of the proposed depositions for a multitude of reasons, including: (i) the availability of less intrusive alternatives to obtain potentially relevant testimony and evidence; (ii) the distance of each of the witnesses from the relevant fact issues in this case; (iii) the availability of lower-level executives with more detailed knowledge; (iv) their senior executive and officer positions within the Company; (v) their prematurity given that Plaintiffs had only conducted a portion of a 30(b)(6) deposition and had not even attempted to depose any lower-level executives; and (vi) the inescapable conclusion that the depositions were noticed in bad faith to harass Chipotle and its highest-level executives in light of Chipotle's unwillingness to settle this matter despite Plaintiffs' repeated entreaties for the same.

The parties met and conferred multiple times in September and October in an attempt to resolve the issue. During the course of those negotiations, unable to articulate any justification to depose him, Plaintiffs temporarily agreed not to pursue a deposition of Mr. Ells. On October 20, Chipotle, in turn, proposed producing all deponents except for Mr. Moran for three hours together with a proposal to "not unreasonably withhold consent to extend briefly beyond the three-hour time limit." See Docket No. 804-3. Plaintiffs did not respond for nine-days. When they did, at 5:13 PM on October 29, it was with a simple "we don't agree to your proposal," followed nineteen minutes later by their lengthy pre-motion letter. See Docket No. 804. Plainly, Plaintiffs formulated their intention well in advance of their filing, but secreted their purpose so that they could preemptively and offensively approach the Court for posturing purposes. This conduct alone is at odds with the "meet and confer" requirements imposed under the Local Rules.

Despite Plaintiffs' tactics, on November 3, Chipotle agreed to produce Messrs. Koch, Spong and Chrisman for deposition without limitation beyond that provided for by Rule 30(d)(1). Consequently, all that remains for the Court to decide is whether Plaintiffs should be permitted to depose Chipotle's Co-Chief Executive Officer and Restaurant Support Officer. Chipotle respectfully submits that, for the reasons set forth herein, Plaintiffs' unfounded request should be rejected.

## THE COURT SHOULD NOT ALLOW PLAINTIFFS TO HARASS CHIPOTLE BY TARGETING ITS EXECUTIVES FOR DEPOSITIONS

### A. Applicable Standards

Chipotle acknowledges that the Federal Rules of Civil Procedure favor discovery concerning any non-privileged matter that is relevant to any claim or defense. See FED. R. CIV.

---

[1] In Plaintiffs' haste to serve the deposition notices following Chipotle's rejection of their mediation proposal, they neglected to sign any of them and continued to include Elizabeth Wagoner, Esq., as counsel of record on the caption, despite the fact that she had withdrawn from the case 15 months earlier. See Docket No. 54.

P. 26(b)(1). However, Courts are vested with the authority to oversee discovery and to issue protective orders to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); DeLuca v. Bank of Tokyo-Mitsubishi UFJ, No. 05-CIV-639 (GEL) (KNF), 2007 WL 2589534, at *2 (S.D.N.Y. Aug. 30, 2007) (rejecting attempt to depose Chief Executive Officer even though he was alleged to have made comments upon which the plaintiff's discrimination claim was based). Courts in the Southern District of New York give "special scrutiny" to requests to depose high-ranking corporate officials because of the possibility of business disruption and the potential for harassment. See Tiger Capital, LLC v. PHL Variable Ins. Co., No. 12-CIV-2939, 2013 WL 4517267, at * 3-4 (S.D.N.Y. Aug. 26, 2013) ("Courts have recognized an additional layer of protection for senior corporate executives subject to depositions.") (internal citations omitted); Nature's Plus Nordic A/S v. Natural Organics, Inc., No. 09-CV-4256, 2012 WL 1514871, at *2 (E.D.N.Y. Apr. 30, 2012) (precluding deposition of CEO where other lower-level witnesses could provide testimony concerning same subject matter).

A party moving to quash the deposition of a senior executive must demonstrate that the proposed deponent has no personal or unique knowledge of the relevant facts. Guzman v. News Corp., No. 09-CIV-9323 (BSJ)(RLE), 2012 WL 2511436, at *1 (S.D.N.Y. June 29, 2012) (quashing deposition of Rupert Murdoch). Thus, unless it can be demonstrated that an executive has "some unique knowledge" of the issues in the case, "it may be appropriate to preclude a deposition of a highly-placed executive" while allowing other witnesses with the same knowledge to be questioned." Id. (citing Consolidated Rail Corp. v. Primary Indus. Corp., No. 92-CIV-4927, 1993 WL 364471, at *12 (S.D.N.Y. Sept. 10, 1993)); Alliance Indus., Inc. v. Longyear Holding, Inc., No. 08-CV-490S, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010)[2]

