

Advocates for Workplace Fairness

November 18, 2014

**By ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Scott v. Chipotle Mexican Grill, Inc.* No. 12-cv-8333 (ALC) (SN)

Dear Judge Netburn:

      We represent Plaintiffs in the above-referenced Fair Labor Standards Act ("FLSA") and state law class and collective action against Defendant Chipotle Mexican Grill, Inc. We write to provide the Court with an update regarding current discovery issues, *see* ECF No. 809, including (1) the appropriate consequences for unresponsive opt-in plaintiffs; (2) whether opt-in plaintiffs who seek to withdraw from this case should be dismissed with or without prejudice; (3) Chipotle's refusal to produce documents related to its decision to classify apprentices working in California as non-exempt hourly workers; (4) potential discovery disputes not yet ripe for Court intervention; and (5) the parties' joint request for a 90-day extension of the current discovery period.

**I.    Unresponsive Opt-In Plaintiffs Should Not Be Dismissed, or, in the Alternative, Dismissal Should Be Without Prejudice.**

      Plaintiffs respectfully submit that the Court should deny Chipotle's request for the dismissal of unresponsive opt-in plaintiffs. Opt-in discovery is an information gathering device, not an opportunity for a defendant to cull the class. To facilitate the goal of "efficient resolution in one proceeding of common issues of law and fact," *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), courts typically restrict discovery in a collective action to a sampling of opt-in plaintiffs.[1]

---

[1]     *See Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) ("[I]t is well-established that [plaintiffs] may present the testimony of a representative sample of employees as part of [their] proof of the prima facie case under the FLSA."); *Higueros v. N.Y. State Catholic Health Plan, Inc.*, No. 07 Civ. 418, 2009 WL 3463765, at *2 (E.D.N.Y. Oct. 21, 2009)

3 Park Avenue, 29th Floor, New York, NY 10016  Tel 212-245-1000  Fax 646-509-2060
161 N. Clark Street, Suite 4700, Chicago, IL 60601  312-809-7010  Fax 312-809-7015
One Embarcadero Center, 38th Floor, San Francisco, CA 94111  Tel 415-638-8800  Fax 415-638-8810

og@outtengolden.com   www.outtengolden.com

In the alternative, if the Court is inclined to dismiss unresponsive opt-ins, dismissal should be without prejudice.

A.     Background

The parties agreed, and the Court "so ordered," that Chipotle may depose 10 percent of the opt-in plaintiffs (totaling 58 opt-in depositions). Half of the deponents are to be selected by Chipotle and half selected randomly.[2] Selected opt-ins who do not appear for depositions would be replaced by the original method of selection. *See* ECF No. 732 (B. Murphy Ltr. dated May 2, 2014) at 2.

As described in greater detail in the parties' joint status update letter submitted today, 16 opt-in plaintiffs have been deposed; 20 opt-in plaintiffs are currently scheduled for deposition; and 2 opt-ins who were previously scheduled will need to be rescheduled. Seventeen unresponsive opt-in plaintiffs received the Court's October 31, 2014 Order and 9 opt-in plaintiffs have expressed an intention to withdraw from the lawsuit. Additional opt-ins plaintiffs have been selected to replace almost all of these individuals. In addition, 13 more opt-ins plaintiffs are now unresponsive and will need to be replaced.

B.     Argument

Selected opt-ins who do not respond to attempts to reach them should not be dismissed. Dismissal under Rule 37 or Rule 41(b) is a "is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)) (internal

---

(unlimited discovery from opt-ins would defeat "the very purpose contemplated by Congress in authorizing . . . collective actions"); *Prentice v. Fund for Pub. Interest, Inc.*, No. 06 Civ. 7776, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("individualized discovery is rarely appropriate in FLSA collective actions"); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) ("limiting discovery to a statistically significant representative sampling . . . will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover and establish an evidentiary basis for its defenses" (footnote omitted)); *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) (denying individualized discovery in FLSA action because "the ideas of a class action and individualized discovery do not fit together well").

