

*Advocates for Workplace Fairness*

December 9, 2014

**By ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

     Re: *Scott v. Chipotle Mexican Grill Inc.*, No. 12 Civ. 8333 (ALC) (SN)

Dear Judge Netburn:

  We represent Plaintiffs in the above-referenced Fair Labor Standards Act ("FLSA") and state law class and collective action. We write to provide the Court with a joint status update concerning the scope of discovery with respect to Chipotle's 206 declarant witnesses. *See* Ex. A (Hr'g Tr. dated Nov. 20, 2014) at 32:10-25. In addition, the parties write to state their position regarding the consent form of Tony Smith. *See* ECF No. 831 (Order dated December 9, 2014).

**I.  Plaintiffs' Position**

  **A.  Chipotle's 206 Hand-Selected Witness Declarations**

*Background*

  On October 23, 2014, Chipotle produced 206 declarations (most of which it had obtained months earlier – in June, July, and August of 2014) from hand-picked, captive audience, current employee witnesses. Chipotle hopes to use these declarations to support its forthcoming motions for summary judgment and FLSA decertification, and to oppose Plaintiffs' state law Fed. R. Civ. P. 23 ("Rule 23") class certification motion. Chipotle also hopes to call many of these witnesses at trial, but it has not disclosed which ones it plans to call.

  Chipotle's witnesses are all current employees.[1] A large number of these declarants – even those who currently hold other titles – are also Rule 23 class members because they worked as apprentices during the time periods covered by Plaintiffs' class allegations. The 206 declarations are sweeping 6 to 14-page statements that cover broad swathes of time and hundreds of locations where the declarants worked throughout their lengthy tenures with the company. The declarations make broad assertions about Chipotle policies and restaurant operations at each

---

[1]  They include 73 current apprentices, 89 current general managers, 26 current restaurateur 1s (similar to general managers), 12 current restaurateur+s (similar to area managers), and 8 current Team Leaders (similar to district managers), who worked in the six Rule 23 states (Colorado, Illinois, Missouri, North Carolina, New York, and Washington).

restaurant where the declarants worked. In addition to describing their own apprenticeships, the declarants refer to other employees, including hundreds of anonymous class members, whom they encountered during their employment, but who, except in a few circumstances, *are not identified by name*. Plaintiffs have requested that Chipotle produce the names and contact information for the individuals to whom the witnesses refer.

At the November 20, 2014 court conference, the court instructed the parties to meet and confer regarding Plaintiffs' right to take discovery of these witnesses. After two meet and confer sessions, the parties have reached an impasse. The overarching disagreement is that Chipotle attempts to equate its 206 hand-picked summary judgment, class certification, and trial witnesses with the approximately 582 individuals who have simply opted into this case, *most of whom will not provide testimony*. This comparison is faulty for several reasons.

First, and most importantly, Chipotle hand-selected each of its 206 witnesses and plans to use testimony *from each of them* to support its case. In contrast, Plaintiffs did not select the opt-in plaintiffs (opt-in plaintiffs joined the case as they saw fit) and, critically, Plaintiffs will not use any of them as witnesses unless Plaintiffs make them available to Chipotle for depositions.

Second, as their current employer, Chipotle has unique access to facts, documents, and data regarding these witnesses, including personnel files, pay data, work schedules, and emails sent and received throughout their tenure with the company. Plaintiffs have access to none of this information, and have no means to obtain it aside from formal discovery, which Chipotle is resisting. *See* Fed. R. Civ. P. 26(b)(C)(i) ("the discovery sought … can[not] be obtained from some other source that is more convenient, less burdensome, or less expensive"). In contrast, when seeking discovery from the 582 opt-ins, Chipotle had complete access to data and other information about each of the opt-ins, *see* ECF No. 749 (Opinion dated June 6, 2014) at 8 ("Chipotle itself is in possession, or should be in possession, of much of the information or documentation it seeks, including names of supervisors, work schedules, performance reviews, and bonus compensation."), and used that information to carefully select the opt-in plaintiffs it selected to depose. *See* ECF No. 806 (Joint Status Letter dated October 30, 2014) at 5-6 (discussing the reasons for selecting various opt-ins for deposition).

