OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

December 9, 2014

**By ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Scott v. Chipotle Mexican Grill, Inc.* No. 12-cv-8333 (ALC) (SN)

Dear Judge Netburn:

        We represent Plaintiffs in the above-referenced Fair Labor Standards Act ("FLSA") and state law class and collective action against Defendant Chipotle Mexican Grill, Inc.  We write to provide the Court with the information requested by the Court at the conference held on November 20, 2014, including (1) Plaintiffs' support for the proposition that Chipotle received legal advice regarding the classification of apprentices, including any relevant deposition testimony; and (2) the status of unresponsive plaintiffs, including a detailed chart as discussed at the hearing.  *See* ECF No. 826.

I.      **Even the Limited Information Chipotle Has Been Willing to Disclose Demonstrates that Chipotle Consulted With Attorneys Regarding Its Decision to Classify Apprentices as Exempt.**

        Although Chipotle has withheld almost all discovery about its classification decisions, the limited evidence it has produced[1] clearly shows that it received attorney input in making

_____

[1]     Plaintiffs have not yet had an opportunity to depose any witnesses other than Chipotle's Fed. R. Civ. P. ("Rule") 30(b)(6) witness.  As detailed in Plaintiffs' earlier submission, Mr. Gottlieb's testimony was severely limited by Chipotle's over-broad privilege objections, which kept Plaintiffs from discovering who was involved in decisions, when any decisions were made, and what documents were consulted in making those decisions.  ECF No. 774 (Letter dated Sept. 4, 2014) at 3-4; ECF No. 774-3 (Ex. 3 - List of Overly Broad Privilege Objections).  Given the contradictory positions that Chipotle has taken regarding its apprentice classification in this litigation, and in an effort to understand fully the history of Chipotle's relevant classification decisions, Plaintiffs recently served comprehensive interrogatories asking Chipotle to identify dates, participants, and documents relating to Chipotle's discussions or decisions to classify as exempt or non-exempt apprentices, apprentices in California or any other state, any "assistant

The Honorable Sarah Netburn
December 9, 2014
Page 2 of 5

decisions to classify apprentices as exempt.  Chipotle admitted as much in its deposition
testimony, in its privilege log, in its discovery responses, and in its argument before the Court.

First, Chipotle's designated Rule 30(b)(6) witness, David Gottlieb, Chipotle's Director of
Compliance and Field People Support, whose responsibilities at Chipotle include ensuring wage
and hour compliance, *see* Ex. B (Excerpts from Rule 30(b)(6) Deposition Transcript) ("Rule
30(b)(6) Tr.")) 14:18-20, 25:10-25, 29:12-17,  stated that Chipotle consulted with attorneys in
making the classification decision.  When asked about the existence of communications
regarding the apprentice classification, Mr. Gottlieb admitted that "there were communications.
They were in the context of communications and discussions *with our lawyers*."  *See id.* 64:16-
18 (emphasis added).  In fact, Mr. Gottlieb testified that he had no recollection of ever
communicating with anyone at Chipotle regarding the apprentice classification *other than* in the
presence of his attorneys.  *Id.* 65:11-15.  The full line of questioning and objections follows, for
the Court's reference:

> Q. Were you included in any communications after you joined the company regarding the
> apprentice classification?
>
> A. Communications with whom?
>
> Q.  Anybody within Chipotle.
>
> MR. SIMMONS: To the extent that you cannot answer that question without disclosing
> communications to or from counsel, I instruct you not to answer. To the extent you can
> answer the question without disclosing communications with counsel, you are free to
> respond.
>
> A. There were communications. They were in the context of communications and
> discussion with our lawyers.
>
> Q. (BY MR. SHAVITZ) Were there any communications that you had after you joined
> Chipotle independent of your lawyers but just with people on the Chipotle team?
>
> MR. SIMMONS: Same instruction.
>
> A. Same answer.
>
> Q. (BY MR. SHAVITZ) Did you ever communicate with anybody within Chipotle about
> the apprentice classification outside the inclusion of your lawyers?

---

manager" positions that pre-dated the apprentice positon, kitchen managers, service managers,
and general managers.  Ex. A (Plaintiffs' Second Set of Interrogatories).  Chipotle's responses
are due on January 2, 2015.

The Honorable Sarah Netburn
December 9, 2014
Page 3 of 5

     MR. SIMMONS: Same instruction.

     A.  I have no recollection of that.

Ex. B ("Rule 30(b)(6) Tr.") 64:16-65:15.

     In addition, during Mr. Gottlieb's deposition, Chipotle repeatedly objected on the basis of attorney-client privilege and instructed Mr. Gottlieb not to answer questions about Chipotle's decisions to classify the apprentice position as exempt.  The fact of these objections and instructions and that  Mr. Gottlieb followed them,[2]  is further evidence that Chipotle received the advice of counsel in evaluating how the apprentice position should be classified.

     Second, Chipotle's own privilege log indicates that Chipotle relied on advice of counsel. At least one email on Chipotle's privilege log, from Messner & Reeves attorney Edward Hafer to David Gottlieb and John Shunk (another attorney at Messner & Reeves), has the subject matter, "Legal advice regarding Chipotle's Apprentice Position".[3]  *See* Ex. C (Second Amended Privilege Log), Entry No. 2.