B.  **The Court Should Reject Plaintiffs' Attempt to Depose Messrs. Moran and Duffy Because Neither Possess Unique Personal Knowledge of any Facts That Inform the Basis of Plaintiffs' Claims**

Here, it is difficult to understand for what legitimate purpose, if any, Plaintiffs seek to depose Messrs. Moran and Duffy since they hide behind purported concerns about revealing attorney-work product. (Pl. Ltr. n. 5). Plaintiffs have offered only a vague overview of the potential areas of inquiry for each deponent, precluding Chipotle from submitting an affidavit on behalf of each of the targeted executives and precluding the Court from fully analyzing the issue. Even by reference to Plaintiffs' nebulous subject matter outlines, however, it is apparent that neither of the proposed deponents could have personal or unique knowledge.

First, with regard to Mr. Moran, Plaintiffs simply offer a laundry list of operational areas over which Mr. Moran, given his senior status at the Company, certainly has ultimate authority. (Pl. Ltr. at 3 ("[R]estaurant operations, including training programs, restaurateur promotions, the

---

[2]  While Plaintiffs offer cases for the proposition that "an order barring a litigant from taking a deposition is most extraordinary relief," and that such an order is "generally regarded as both unusual and unfavorable," (Pl. Ltr.at 2), Plaintiffs' cases are significantly dated and are simply out of sync with prevailing trends in this District. The analysis set forth above controls.

restaurateur program, staffing models (including the role of the Apprentice position), staffing plans and restaurant operations efficiency, including throughput."). Plaintiffs make no effort to explain how discovery concerning any of these areas impacts their claims.[3] Presumably, Plaintiffs intend to try to elicit testimony establishing a uniform framework of policies and procedures within which Apprentices operate such that they would allegedly be forced to perform similar duties. Aside from the fact that the record developed thus far entirely undermines any such argument,[4] Plaintiffs do not even attempt to explain why Plaintiffs themselves and other executives that Chipotle has offered for deposition, such as Ms. Selfridge and Messrs. Spong, Koch and Chrisman, would not be sufficient for purposes of eliciting testimony concerning each of these seemingly irrelevant topics. While Chipotle certainly does not dispute that Mr. Moran disseminated broad objectives and visions for the Company, he did so to people like these executives, who then interpreted them and discussed and implemented them with others who were in the field.[5] Further, many of these areas of inquiry are the subject of Plaintiffs' still-pending 30(b)(6) deposition. Put another way, Plaintiffs cannot credibly contend that Mr. Moran possesses "unique" knowledge over any of these topics. This is especially true where Chipotle has identified a 30(b)(6) witness to testify regarding nearly thirty topics designated by Plaintiffs.

Plaintiffs also contend that "Moran spends significant time in restaurants across the country." (Pl. Ltr. at 3). Chipotle does not dispute that Mr. Moran visits restaurants to empower Chipotle employees and otherwise create an open and approachable atmosphere. However, Mr. Moran's presence in the restaurants does not even approach the amount of time spent in restaurants by General Managers, Restaurateurs, Team Leaders, or Executive Team Directors, none of whom have Plaintiffs attempted to depose as an alternative to the Co-Chief Executive Officer. Each of these potential witnesses necessarily possess more detailed knowledge concerning the duties performed by Apprentices and the circumstances under which those duties are performed.

Finally, Plaintiffs contend that Mr. Moran "had a direct hand in developing the current restaurant-level training program that has been in place since in or around 2009, including performance reviews." (Pl. Ltr. at 3). Chipotle has offered to produce Mr. Chrisman, its Director of Training, who Chipotle can readily represent possesses far more, and more detailed, knowledge concerning the various training programs at Chipotle, including those impacting Apprentices. Whatever tangential involvement Mr. Moran may have had with the development

---

[3] Chipotle is particularly perplexed by Plaintiffs reference to "restaurateur promotions" and "the restaurateur program," which seem wholly unrelated to the job duties performed by an Apprentice.

[4] For example, Plaintiff Scott testified that he did not perform the bulk of the duties set forth on the Apprentice Job Description whereas Plaintiff Ensor testified that he performed all of the duties on the Apprentice Job Description.

[5] Plaintiffs' request in this regard is commensurate with a person purchasing an iPhone, finding a software glitch and initiating a suit, and seeking the deposition of the late Steve Jobs because he invented it.

of a training program in 2009 – outside of the limitations period applicable in this case – is necessarily eclipsed by Mr. Chrisman's unique competence in this regard.