[2]     The parties originally agreed that Chipotle would select 50 percent, Plaintiffs would select 25 percent, and 25 percent would be selected randomly. Plaintiffs decided that their 25 percent would be selected randomly, with the result that 50 percent of deponents were selected by Chipotle and 50 percent by random selection.

quotation marks omitted) (Rule 37);[3] *accord Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir. 1994) (Rule 41).[4] In FLSA cases, the mere failure of opt-in plaintiffs to respond to plaintiffs' counsel's attempts to contact them is not evidence of willfulness or bad faith. *See Saleem v. Corporate Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2013 WL 6331874, at *4 (S.D.N.Y. Dec. 5, 2013).

Especially where, as here, other members of the collective can provide equivalent discovery, dismissal is not warranted because defendants are not unduly prejudiced. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 887 (S.D.N.Y. 1999) (even where a party has refused to participate in discovery, that noncompliance must cause "serious[] prejudice[]" to warrant dismissal); *Saleem*, 2013 WL 6331874, at *4 (declining to dismiss opt-ins "particularly in light of minimal degree of prejudice [d]efendants . . . suffered"); *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2008 WL 7863502, at *7 (S.D.N.Y. May 9, 2008) (declining to dismiss plaintiffs for failure to attend deposition where defendant suffered no prejudice); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077, 2007 WL 646326, at *13 (S.D.N.Y. Feb. 27, 2007) (declining to dismiss opt-in plaintiffs for failure to participate in discovery where there was no evidence that defendants were not unfairly prejudiced because were able to take discovery from other opt-in Plaintiffs); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06 Civ. 17430, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009) (declining to dismiss nonresponsive opt-in plaintiffs because "[defendant] is not entitled to individualized discovery from each and every opt-in Plaintiff" and the record contained no evidence that [defendant] would suffer prejudice if it could not obtain individualized discovery from this particular set of opt-in plaintiffs).

Here, Chipotle cannot meet the standards for dismissal under either Rule 37(b)(2) or Rule 41(b). There is no evidence that the unresponsive plaintiffs acted willfully or in bad faith. Moreover, Chipotle has not demonstrated any prejudice from its inability to depose the particular opt-in plaintiffs who were not responsive. Chipotle cannot do so because the parties are cooperating to replace unresponsive opt-ins, allowing Chipotle to take the 58 opt-in depositions agreed-upon by the parties. Chipotle cannot demonstrate that the substitutions for its prior

---

[3] In assessing dismissal under Rule 37, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal*, 555 F.3d at 302 (alteration in original) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)) (internal quotation marks omitted). Additionally, "employing dismissal as a sanction requires finding[] that [the] [d]efendant[] [was] seriously prejudiced by [the plaintiff's] actions." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 887 (S.D.N.Y. 1999).

[4] Courts consider the following, somewhat similar factors, under Rule 41(a)(2): (1) the duration of plaintiff's failure to comply with court orders; (2) whether plaintiff was on notice that failure to comply would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *Jackson*, 22 F.3d at 74.

selections would be inadequate,[5] nor can Chipotle point to anything unique or extraordinary about each of the unresponsive opt-ins.

Although this is especially true of the opt-in plaintiffs who were selected randomly, and whose testimony is undisputedly fungible, it is also true of the opt-ins whom Chipotle selected. For example, in a recent letter to the Court, Chipotle complained that one of the potential deponents was unique because she was from Washington, a Rule 23 state. ECF No. 806 (Joint Letter Oct. 30, 3014) at 5. However, Chipotle has already selected as replacements 2 other opt-in plaintiffs who worked in Washington.