*Number of Depositions of Chipotle's Witnesses*

The parties agree that Plaintiffs may depose 10 percent of Chipotle's declaration witnesses during the current discovery period. Plaintiffs agree to this limit, however, on the condition that they have access to documents for all of the witnesses and that they may later depose any declarants whom Chipotle intends to offer as trial witnesses.

*Selection of Witnesses for Deposition*

Plaintiffs have the right to choose which witnesses they will depose. Chipotle claims that it should be able to select some of the witnesses that Plaintiffs depose and that some should be selected randomly simply because this is the way the parties agreed to select opt-in plaintiffs for

depositions. The Court should reject this request because, as explained above, these situations are not parallel.

First, Chipotle's analogy to the process for selecting opt-in deponents from does not hold up. In a collective action, courts must manage discovery to ensure that the subset of opt-ins selected for discovery are a "fairly representational" sample of the collective. *See Donovan v. Bel-Lock Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985). The Court did this in its orders governing opt-in discovery. *See* ECF No. 749 (Order dated June 6, 2014); ECF No. 758 (Order dated August 1, 2014). To provide for a "fairly representational" set of opt-ins, courts have found that deponents should be selected randomly or, in the alternative, both parties should be permitted to participate in selecting the witnesses.[2] This allows a defendant to take a fair sample of discovery from opt-in plaintiffs, the great majority of whom will not testify at trial.

There are no such restrictions on discovery of hand-selected summary judgment, class certification, and trial witnesses. The concepts are entirely different. It was Chipotle's decision to proffer these witnesses and it is Plaintiffs' right to obtain information about them.

Second, here, Chipotle has already selected *all of these witnesses* and affirmatively injected them into the case. It plans on using all of them to support its case and has not disclosed which of them it plans to call at trial. Plaintiffs should be allowed to select which of these witnesses to cross-examine based on Plaintiffs' review of their data and documents and based on Plaintiffs' own theories of the case. If Chipotle wants to call witnesses at trial whom Plaintiffs do not select, it should identify which ones and make them available for depositions as well.

*No Time or Subject Matter Limits Are Appropriate Here*

The Court should reject Chipotle's request that depositions of its witnesses be limited to two hours or that questions "be limited to the content of the declarations." Ex. D (Email correspondence). Chipotle cites no authority for either request. Plaintiffs should be allowed to depose each of the 21 hand-picked witnesses for a full deposition day and be free to ask these witnesses whatever questions they believe will elicit or lead to relevant testimony. *See* Fed. R.

---

[2] *See, e.g., Helmert v. Butterball, LLC*, No. 08 Civ. 342, 2011 WL 3157212, at *1 (E.D. Ark. July 27, 2011) (noting that the Court had authorized depositions of 20 randomly selected opt-in plaintiffs); *Mims v. Carrier Corp.*, 06 Civ. 206, ECF No. 140 (E.D. Tex. June 28, 2010) (order attached as Ex. B); *Abadeer v. Tyson Foods, Inc.*, No. 09 Civ. 125, ECF No. 120 (M.D. Tenn. Nov. 25, 2009) (limited discovery to 16 named plaintiffs and ordering that plaintiffs and defendant will each select eight) (order attached as Ex. C); *Mullins v. City of N.y Y.*, 523 F. Supp. 2d 339, 355 (S.D.N.Y. 2007) (describing random selection for identifying deponents), *rev'd on other grounds* 653 F.3d 104 (2d Cir. 2011); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) (limiting discovery of 1500 opt-ins to random representative sampling); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 232 (W.D.N.Y. 2006) (limiting post-notice discovery to a reasonable sampling); *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (finding discovery of all opt-ins in collective action "just too onerous" and holding that plaintiff opt-ins should be deposed on a representative basis by job category).