     In addition, several privilege log entries base the privilege assertion on Mr. Gottlieb's status as a lawyer because he is the only attorney listed.  *See id.* at Entry Nos. 3 & 4.  If, as Chipotle now claims, Mr. Gottlieb was not acting in his capacity as an attorney, these documents are not protected by attorney-client privilege and should therefore be produced, regardless of any ruling from the Court on the waiver issue.[4]  Chipotle wants to have it both ways – just as it wants to be able to assert the good faith defense yet shield communications that informed its state of mind, it also wants to be able to claim that Mr. Gottlieb's presence allows Chipotle to assert a privilege but only where it suits Chipotle to have it so.

---

[2]      For instance, Chipotle's counsel instructed Gottlieb not to answer a question about any analysis or opinions Gottlieb offered on Chipotle's job classifications while employed as an attorney at Messner & Reeves, and Gottlieb did not answer.  Ex. B (Rule 30(b)(6) Tr.) 31:1-32:4. Chipotle's counsel also repeatedly objected on the basis of attorney-client privilege and instructed Gottlieb not to answer any questions about communications within Chipotle about how the apprentice position should be classified on the basis of attorney-client privilege, and Gottlieb refused to answer on the basis of counsel's instruction.  *Id.* 42:6-16, 61:18-64:7, 68:19-69:3, 71:18-73:21, 74:15-24, 87:14-88:13, 89:18-90:25, 91:19-92:7, 135:3-14.

[3]      Pursuant to the Court's instruction at the September 12, 2014 conference, *see* Ex. D (Sept. Hr'g Tr.) 56:6-19, Plaintiffs reserve their objections to Chipotle's improper privilege log entries (raised in Plaintiffs' letter dated September 4, 2014, ECF No. 774 at 4-5), pending the Court's decision on the waiver issue.

[4]      Chipotle has still only produced a small fraction of the email search results that it will produce in this case (pursuant to Court order, those documents must be produced on a rolling basis by January 30, 2015).  ECF No. 826.

The Honorable Sarah Netburn
December 9, 2014
Page 4 of 5


Third, Chipotle's discovery responses indicate reliance on advice of counsel – *including* those served *after* the Answer to the Second Amended Complaint (purporting to remove the issue of Chipotle's reliance on counsel from its defenses). Chipotle asserted attorney-client privilege and attorney work product privilege in response to Plaintiffs' document requests and interrogatories that sought information on the decision to classify apprentices as exempt. *See, e.g.*, Ex. E (Def.'s Resps. Pls.' Fourth Req. Produc. Docs.), Nos. 28, 31, 32 & 33; Ex. F (Def.'s Resps. Pls.' Fifth Req. Produc. Docs.), Nos. 30, 31, No. 32 (asserting privilege in response to request for "Opinions sought or received by Chipotle from any state or federal governmental entities (including but not limited to the Department of Labor or any state agency) about whether apprentices should be classified as exempt or non-exempt from overtime pay requirements under state or federal overtime laws."), No. 34 (same for request for "Correspondence between or among human resources or corporate employees regarding changes in Apprentice job description, job requirements, and exempt status."), No. 35 (same for "All drafts and versions of Apprentice job descriptions and documents describing Apprentice job duties, including sufficient information to identify individuals who contributed to revisions of such documents."), No. 40 (same for "Any and all documents supporting the affirmative defenses raised by Defendant and/or as set forth in Chipotle's Answer to the Second Amended Complaint.").[5]

Fourth, Chipotle passed on the opportunity to deny that it received legal advice with respect to its classification decision. When the parties first argued this issue before the Court on September 12, 2014, Chipotle refuse to stipulate that it did not talk to lawyers about its classification decisions prior to this lawsuit. *See* Ex. D (Hearing Transcript dated Sept. 12, 2014) ("Sept. Hr'g Tr.") 37:3-16 (". . . that is not something that we'd be willing to stipulate to.")

## II.     Status of Unresponsive Plaintiffs.

To protect their clients' confidential information, Plaintiffs are sending the Court a chart[6] via hand delivery for *in camera* review. The chart details the following information regarding the opt-in plaintiffs who have been unresponsive to Plaintiffs' attempts to schedule depositions or obtain written discovery: (1) name; (2) whether they have been selected for deposition or written discovery-only; (3) whether they are a current or former Chipotle employee; (4) opt-in date; (5) date selected for deposition; (6) date disclosed as unresponsive; and (7) points of contact with them since they opted in and any indications that they have not been receiving Plaintiffs' communications. In summary, the chart reflects the following:

- 30 opt-ins plaintiffs selected for deposition have been unresponsive (11 are current employees);
- 7 opt-ins selected for written discovery have been unresponsive (2 are current employees); and

---

5       *See also* Ex. G (Def.'s Resps. Pls.' First Set of Interrogs.), Nos. 3, 4, 5, 21.
6       Plaintiffs specifically reserve and do not waive attorney-client privilege and work product protections with respect to their counsel's conversations with opt-in plaintiffs.

The Honorable Sarah Netburn
December 9, 2014
Page 5 of 5

- 10 opt-ins selected for deposition have indicated a desire to withdraw from the case (7 are current employees).

Plaintiffs are prepared to submit a copy of the letter sent to unresponsive opt-in plaintiffs for *in camera* inspection, but ask that the Court issue an order that submitting the letter to the Court will not effect any waiver of any Plaintiffs' or opt-ins' attorney-client privilege, confidentiality rights, or work product protections, and that all such privileges, rights, and protections are specifically preserved.  Chipotle does not oppose this request.

Respectfully submitted,

Justin M. Swartz

cc:     All counsel (via ECF)