Plaintiffs' insistence here on deposing Chipotle's Co-CEO despite the common-sense limitations on his knowledge of the relevant facts is similar to that of the plaintiffs in Lin v. Benihana Nat. Corp., There, like here, the plaintiffs pursued wage claims under the Fair Labor Standards Act and New York Labor Law on a collective and class basis. See No. 10-CIV-1335, at *2 (S.D.N.Y. Oct. 5, 2010). There, like here, the plaintiffs sought to depose the CEO because of their vague contention that he had knowledge of corporate structure issues that would impact their claims. While the defendant did not deny that the CEO possessed relevant knowledge, like here, the defendant offered a lower-level, but still senior, executive as an alternative for deposition contending that the CEO's knowledge was not unique. The plaintiffs refused to consent and forced the defendant to seek relief in Court. The Court readily granted a protective order noting that "[a]llowing the plaintiffs to depose Mr. Stockinger would work a measurable disruption to Mr. Stockinger's professional life while adding no apparent value to the plaintiff's discovery." Id. at *2. Plaintiffs have not offered, and Chipotle is confident cannot offer, any legitimate basis for the Court to reach a different result here.

Second, with respect to Mr. Duffy, Plaintiffs contend that "[h]e has knowledge regarding regional and restaurant-level operations." (Pl. Ltr. at 3). As with Mr. Moran, however, there are far more knowledgeable witnesses closer to the facts that can provide relevant testimony, including Chipotle's 30(b)(6) designee. Plaintiffs also contend that there is no basis for withholding his deposition since Chipotle has agreed to produce Ms. Selfridge, who holds the same Restaurant Support Officer title as Mr. Duffy, albeit for a different region. Chipotle agreed to produce Ms. Selfridge because Chipotle disclosed her in its Initial Disclosures. Chipotle disclosed Ms. Selfridge as a relevant witness because, during Plaintiff Ensor's employment, she was not a Restaurant Support Officer but a Regional Director (now called "Executive Team Director) responsible for the region in which Plaintiff Ensor worked. As such, Chipotle deemed her likely to have discoverable information related to Plaintiff Ensor's firing. She was promoted to Restaurant Support Officer after Plaintiff Ensor's employment ended. In addition to producing Ms. Selfridge, Chipotle is also producing Mr. Koch, a current Executive Team Director. Deposing these two executives provides Plaintiffs with an opportunity for ample and full discovery regarding regional and restaurant-level operations. Plaintiffs have no legitimate need to also depose Mr. Duffy assuming their true purpose is to get the best, non-cumulative discovery they can from the best possible source.

In short, Plaintiffs have not and cannot offer any legitimate reason to insist on either of these depositions. Neither Mr. Moran nor Mr. Duffy possess any unique personal knowledge concerning the broad categories of information outlined by Plaintiff. If the Court deems it necessary for the parties to formally brief this issue or otherwise would find it helpful, Chipotle will obtain affidavits from both Mr. Moran and Mr. Duffy itemizing their lack of any unique personal knowledge concerning the issues in this case as well as those Plaintiffs identify in their

letter.[6] See, e.g., Alex & Ani, Inc. v. MOA Intern. Corp., No. 10-CIV-4590, 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011); Diesel Props S.R.L. v. Greystone Business Credit II, LLC, No. 07-CIV-9580 (HB), 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008). Further, while securing evidence of a party's intent is a notoriously difficult proposition, Chipotle submits that the timing of the deposition notices together with Plaintiffs' obstinate refusal to proceed with the depositions of lower-level executives who have been made available for deposition or complete the 30(b)(6) deposition reveal an improper motive.

For each of these reasons, Chipotle requests that the Court deny Plaintiffs' attempts to depose Messrs. Moran and Duffy.

**C.  Alternatively, the Court Should Delay Ruling Until After the Other Executives Have Been Deposed and the Parties Meet & Confer and/or Brief this Issue**

Although Chipotle vehemently disagrees that it would be appropriate to depose Messrs. Moran or Duffy (or Mr. Ells) at any time given the controlling issues and factual matters in this case, Chipotle submits that, as an alternative to formal briefing on the issue now, the parties should be directed to reconvene on the issue after the other depositions have been completed. After these depositions, both parties will be able to better assess their respective positions. Further, if the parties cannot resolve the issue and formal briefing is necessary, the Court will have the benefit of a factual record that will allow it to determine whether the testimony would be unique or cumulative.

We thank the Court for its consideration of this issue and look forward to addressing it before the Court at the November 20 Conference. In the interim, should Your Honor have any questions, please do not hesitate to contact me.

Respectfully submitted,

/s/ Brian D. Murphy

Brian D. Murphy
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:    All Counsel of Record

---

[6]   Plaintiffs appear to fault Chipotle for not having produced an affidavit from either of these witnesses thus far. Given that the affidavits must set forth the executives' lack of unique personal knowledge concerning the facts to be sought through their testimony, Plaintiffs' refusal to itemize the potential areas of inquiry with any detail have thus far prevented Chipotle from doing so.