In the alternative, if the Court is inclined to dismiss the unresponsive opt-in plaintiffs, dismissal should be without prejudice. Dismissing unresponsive opt-in plaintiffs' claims with prejudice is a drastic course of action not warranted by the circumstances. *See Cruz v. Dollar Tree Stores, Inc.*, Nos. 07 Civ. 2050, 07 Civ. 4012, 2011 WL 843956, at *4. (N.D. Cal. Mar. 8, 2011) (where court dismissed class members who refused to participate in discovery, it nonetheless declined to "impos[e] the most severe sanction available" and instead dismissed the claims of the class members without prejudice); *see also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2014 WL 5471034, at *1 (declining to impose the "harsh [] remedy" of dismissal with prejudice for opt-ins).

In addition, to avoid prejudice and to effectuate the FLSA's remedial purpose, all opt-in plaintiffs' claims that are dismissed should be tolled for the period that they were participants in this suit and for 60 days after dismissal. *See Cruz*, 2011 WL 843956, at *4 (where court dismissed certain class members for failure to comply with discovery, it nonetheless tolled the statute of limitations for 120 days, "so that class members who wish to do so may pursue their individual claims"); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 216 (E.D.N.Y. 2009) ("the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed"); *In re Tyson Foods, Inc.*, No. 07 MDL 1854, 2008 WL 4613654, at *2 (M.D. Ga. Oct. 15, 2008) ("Once an individual opts in to an FLSA collective action, the statute of limitations is tolled from the date the consent form was filed, but if the court later denies certification of the collective action and dismisses the opt-in plaintiffs, the statute of limitations resumes upon that dismissal.").

## II. Withdrawing Opt-In Plaintiffs Should Be Permitted to Dismiss Their Claims Without Prejudice Pursuant to Federal Rule of Civil Procedure 41(a)(2).

A small set of opt-in plaintiffs have indicated a desire to dismiss their claims. Chipotle refuses to stipulate to their dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), insisting that dismissal must be with prejudice. Plaintiffs respectfully submit that dismissal without prejudice pursuant to Rule 41(a)(2) is appropriate here.

---

[5] For these same reasons, dismissal is not necessary to manage the Court's docket, as the litigation can easily proceed without the depositions of these particular opt-in plaintiffs.

Federal Rule of Civil Procedure 41(a)(2) provides that "an action may be dismissed at the plaintiff's request . . . by court order, on terms that the court considers proper." As a general matter, when a plaintiff seeks voluntary dismissal pursuant to Rule 41(a)(2), dismissal is without prejudice. *Coultrip v. Pfizer, Inc.*, Nos. 06 Civ. 9952, 06 Civ. 15200, 07 Civ. 4532, 2011 WL 1219365, at *6 (S.D.N.Y. Mar. 24, 2011); *see also D'Alto v. Dahon Cal. Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) ("[a] voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed if the defendant will not be prejudiced thereby." (quoting *Wakefield v. N. Telecom. Inc.*, 769 F.2d 109, 114 (2d Cir. 1985)) (internal quotation marks omitted); *S.E.C. v. One or More Unknown Purchasers of Securities of Telvent GIT, SA*, No. 11 Civ. 3794, 2013 WL 1683665, at *1 (S.D.N.Y. Apr. 17, 2013) ("[T]he court first presumes that dismissal without prejudice is appropriate absent a showing of substantial prejudice beyond merely the specter of a possible second lawsuit.").

In the Second Circuit, "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). The first line "indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (quoting *Camilli*, 436 F.3d at 123) (internal quotation marks omitted). The second "indicates that the test for dismissal without prejudice involves consideration of various factors." *Id.* (quoting *Camilli*, 436 F.3d at 123) (internal quotation marks omitted). These factors, known as the *Zagano* factors, are: (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss. *Id.*; *see also Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

Here, the voluntary dismissals should be without prejudice under either test. Chipotle cannot show that it would suffer any legal prejudice if the withdrawing opt-in plaintiffs are permitted to dismiss their claims without prejudice. The withdrawing plaintiffs sought to dismiss their claims in a diligent fashion, before their depositions were even scheduled. *See Omega Inst., Inc. v. Universal Sales Sys., Inc.*, No. 08 Civ. 6473, 2010 WL 475287, at *3 (W.D.N.Y. Feb. 5, 2010) (finding plaintiff acted diligently in filing a motion for dismissal where limited discovery occurred before the motion was filed and plaintiff attempted to communicate with defendant's counsel about a possible stipulation of dismissal); *Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 355 (E.D.N.Y. 2002) (plaintiffs acted diligently where they informed defendant as soon as they made the decision to dismiss the action without prejudice).