The Honorable Sarah Netburn
December 9, 2014
Page 4 of 12

Civ. P. 26(b)(1) (questions must be "calculated to lead to the discovery of admissible evidence"). Chipotle has cited no authority for the proposition that Plaintiffs' questioning should be limited to the facts that Chipotle finds helpful. Again, it was Chipotle's decision to inject these 206 witnesses into the case and any relevant information they have should be fair game.

*Discovery Plaintiffs Need to Select Deponents and Learn Critical Facts*

Given the imbalance in access to information, Chipotle should produce a limited set of documents for each of its witnesses. Plaintiffs have requested, and Chipotle has opposed, production of personnel files, pay data, scheduling data, prep deployment charts, and schedules for each witness. (Plaintiffs are *not* requesting email discovery from all 206 witnesses). This discovery will provide Plaintiffs with at least *some* information to allow them to select which witnesses to depose. It will also give Plaintiffs access to critical facts that will help them rebut the testimony of the 206 witnesses (all of which Chipotle plans to use in motion practice and at trial) and to support Plaintiffs' claims in this case. Without this, Plaintiffs are completely in the dark with respect to these witnesses.

Chipotle can easily gather all of this information. Chipotle has not claimed that this information is unduly burdensome or costly to produce, nor could it, given that the majority of the information that Plaintiffs seek is data that is easily accessible through a query run against Chipotle's centralized data systems. Even personnel files are stored centrally in regional offices. Because the declarants worked in only six states, these files are not be burdensome to collect.

For more than 11 weeks, *see* ECF No. 767 (Letter dated Aug. 25, 2014), Chipotle combed through its current employee ranks, carefully selected cooperative witnesses, and drafted declarations for them to sign. In doing so, Chipotle had every bit of information about these witnesses at its disposal, including their personnel files, their compensation data, their schedules and other human resources data, and their emails. Chipotle used this information to ensure that it procured declarations only from the witnesses it believed would be helpful.[3] Plaintiffs should have the right to make the same kind of informed decisions.

Notably, Plaintiffs have *not* requested email discovery from all 206 witnesses. In order to minimize Chipotle's burden, Plaintiffs propose that Chipotle produce emails *only for the deponents whom Plaintiffs select for depositions*. Chipotle refuses because it claims that producing emails from these witnesses' Chipotle email accounts Chipotle email accounts would infringe on their privacy rights. However, Chipotle is clear with its employees that they should not expect that their Chipotle email accounts are private or confidential, as set forth in Chipotle's own employee handbook.[4] *See also United States v. Finazzo*, No. 10 Civ. 457, 2013 WL

---

[3] Indeed, Chipotle obtained acknowledgements for at least 5 witnesses whose declarations it did not produce.

[4] Ex. E (Restaurant Management Handbook) at 33 ("No Right to Privacy. There is no individual right to privacy on Chipotle computer systems and passwords do not guarantee confidentiality. Users should not have an expectation of privacy while using Company-owned or

The Honorable Sarah Netburn
December 9, 2014
Page 5 of 12

619572, at *9 (E.D.N.Y. Feb. 19, 2013) (noting that a majority of courts conclude that an employer's reservation of a right to review e-mails destroys any reasonable expectation of privacy an employee may have in work related e-mail, whether or not the employer routinely reviews the e-mails); *Long v. Marubeni Am. Corp.,* No. 05 Civ. 639, 2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006) (finding no expectation of privacy where employer's policy instructed employees they had "no right of personal privacy" and the employer reserved the right to monitor its systems). Moreover, before obtaining declarations from these witnesses, Chipotle most likely informed them that they might have to be deposed, be subject to discovery, or testify at trial. Notably, Chipotle has not claimed that this email production would be unduly burdensome.

        *Mutual Deadline for Producing Additional Declarants*

The parties have agreed that they will produce any declarations for new witnesses by no later than February 2, 2015, and that both parties will produce new declarations on a rolling basis, as they are obtained. Plaintiffs are working on gathering declarations from opt-ins and class members, but do not anticipate a large number of declarations, and certainly nothing near the scope of the 206 declarations produced by Chipotle. Plaintiffs will agree to make all declarants available for deposition.