There is no indication that plaintiffs acted vexatiously in pursuing their claims. *See Benitez v. Hitachi Metals Am., Ltd.*, No. 11 Civ. 6816, 2012 WL 3249417, at *2 (S.D.N.Y. Aug. 6, 2012) ("plaintiff certainly did not have ill motive in bringing this suit and there is no suggestion that plaintiff has harassed defendants in the course of the litigation" (quoting *Ascentive, LLC v. Opinion Corp.*, No. 10 Civ. 4433, 2012 WL 1569573, at *4 (E.D.N.Y. May 3, 2012)) (internal quotation marks omitted)); *Omega*, 2010 WL 475287, at *4 ("plaintiff's claims were not baseless or frivolous, nor has plaintiff engaged in any patently dilatory or inappropriate

motion practice"). In fact, most of the withdrawing opt-in plaintiffs are current employees who are likely intimidated by the prospect of testifying against their current employer.

Any effort or expense that Chipotle has expended in defending against this case cannot be attributed to these particular plaintiffs, who are just 7 of 582 opt-in plaintiffs. *See Lang v. DirecTV, Inc.*, No. 10 Civ. 1085, 2012 WL 733866, at *4 (E.D. La. Mar. 6, 2012) (defendants were not substantially prejudiced by the costs incurred in attempting to force withdrawing plaintiff to comply with discovery because "he was but one of several plaintiffs included within the motions [to compel]"); *In re Family Dollar FLSA Litig.*, No. 08 MDL 1932, 2012 WL 370068, at *2 (W.D.N.C. Feb. 3, 2012) (granting voluntary dismissal without prejudice where time and expense was associated with discovery propounded on dozens of individuals, not just individual plaintiff who sought to withdraw). Moreover, there is no prospect of duplicative expenses as Chipotle can easily use the legal work it has already done in this case – both against the remaining plaintiffs, and against any of the withdrawing plaintiffs, if they ever renew their claims against Chipotle in the future. *See Hinfin*, 206 F.R.D. at 356.

Under the circumstances, the withdrawing opt-in plaintiffs should be permitted to dismiss their claims without prejudice.[6] In addition, to avoid prejudice and to effectuate the FLSA's remedial purpose, all opt-in plaintiffs' claims that are dismissed should be tolled for the period that they were participants in this suit and for 60 days after dismissal. *See Cruz*, 2011 WL 843956, at *4; *Bifulco*, 262 F.R.D. at 216; *In re Tyson Foods*, 2008 WL 4613654, at *2.

### III. Chipotle Should Produce Documents Related to Chipotle's Decision To Classify California Apprentices as Non-Exempt.

Although Chipotle classifies its apprentices in the rest of the country as exempt executives and does not pay them overtime, it treats its California apprentices as non-exempt hourly workers who are entitled to overtime. Plaintiffs requested documents relating to Chipotle's decision to classify California apprentices as non-exempt. Chipotle refused to produce responsive documents based only on relevance grounds.[7] Plaintiffs' requests are calculated to lead to the discovery of relevant evidence regarding the primary duties of apprentices in the rest of the country who perform the same duties as apprentices in California, as well as the issues of good faith and willfulness. Plaintiffs therefore seek to file a motion to compel the production of responsive documents.