      **B.**      <u>**Opt-In Plaintiff Tony Smith's Consent to Join Form**</u>

The FLSA does not provide a standard that courts should follow when considering whether to include opt-in plaintiffs whose consent forms are filed after the court-imposed deadline has passed. *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009). Courts in the Second Circuit generally consider: "(1) whether good cause exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Benavidez v. Piramides Mayas Inc.*, Nos. 09 Civ. 5076, 09 Civ. 9574, 2013 WL 1627947, at *3 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Ruggles*, 687 F. Supp. 2d at 37).

Plaintiffs' initial position is that the Court should accept Mr. Smith's consent form because three of the five relevant factors clearly favor allowing him to participate. First, it will not cause Chipotle any real prejudice to add one additional opt-in to a 582 opt-in collective. *See Benavidez*, 2013 WL 1627947, at *3 (allowing inclusion of two opt-in plaintiffs in 74 plaintiff action); *Ruggles*, 687 F. Supp. 2d at 38 (finding "relatively benign" inclusion of ten opt-in plaintiffs when over 300 already had consented).

---

Company-leased equipment. Information passing through or stored on Company equipment can and may be monitored, retrieved, accessed, copied, downloaded, listened to or deleted, by Chipotle, its agents, employees, or representatives, at any time, without the permission or prior notice of any individual. You should be aware that deleting an e-mail message from a computer does not purge it from the system. Use of codes or passwords not authorized by Chipotle is prohibited.").

Second, judicial economy surely favors allowing an additional opt-in plaintiff in an existing lawsuit over a new lawsuit. *See Velasquez v. Digital Page, Inc.*, No. 11 Civ. 3892, 2014 WL 6751574, at *2 (E.D.N.Y. Dec. 1, 2014) ("In light of the fact that [the late opt-in plaintiff] could go off and commence his own lawsuit, judicial economy also favors joinder in this litigation."); *Ruggles*, 687 F. Supp. 2d at 37-38 ("there is little economy in spawning identical FLSA lawsuits that . . . might be properly joined"); *accord Benavidez*, 2013 WL 1627947, at *3.

Third, the FLSA's remedial purposes favor a forgiving approach to allowing workers to assert their rights. Courts have repeatedly held that individuals who wish to opt in to a collective action "should be given the maximum latitude consistent with fairness to the defendant." *Raper v. Iowa*, 165 F.R.D. 89, 91 (S.D. Iowa 1996) (internal quotation marks omitted) (quoting *Kelley v. Alamo*, 964 F.2d 747, 751 (8th Cir. 1992)). "[A] generous reading [of the FLSA], in favor of those whom Congress intended to benefit from the law, is . . . appropriate when considering issues of time limits and deadlines." *Ruggles*, 687 F. Supp. 2d at 38 (internal quotation marks omitted) (quoting *Kelley*, 964 F.2d at 750); *see also Benavidez*, 2013 WL 1627947, at *3; *Robinson-Smith v. Gov't Emps. Ins. Co.*, 424 F. Supp. 2d 117, 123-124 (D.D.C. 2006).

As for good cause, Plaintiffs have not had the opportunity to speak with Mr. Smith to ascertain whether there was good cause for the delay. In any event however, courts routinely allow late filings without any showing of good cause. *Benavidez*, 2013 WL 1627947, at *3 (permitting late filings despite fact that "plaintiffs did not provide good cause . . . as they failed to explain why these two opt-in consent forms were not filed timely"); *Ruggles*, 687 F. Supp. 2d at 37 (same); *see also Robinson-Smith*, 424 F. Supp. 2d at 123-24 (including four opt-in plaintiffs to collective of 269 where they represented little additional exposure for defendant and required no additional discovery); *Mascol v. E&L Transp., Inc.*, No. 03 Civ. 3343, 2005 WL 1541045, at *8 (E.D.N.Y. June 29, 2005) (summarily joining opt-in plaintiff to action, despite untimely notice).