---

[6] Moreover, even if the Court dismisses the withdrawing plaintiffs with prejudice, the dismissal should only bar their FLSA claims. The withdrawing plaintiffs who are potential members of a Fed. R. Civ. P. 23 class should be allowed to participate just like any other absent class members. *See Johnson v. Wave Comm GR LLC*, 10 Civ. 346, 2013 WL 992511, at *1 (N.D.N.Y. Jan. 29, 2013) (dismissing opt-ins "without prejudice to their future participation, to the extent the court deems appropriate, as class members on these state law claims if the Rule 23 class action remains certified").

[7] Chipotle did not assert a privilege objection in its responses to Plaintiffs' document request, and confirmed during the parties' meet and confer call that it does not object to the production of these documents on privilege grounds.

A.    Background

Plaintiffs' Sixth Request for the Production of Documents, Request No. 10, sought "documents that refer, relate, or pertain to the decision to classify California Apprentices as non-exempt, including when that classification decision was made, how it was made, who participated in making it, and any and all documents and e-mails that relate to the classification of Apprentices in California as non-exempt." Chipotle refused to produce responsive documents. *See* Ex. A (objecting that the request sought information that was "irrelevant and [] not likely to lead to the discovery of admissible evidence, in that it seeks documents that do not relate to any of the restaurants, states or Apprentices involved in this case."). The parties held a telephone meet and confer on Monday, November 3, 2014, and reached impasse.

B.    Argument

Plaintiffs' request falls squarely within the broad definition of discoverable evidence. Fed. R. Civ. P. ("Rule") 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2012) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted); *see also id.* ("the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy.") (alteration omitted) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989)) (internal quotation marks omitted).

Apprentices in California perform the same primary job duties as apprentices in the rest of the country. They hold the same job title and share the same basic job description. *See* Ex. B. As a result, any information about the duties of California apprentices that Chipotle gathered or reviewed in deciding to classify California apprentices as non-exempt and any analyses or time studies that Chipotle performed in making its decision are likely to be directly relevant to the issues in this case. At the very least, Plaintiffs should be able to ask Chipotle's witnesses questions comparing the duties of California apprentices to the duties of other apprentices in an effort to determine what duties are "primary" duties and whether Chipotle's classification decision was correct.

In addition, because Chipotle classified its apprentices as non-exempt in California, yet continued to (mis)classify apprentices in the rest of the country as exempt, information about Chipotle's decision-making process is relevant to the good faith and willfulness issues in this case. It is unlikely, for example, that Chipotle went through a decision-making process that resulted in reclassifying California apprentices but did not even consider reclassifying other apprentices. Even if it did, this would be evidence supporting a willfulness finding.

In fact, even Chipotle's knowledge and analysis *of California law* is relevant to the issues of willfulness and good faith in this case. *See* 29 U.S.C. § 255(a). In a very similar situation in

another FLSA case, the Honorable John G. Koeltl held that, "[o]n its face, California law is sufficiently similar to the FLSA to place the defendants on notice that the ASMs in other states were misclassified as exempt employees." *Trimmer v. Barnes & Noble, Inc.*, No. 13 Civ. 579, 2014 WL 3537867, at *9 (S.D.N.Y. July 18, 2014) (*see also Difilippo v. Barlays Capital, Inc.*, 552 F. Supp. 2d 417, 425-26 (S.D.N.Y. 2008) (holding that a genuine issue of material fact existed as to willfulness where the employer was on notice of an erroneous classification in part because the employer classified at least 2 employees as non-exempt and paid them overtime while other employees in the same position were denied overtime)).

## IV.     Issues Not Yet Ripe For Court Intervention

The parties are in the process of meeting and conferring regarding several issues that are not yet ripe for the Court intervention, including: (1) the format and scope of data and other information that Chipotle should produce for Rule 23 class members and opt-in plaintiffs; and (2) training videos that Plaintiffs have requested and that Chipotle is still in the process of reviewing for production.