Mr. Smith's long delay is not necessarily dispositive. *See Helton v. Factor 5, Inc.*, No. 10 Civ. 4927, 2014 WL 1725734, at *2 (N.D. Cal. Apr. 29, 2014) (allowing late filers who missed deadline by "approximately nine months"); *Raper*, 165 F.R.D. at 92 (allowing untimely filings after the liability, but before damages, phase of the trial).

If the Court is not inclined to allow Mr. Smith to join this case without further submissions, Plaintiffs respectfully request an opportunity to speak with Smith to ascertain the reason for his late filing.

## II.     Defendant's Position

### A. DECLARANT DISCOVERY

During a meet and confer conference on December 3, 2014, Plaintiffs presented, for the first time, their proposal regarding the scope of discovery they intend to seek in connection with the declarations produced by Chipotle. In particular, Plaintiffs proposed taking depositions of

10% of the declarants (21 depositions), but only if Plaintiffs could select all deponents and if Chipotle would agree that only declarants who were deposed would be used as trial witnesses. Plaintiffs also proposed that Chipotle produce documents, including personnel files, payroll data, employment history, schedules and various other data reports, for each of the declarants (over 200) so that Plaintiffs could review these documents in order to select the declarants for depositions. Finally, Plaintiffs requested extensive production of electronically stored information ("ESI") for all declarants who are selected for depositions.

At Chipotle's request, Plaintiffs later provided their proposal on declarant discovery to Chipotle in writing by email dated December 5, 2014. Chipotle responded to Plaintiffs' proposal by email dated December 6, 2014. A copy of the email chain including Plaintiffs' proposal and Chipotle's response is attached hereto as Exhibit D. The parties met and conferred by phone on December 8, 2014, but were unable to come to an agreement regarding the scope of discovery.

Set forth below is Chipotle's position regarding declarant discovery.

1. **Number of Depositions**

Plaintiffs proposed deposing 10% of the declarants (21). Chipotle has agreed to Plaintiffs deposing 10% of the declarants and believes that this percentage is in line with the Court's expectation that the scope of declaration discovery be consistent with the scope of opt-in discovery. However, as set forth below, Chipotle will not agree to tie the number of declarant depositions to any limitation on trial witnesses and does not agree that all declarants should be selected by Plaintiffs.

2. **Selection of Deponents**

During our first meet and confer, Plaintiffs proposed selecting 100% of the depositions themselves. In its response to Plaintiffs' initial proposal, Chipotle offered a counterproposal that was in line with the Court's expectation that declarant discovery be comparable to opt-in discovery. In particular, Chipotle proposed that 50% of the deponents be selected by Plaintiffs, 25% be selected by Chipotle and 25% be randomly selected by the parties. During the second meet and confer, Plaintiffs did not address Chipotle's counterproposal and stated that it still intends to ask the Court to depose 10% of the declarants, as well as any declarants whom Chipotle intends to call as trial witnesses. Plaintiffs further indicated that, if Chipotle informed them which declarants it intended to call as trial witnesses now, it would select those individuals for deposition.

Chipotle is not at a point where it is prepared to identify its trial witnesses and, as explained more thoroughly below, it is not willing to lock itself into a position where it is limited to calling only the declarants whom it selects as deponents as trial witnesses. Nonetheless, since Plaintiffs have defined the class and thereby selected the pool of potential class members, it is Chipotle's position that it is entitled to select the declarants to be deposed, not the other way around. As a middle ground, however, Chipotle proposes the following selection process that is comparable to opt-in discovery: 50% of the deponents selected by Plaintiffs, 25% selected by Chipotle and 25% randomly selected by the parties.