## V.     Discovery Extension

The parties have agreed to respectfully request a 90-day extension of discovery. Plaintiffs do not make this request lightly and are mindful of the Court's admonitions. However, despite Plaintiffs' best efforts to move this case forward, they have not been able to do so for several reasons. For the past several months, opt-in discovery has consumed an enormous amount of the parties' time and resources, and unfortunately, other discovery efforts have taken a back seat.

Plaintiffs' counsel have devoted significant resources to this case. From among the 3 co-counsel firms, 12 attorneys and 4 contract attorneys are working actively on this matter.[8] For the past several months, the parties have devoted a great deal of time to opt-in discovery, including individualized written discovery for almost 80 plaintiffs (6 named plaintiffs, 58 opt-in deponents, and 15 written-discovery opt-in plaintiffs), and deposition scheduling, preparation, document review, and defense for 58 opt-in depositions and 6 named plaintiff depositions. As the Court is aware, opt-in depositions were delayed for a significant period of time while Plaintiffs repeatedly asked Chipotle to select its deponents. *See* ECF No. 767 (Plaintiffs' letter dated Aug. 25, 2014). In addition, despite our best efforts, Plaintiffs may not be able to produce all the opt-in deponents within the current discovery period, in part because of the large number of unresponsive opt-ins who have had to be replaced.

Plaintiffs recently learned that Chipotle did not select its deponents for many months because it was busy gathering more than 200 declarations from current employees, *see* Ex. C (E-mail correspondence regarding manager declarations), almost all of which Chipotle did not disclose on its Fed. R. Civ. P. 26 disclosures. Chipotle obtained all of these declarations between June and August 2014, but failed to produce them until October 23, 2014, only 2 months before

---

[8]     Outten and Golden LLP has 6 of approximately 40 attorneys actively staffed on this case.

the current discovery deadline, while the parties were in the midst of intensive opt-in discovery. Plaintiffs now must seek discovery related to these declarants and seek to depose many of them.[9]

In addition, despite Plaintiffs' many requests, Chipotle has not yet produced custodial documents for the vast majority of the corporate and regional custodians agreed-upon by the parties to date. This has hindered Plaintiffs' ability to select witnesses for depositions and prepare for other depositions.

Finally, despite Plaintiffs' many requests, Chipotle has failed to provide Plaintiffs with dates for most of the corporate and regional witnesses whose depositions Plaintiffs noticed in August. The only deposition that Chipotle has confirmed is Gretchen Selfridge on December 22, 2014.

As set forth in greater detail in Plaintiffs' letter motion regarding the fact witness depositions, ECF No. 804, Plaintiffs noticed depositions of several corporate and regional employees on August 15, 2014. Chipotle refused to produce the majority of the witnesses noticed for deposition. *Id.* The parties met and conferred exhaustively on these issues, and after the parties reached impasse, Plaintiffs filed a letter motion seeking relief from the Court. *Id.* In the meantime, the Court ordered the parties to meet and confer regarding the issues raised in Plaintiffs' letter motion, ECF No. 810, and Chipotle finally agreed to produce some of the witnesses. Since that date, Plaintiffs have repeatedly asked Chipotle to provide deposition dates, and to provide a timeline for producing custodial documents for these witnesses. Ex. D (E-mail correspondence regarding corporate deponents). The parties continue to meet and confer regarding these issues, but as a result of Chipotle's delays in providing documents and deposition dates, Plaintiffs have been foreclosed from taking almost any discovery.

Plaintiffs understand that this case has been on the Court's docket for many months, but respectfully submit that discovery cannot be completed before the current discovery deadline and that, after focusing almost all of their resources on complying with Chipotle's discovery demands while Chipotle virtually ignored Plaintiffs' discovery requests, it would be unfair and prejudicial if Plaintiffs were not able to build their own case.

                                                      Respectfully submitted,

                                                      Justin M. Swartz

cc:       All counsel (via ECF)

---

[9] Plaintiffs are also in the process of gathering declarations for a much smaller set of witnesses, and will disclose each declaration to Chipotle as soon as it is obtained.