3. **Document Production for Declarants**

Plaintiffs propose that all non-ESI documents relating to each declarant (including personnel files, payroll data, schedules, employment history, Aloha data, etc.) be produced for every declarant (over 200) so that Plaintiffs can review this information in order to determine who to depose. In their December 5th email, Plaintiffs additionally proposed serving discovery requests requiring Chipotle to produce contact information for every employee who worked with the declarants and to supplement prior productions of job histories and contact information for restaurant managers.[5] Chipotle believes that these requests are inherently burdensome, unnecessary, harassing and clearly intended to escalate Chipotle's already onerous discovery costs.

To begin, as explained to Plaintiffs' counsel and as evidenced by the process involved in producing the similar documents and data in connection with the opt-in deponents, it will take weeks to gather the paper files and various data reports requested by Plaintiffs for over 200 individuals. The personnel files are spread out over the country at various regional offices and it will require coordinating with several offices and employees to find and pull these documents. In addition, Plaintiffs have requested several forms of data reports which will require writing and then processing individual queries over several data systems for each declarant. Even if Chipotle could drop all of its other work, which it cannot do if its business is to keep running, it would take at least a couple of weeks for Chipotle to create the necessary queries and run all of the required reports, before they could be reviewed by attorneys for accuracy and processed for production. Moreover, the costs involved with processing and reviewing all of this documentation will include multiple hours of attorney time for each to declarant in order to coordinate with the client, coordinate with the vendor, review documents and review data reports and finalize productions, as well as vendor costs associated with processing and preparing the productions for each of the individual declarants. Therefore, the burden and costs alone are grounds for refusing Plaintiffs' request to produce this extensive amount of documentation.

Even if the burden and costs on Chipotle were not so great, the extent of discovery sought by Plaintiffs is wholly unnecessary for a number of reasons. First, Chipotle already provided Plaintiffs with contact information and job history for the managers in the restaurants. As a result, Plaintiffs can use this information to review the job history of the declarants. Second, to the extent that they will be deposing 10% of the declarants, they will be entitled to discover any information regarding the declarants' job history and experience during the depositions. It is Chipotle's position that Plaintiffs are not entitled to unlimited discovery and that this representative sampling, which is comparable to the representative sampling of opt-ins from whom Chipotle is able to seek discovery, is more than sufficient.

---

[5] During the meet and confer process, Plaintiffs also proposed serving interrogatories and discovery requests seeking information and data related to any person referenced by the declarants in a declaration and asked that Chipotle expedite responses to those requests before the requests were even served. For all of the reasons explained above, these requests are overly burdensome and unnecessary. To the extent Plaintiffs want additional information regarding the individuals referenced in the declarations, it can obtain that information directly from the declarants who are deposed during the depositions.

The Honorable Sarah Netburn
December 9, 2014
Page 9 of 12

Further, assuming that Chipotle could gather, review, process and produce this extensive amount of paper and data in just a few weeks, there would still be very little time remaining in discovery to then complete the depositions. For example, if Chipotle were to produce all of the requested documents by the end of January, this would leave only two months to then complete the ESI discovery that Plaintiffs are demanding for each deponent and then schedule and complete 21 depositions. As we have already seen from the opt-in discovery process, it will not be possible to complete the level of discovery that Plaintiffs seek in the time remaining in the discovery period.

Plaintiffs' proposal is clearly not consistent with the scope of discovery allowed in connection with the opt-in plaintiffs, where Chipotle is only required to make productions in connection with opt-ins selected for deposition. In addition, it is Chipotle's position that the scope of depositions should be limited to the content of the testimony provided in the declarations and related questions regarding the declarants employment background. As a result, Plaintiffs should only be entitled to very limited document discovery, if any, in connection with each declarant who is deposed. In particular, Chipotle proposes that it produce information in personnel files limited to periods of employment and positions held for any declarant selected for deposition within 10 days prior to a scheduled deposition.

4. **ESI Production**

Plaintiffs proposed that they would only seek ESI production in connection with declarants who are selected for depositions, but indicated during our meet and confer that the scope of the ESI production may be broader than what Chipotle is producing in connection with the opt-in deponents. Chipotle's understanding is that, at a minimum, Plaintiffs would want to search the email account of each restaurant where the declarant worked as an apprentice, but would also possibly want to search accounts of other employees who worked with the declarants. As previously explained to the Court in connection with ESI discovery related to opt-in deponents, searching the email accounts of restaurants where deponents worked has proven to be both burdensome and costly.

More specifically, with regard to the opt-in deponents, Plaintiffs demanded that Chipotle search the restaurant email accounts and apply numerous search terms to the data contained in those accounts. This requires obtaining the email account data from the client, paying a vendor to process that data, paying a vendor to run search terms on the data, paying a vendor to process the search results for review, reviewing the search results and then processing the responsive documents for production. From beginning to end, this process has been taking at least three to four weeks to complete for each opt-in deponent, assuming no technical issues are encountered in connection with the data collection. In addition, the cost of processing, searching and reviewing the search results, including vendor processing fees and attorney time, is upwards of $3,000 to $5,000 per deponent, depending about the amount of data and number of search results. Accordingly, the cost of ESI productions for 21 declarants could be anywhere from $63,000 to $105,000, depending upon the volume of data.

Aside from the burden and costs, it is highly unlikely that the parties will have time to complete the paper and ESI productions and still have enough time left in discovery to take the

depositions. This is especially true in light of the Plaintiffs' burdensome production proposal, which would require Chipotle to produce documents and data for over 200 declarants before the deponents are selected and before the ESI process can even be started.

For all of the additional reasons explained above in connection with Plaintiffs' non-ESI document production proposal, Chipotle believes that this ESI proposal is equally unreasonable. Moreover, we note that the ESI productions relating to opt-in plaintiffs were more appropriate since the opt-ins affirmatively opted into the action and, therefore, deliberately and knowingly opened themselves and their work histories up to discovery. The declarants, on the other hand, have not affirmatively opted in to the action or waived any privacy right and Chipotle does not believe that simply submitting a declaration opens them up to the same level (or possibly more burdensome level) of discovery than the opt-in plaintiffs. As a result, Chipotle's position is that ESI discovery is not appropriate in connection with the declarants.

5. **Testimony from Declarants**

Plaintiffs initially asked Chipotle to agree that it will only seek testimony at trial from declarants selected for deposition, while at the same time proposing that they select all of the deponents. Chipotle refused to agree to this self-serving proposal which would allow Plaintiffs to control the selection of trial witnesses in this case. During the meet and confer process, Plaintiffs then asked Chipotle to identify the declarants whom it intends to call as trial witnesses so Plaintiffs could select them for deposition. However, Chipotle is not in a position at this time to identify its trial witnesses. As a result, Chipotle does not agree to limit itself to seeking trial testimony from deponents only, especially if Plaintiffs are allowed to select all of those deponents as they propose.

6. **Deposition Time Limit**

In its email response to Plaintiffs' proposal on declarant discovery (attached as Exhibit D), Chipotle proposed a time limit of two hours for each declarant deposition. Plaintiffs have not responded directly to this proposal. As set out above, Chipotle believes that the scope of the deposition should be limited to the content of the declarations and, therefore, it is Chipotle's position that two hours will be sufficient to review the contents of the declaration with each deponent.

7. **Discovery from Plaintiffs' Declarants**

During the meet and confer process, Plaintiffs indicated that they are in the process of obtaining up to 40 declarations. As set forth in Exhibit D, Chipotle also proposed discovery in connection with any declarations produced by Plaintiffs that is consistent with the scope of discovery in connection with Chipotle's declarants. In particular, Chipotle proposed deposing 10% of Plaintiffs' declarants, with 50% of the declarants being selected by Chipotle, 25% by Plaintiffs and 25% randomly, and document discovery consistent with the proposals outlined above. During the parties' last meet and confer, Plaintiffs did not address Chipotle's proposal in particular, but Plaintiffs' counsel indicated that they would be willing to make all of their

declarants available for depositions.  Since the declarations have not yet been produced, it is too early to determine how many depositions Chipotle will need to take.

8. **Production of Additional Declarations**

The parties have agreed to a mutual production deadline of February 2, 2015 for either party to produce any additional declarations obtained.  The parties have also agreed to produce additional declarations on a rolling basis as they are obtained.

### B.  UNTIMELY CONSENT FORM SUBMITTED BY TONY SMITH

Chipotle submits that an Opt-In Consent Form, allegedly signed by Tony Smith on December 31, 2013, but not post-marked until November 21, 2014, should be deemed untimely and Mr. Smith should not be permitted to participate in this action.  When determining whether a late opt-in consent form should be considered timely, Courts in this District consider factors such as: (i) whether "good cause" exists for the late submission; (ii) prejudice to defendant; (iii) the length of time after the deadline passed that the consent form was filed; (iv) judicial economy; and (v) the remedial purposes of the FLSA.  *See, e.g., Benavidez v. Piramides Mayas Inc.*, No. 09-CIV-5076 (KNF), 2013 WL 1627947, at *3 (S.D.N.Y. Apr. 16, 2013) (citing *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009)).  No one factor is determinative and the Court need not even consider all of them.  *See, e.g., Ruggles*, 687 F. Supp. 2d at 37.

Here, Chipotle submits the consent should be stricken for three reasons.  First, Plaintiffs cannot offer any "good cause" for a nearly one-year delay between execution of the consent form and its mailing, or even the ten month delay from the close of the Opt-In Period.  *See Ayers v. SGS Control Svcs., Inc.*, No. 03-CIV-9078 (RMB), 2007 WL 3171342, at *4-5 (S.D.N.Y. Oct. 9, 2007) (striking two untimely consents where there was no affidavit establishing good cause for the delay).  At a minimum, and subject to the other reasons set forth below, the Court should not permit participation without an affidavit explaining the egregious delay.  *See Morangelli v. Chemed Corp.* 275 F.R.D. 99, 121 (E.D.N.Y. 2011) (directing untimely individuals to file affidavits explaining reason for delay).

Second, Chipotle will suffer prejudice if Mr. Smith is entitled to participate.  Chipotle formulated its discovery strategy, including its methodology for selecting Opt-In Plaintiffs for written discovery and deposition, based upon its analysis of the collective that has been in place for approximately ten months.  *See Sweeney v. U.S.P.S.*, No. 08-CV-4417 (ARL), 2013 WL 5744490, at *17 (E.D.N.Y. Oct. 23, 2013) (rejecting nine consents filed approximately 19 months after deadline because of prejudice to defendant).  Indeed, prior to a recent extension of discovery, it had been scheduled to close on December 31, 2014, just over one month after the consent was filed.  In addition, while Chipotle does not yet know the identity of the offender, Chipotle should be entitled to defend against his or her claims based upon available limitations defenses.

Third, the Section 216(b) collective process and the impact of Orders of the Court will be upset if an individual is entitled to flout the deadlines imposed by the Court.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) affirming Court's discretion in FLSA action to

The Honorable Sarah Netburn
December 9, 2014
Page 12 of 12

"set a cutoff date for the filing of consents, as it was bound to do if the action was to proceed in diligent fashion."). Although currently the Court is considering just one untimely consent, it is entirely possible that this same situation will present itself again. The integrity of the collective process all but requires that an individual who fails to comply should suffer the consequences of his or her delay.[6]  *See Morangelli,* 275 F.R.D. at 121 (discussing the need for a Court to enforce an opt-in deadline).

        Respectfully submitted,

        Justin M. Swartz
        *Counsel for Plaintiffs*

        /s/ Lisa M. Lewis
        Lisa M. Lewis
        *Counsel for Chipotle Mexican Grill, Inc.*

cc:    All counsel (via ECF)

---

[6] Chipotle reserves its right to challenge the timeliness of all consents post-marked or filed after the close of the Opt-In Period.