UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MAXCIMO SCOTT and JAY ENSOR, et al., on
behalf of themselves and all others similarly situated,

                                              Plaintiffs,

                -against-

CHIPOTLE MEXICAN GRILL, INC.,

                                              Defendant.
-----------------------------------------------------------------X

12-CV-08333 (ALC)(SN)

OPINION & ORDER

**SARAH NETBURN, United States Magistrate Judge:**

      The plaintiff and class representative Maxcimo Scott filed a nationwide class and collective action complaint on November 15, 2012, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA" or the "Act"), and the New York Minimum Wage Act, N.Y. Lab. Law, art. 6 §§ 190, et seq., art. 19 §§ 650, et seq. ("NYLL"), against the defendant Chipotle Mexican Grill, Inc. ("Chipotle"). Later amendments to the complaint added class action claims under Missouri, Colorado, Washington, Illinois and North Carolina law. The plaintiffs – salaried "apprentices" employed or formerly employed by Chipotle restaurants nationwide – allege that Chipotle did not pay them overtime and spread-of-hours compensation as required by federal or state law. On December 7, 2012, the Honorable Andrew L. Carter, Jr. referred this matter to my docket for general pretrial supervision. Judge Carter conditionally certified the plaintiffs' collective action on June 20, 2013. As of the issuance of this order, over 580 current and former apprentices have joined the six named plaintiffs as opt-in plaintiffs.

      As part of its affirmative defenses, Chipotle invokes 29 U.S.C. § 259 to claim that it relied on administrative authority in classifying the plaintiffs and is thus free from liability (the

"Eleventh Affirmative Defense"), and 29 U.S.C. § 260 for the proposition that it did not act willfully and thus should not be subjected to FLSA's liquidated damages provision (the "Twelfth Affirmative Defense"). Under the language of Chipotle's Answer to the Second Amended Complaint, it claims to have relied on state and federal regulations, "but not upon advice of counsel." Answer to Second Am. Compl. at 23.

Before the Court is Chipotle's Motion for a Protective Order under Federal Rule of Civil Procedure 26(c) to prohibit plaintiffs from discovery of Chipotle's attorney-client communications regarding the decision to classify apprentices as "executives" and thus exempt from overtime pay. Following pre-motion letters, Chipotle filed its Motion for a Protective Order on September 19, 2014. On October 1, 2014, the plaintiffs filed their opposition to the motion, including the Declaration of Justin M. Swartz (the "Swartz Declaration") and appending Exhibits A through E. On October 8, 2014, the defendant replied, including the Declaration of Lisa M. Lewis (the "Lewis Declaration") and appending Exhibit A. The Court heard argument on the motion on November 20, 2014, and further submissions were permitted thereafter.

## LEGAL STANDARDS

I.  **At-Issue Waiver of Attorney-Client Privilege**

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 393 (1981); see also In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984). Because the privilege "stands in derogation of the public's right to every man's evidence . . . it ought to be strictly confined within the narrowest possible

limits consistent with the logic of its principle." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (internal quotation marks and citation omitted).

The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential and (3) was made for the purpose of obtaining legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) ("Erie I"); see also United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011).[1] The party asserting the privilege bears the burden of establishing facts to prove "the essential elements of the privileged relationship." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224–25 (2d Cir. 1984). "The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice." United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012).

That privilege, however, is not sacrosanct. In United States v. Bilzerian, the Court of Appeals held that where a party pleads that it "thought [its] actions were legal," it puts its own "knowledge of the law and the basis for . . . [its] understanding of what the law required in issue," including "conversations with counsel." 926 F.2d 1285, 1292 (2d Cir. 1991). In Bilzerian, a defendant sought to use good faith as a defense to securities fraud charges, while also claiming that his conversations with counsel were privileged. The Court of Appeals held that the privilege normally protecting attorney-client communications regarding the relevant issue "may implicitly

---

[1] An alternative articulation of the attorney-client privilege states:
> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, 119 F.3d 210, 214 (2d Cir. 1997) (quotation marks and citation omitted); see also Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, 03 Civ. 5560(RMB)(HBP), 2007 WL 473726, at *7 (S.D.N.Y. Feb. 14, 2007).

be waived when defendant asserts a claim that in fairness requires examination of protected communications." Id. The court explained that even though the defendant claimed his belief was "personal" rather than one based on the advice of counsel, his "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." Id.

The Court of Appeals continues to apply the at-issue waiver doctrine as articulated in Bilzerian.[2] In In re County of Erie, 546 F.3d 222 (2d Cir. 2008) ("Erie II"), a case under 42 U.S.C. § 1983, plaintiffs sought discovery of e-mails between defendants regarding allegedly unconstitutionally invasive strip-search policies for those entering county detention facilities. The court explained that "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." 546 F.3d at 228-29. Ultimately, the court held that "[u]nderlying any determination that a privilege should be forfeited is the notion of unfairness," and that, for at-issue waiver to occur, "a party must *rely* on privileged advice from his counsel to make his claim or defense." Id. at 229.[3] The court specifically "decline[d] to specify or speculate as to what degree of reliance is required," noting that rather than claiming good faith or state of mind, which would have put the privileged communications at issue, the defendant in Erie II claimed a defense of qualified immunity. Id.

---

[2] Courts within this circuit also often rely on the three-factor test of Hearn v. Ray, 68 F.R.D. 574 (E.D. Wash. 1975), which examines whether "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Id.

[3] Notably, "while the Erie [II] Court narrowed the Hearn test, the court did nothing to undermine the principles adopted in Bilzerian and subsequently endorsed by courts in this district." MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 09 Civ. 3255 (RWS), 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012). Thus, the Court will adhere to the Bilzerian formulation of the at-issue waiver test.

Under Bilzerian, Erie II and their progeny, if (1) a defendant claims the defense of good faith, and (2) that claim can only be scrutinized by examining the disputed communications, then that defendant has waived the privilege. "Forfeiture of this type is premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." John Doe Co. v. United States, 350 F.3d 299, 304 (2d Cir. 2003). "[C]ourts within this Circuit, relying on Bilzerian, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice." Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012). Thus, as a matter of fairness, waiver may apply even if the defendant claims to have ignored the advice of counsel because "[e]ven if . . . [Defendant's] beliefs about the lawfulness of his conduct were actually separate from legal advice . . . Plaintiffs still would be entitled to know if [Defendant] ignored counsel's advice." Arista Records LLC v. Lime Grp. LLC, 06 Civ. 5936 (KMW), 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011 (internal citations and quotation marks omitted)).

> Courts have recognized that a party need not explicitly rely upon advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense. Because legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness . . . .

Leviton Mfg. Co. v. Greenberg Traurig LLP, 09 Civ. 8083 (GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010). See also, e.g., John Doe, 350 F.3d at 304 ("[I]n Bilzerian, because the legal advice the defendant in fact received might well have demonstrated the falsity of his claim to the jury about his belief, he could not fairly both assert testimony that implicitly communicated his version of the legal advice he received and simultaneously withhold

5

disclosure of the legal advice he actually received."); MBIA, 2012 WL 2568972, at *7-8 (collecting cases and stating that, "[a]fter Erie [II], the Southern District has continued to recognize the broader waiver principles endorsed by the Second Circuit"); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.").

## II.  Good Faith Defenses Under §§ 259-60

Under § 16(c) of the FLSA, 29 U.S.C. § 216(c), an employer who violates the minimum compensation provisions of the FLSA is liable for both past due wages and, in addition, an equal amount of liquidated damages. The Act, however, allows defendant employers to avoid liability for failure to pay overtime "if [the defendant] pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259. Section 260 of the Act allows the employer found to be liable for past wages to allege a reasonable, good-faith belief that it was not violating FLSA to avoid liability for liquidated damages. See 29 U.S.C. § 260. A lack of willfulness also affects the Act's statute of limitations, which is generally two years but extended to three years for willful violations. 29 U.S.C. § 255(a).

To establish good faith, an employer must show more than its subjective state of mind. The regulations provide that "good faith" is an objective test: whether the employer "acted as a reasonably prudent man would have acted under the same or similar circumstances. 'Good faith'

requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a) (citing legislative history).

### A.     Good faith is a requirement for a defense under § 259

The good faith requirement of § 259 is evident in both the language of the statute and in case law. The statute itself requires that the defendant "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on" at least one of a variety of sources. 29 U.S.C. § 259. The Court of Appeals for the Second Circuit has said that this is a high hurdle for defendants to clear. See Equal Employment Opportunity Comm'n v. Home Ins. Co., 672 F.2d 252 (2d Cir. 1982).

In EEOC, an employer defended itself against allegations that it had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, by invoking reliance upon an interpretive ruling and opinion letters from the Department of Labor under § 259.[4] Id. at 256. In vacating a summary judgment ruling in favor of the defendant, the Court of Appeals held that the § 259 defense "requires the employer to establish three interrelated elements: (1) that its action was taken in reliance on a ruling of the Administrator, (2) that it was in conformity with that ruling, and (3) that it was in *good faith*." Id. at 263 (emphasis supplied). The court held that the deposition testimony of Home Insurance's general counsel that he had examined the Department of Labor papers did not establish any of the necessary elements because (1) the letters, which merely repeated the ADEA's requirements, provided no guidance on interpreting the law; (2) the defendant had not shown that it acted "in conformity with" the letters; and (3) the defendant had not properly demonstrated "good faith" within the meaning of § 259.

---

[4] Section 259 of the Act offers defenses under several statutory schemes, including FLSA and the ADEA.

7

The Court of Appeals explained that the good faith element of the defense is not an option; rather, it is "[t]he final element that an employer must establish in order to prove a [§ 259] defense." Id. at 265. The defendant faces a high burden to demonstrate that it has done more than merely possess an "'honest intention to ascertain'" whether it was complying with FLSA; the defense "was not intended to allow an employer to insulate itself from liability for the consequences of its own improvident interpretation of the statute." Id. at 266 (internal citations omitted). Thus, "where the administrative interpretation is uninformative and leaves the employer to make its own reading of the precise requirements of the statute, the employer's honest, but unsuccessful, intention to obtain information does not relieve it of liability." Id.

  **B. Good faith is also a requirement for a defense under § 260**

Case law and a facial reading of § 260 show that this defense, like § 259, requires a showing of good faith. Section 260 "affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 260). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" Id. (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), modified on other grounds by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003)).

Unlike § 259, which offers a simple affirmative defense to liability, the § 260 defense presents a way for liable defendants to obtain an exception to the normal rule that they must also pay liquidated damages. "Liquidated damages are not a penalty exacted by the law, but rather

compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA . . . The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." Herman, 172 F.3d at 142 (citing Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997)). "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them . . . [t]hat [the defendant] did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith." Reich, 121 F.3d at 71.

In Reich, the defendant was accused of not accounting for work performed during employees' lunch breaks. The defendant invoked the § 260 good faith defense based on its reliance on an opinion letter issued by the Department of Labor. See id. at 72. In holding that the defendant had not satisfied the standard for good faith, the Court of Appeals explained that "although the evidence cited by [defendant] establishes that company officials are not scofflaws, it does not establish that [company] officials acted in good faith as understood in this context." Id. at 71. The circuit court went on to warn against an expansive view of the good faith defense, lest employees be left without the protections afforded them by Congress:

> Were [defendant's] argument to carry the day, anytime an employer unintentionally violates an unsettled wage or hour provision of the FLSA, the employer would be acting in good faith so long as it acted in accord with prevailing industry practice and no employee had complained. Such a view is incompatible with the compensatory nature of liquidated damages under the FLSA.

Id. Accordingly, an employer can avoid liquidated damages only if it "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith . . . ." 29 U.S.C. § 260.

**DISCUSSION**

**I.     Chipotle claims defenses under §§ 259-60**

Chipotle affirmatively invokes § 259 in its Eleventh Affirmative Defense.[5] Though it does not specifically name § 260 in its Twelfth Affirmative Defense, Chipotle claims an affirmative defense to FLSA's liquidated damages, which is necessarily governed by § 260, and therefore its Twelfth Affirmative Defense falls under that provision.[6] See Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45-46 (2d Cir. 1997) (a party need not cite a specific statute in order to invoke it in a pleading).

Yet despite the good faith requirements of both statutory defenses, Chipotle attempts to plead around them by avoiding mention of the advice of counsel, except to disclaim it in the Eleventh Affirmative Defense. Chipotle claims to have invoked only the portions of §§ 259-60 relating to reliance on administrative guidance, rather than any standard of good faith. See Def's. Br. at 1-2 ("Chipotle does not assert a generalized 'good faith' defense . . . Chipotle set out its affirmative defense, as it is entitled to, in such a way as to remove its 'state of mind' from being at issue . . . ."); Answer to Second Am. Compl. at 23. Such artful pleading cannot negate an element of a statutory defense, especially here, where it is evident that Chipotle did in fact have

---

[5] Chipotle's Eleventh Affirmative Defense provides:
> Pursuant to 29 U.S.C. § 259 and other applicable law, Chipotle's alleged failure to pay Plaintiffs or any putative class or collective member any of the wages on which Plaintiffs' claims are based, if at all, was in conformity with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Department of Labor and any Department of Labor in any of the states in which Plaintiffs allege claims under state law, but not upon advice of counsel.

[6] Chipotle's Twelfth Affirmative Defense provides:
> Plaintiffs and the putative members of the purported class and collective actions defined in the Complaint are barred from recovering penalties or liquidated damages pursuant to, inter alia, the New York and/or Missouri Labor Laws and/or the Fair Labor Standards Act because: (a) Plaintiffs have failed to plead facts sufficient to support allegations of willfulness; and (b) neither Chipotle nor any agent or employee of Chipotle acted willfully in failing to pay wages allegedly due to Plaintiffs or others.

the advice of counsel on the very topic at issue. A defendant may not succeed on an affirmative defense by pleading only some of the necessary elements.

>    A.    **Chipotle has put its attorney-client communications at issue**

As explained *supra*, Chipotle has invoked two affirmative defenses that require showings of good faith. Here, plaintiffs have shown that Chipotle did in fact have the advice of counsel regarding the classification of apprentices. And knowing whether Chipotle had been advised not to classify the apprentices as exempt is necessary to evaluate the validity of the Eleventh and Twelfth Affirmative Defenses. Thus, the advice of Chipotle's counsel regarding that classification is plainly "at issue" within the meaning of Bilzerian. Because at-issue waiver is to be "decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted," In re Grand Jury Proceedings, 219 F.3d at 183, the Court will examine the specific factual context of this case. Given the substantial similarities between the good faith defenses in §§ 259-60, this analysis will encompass both the Eleventh and Twelfth Affirmative Defenses.

At the deposition of David Gottlieb, Chipotle's corporate representative and Director of Compliance and Field People Support, the witness testified that Chipotle consulted with attorneys in making the classification decision. When asked about the existence of communications regarding the apprentice classification, Mr. Gottlieb admitted that "there were communications. They were in the context of communications and discussions with our lawyers." Gottlieb Dep. 65:2-4. In fact, Mr. Gottlieb testified that he had "no recollection" of ever communicating with anyone at Chipotle regarding the apprentice classification other than in the presence of his attorneys. Id. at 65:11-15.[7]

---

[7] In a declaration subsequently filed with the Court, Mr. Gottlieb stated that his current responsibilities include "monitoring Chipotle's compliance" with wage and hour laws. Gottlieb Decl. ¶ 2. Mr. Gottlieb

In addition, during Mr. Gottlieb's deposition, Chipotle repeatedly objected on attorney-client grounds and instructed Mr. Gottlieb not to answer questions related to Chipotle's decision to classify the apprentice position as exempt. For example, Chipotle asserted the attorney-client privilege and directed Mr. Gottlieb not to answer questions about whether Mr. Gottlieb participated in any evaluations regarding the exempt classification position. There are numerous other such examples from the transcript of Mr. Gottlieb's deposition. See, e.g., Gottlieb Dep. 42:6-16 (refusing to answer question on the research behind the classification after being advised not to disclose any attorney-client communications); id. at 61:18-62:2 (same); id. at 87:14-88:1 (acknowledging counsel were consulted on decision to reclassify apprentices in California).[8]

In addition, Chipotle's privilege log confirms that it received legal advice concerning the apprentice exemption decision. See Ex. D (Def's Second Am. Privilege Log), No. 2 (February 18, 2011 email from outside counsel to Mr. Gottlieb on the subject of "Legal advice regarding Chipotle's Apprentice Position.")

Finally, Chipotle's discovery responses indicate reliance on advice of counsel. Chipotle asserted attorney-client privilege in response to plaintiffs' document requests and interrogatories that sought information on the decision to classify apprentices as exempt. See, e.g., Ex. C (Def.'s Resps. Pls.' Fourth Req. Produc. Docs.), No. 28 (asserting privilege in response to request for documents relied upon by Chipotle as basis for decision to classify apprentices as exempt), No. 31 (same for request for documents relied upon by Chipotle as basis for its good faith defenses),

---

communicates with lawyers who provide legal advice, but he does not provide legal advice to his employer as part of his responsibilities. Before he joined Chipotle in 2010, Mr. Gottlieb practiced as an attorney at Messner Reeves LLP (who represent Chipotle in this case). Id. at ¶ 4. The "vast majority" of his work at the firm on behalf of Chipotle did not involve wage and hour compliance. Id. at ¶ 6.

[8] Though California apprentices are not party to this suit, the certification is instructive to plaintiffs in determining the defendant's state of mind when it classified (or chose not to reclassify) apprentices in other states. See infra Part III.

No. 32 (same for documents pertaining to or evidencing Chipotle's decision to classify apprentices as nonexempt under FLSA, NYLL, and Missouri Labor Law) & No. 33 (same for documents related to Chipotle's contention that apprentices are exempt under administrative or executive exemption).

This evidence overwhelmingly demonstrates that Chipotle did receive legal advice on the apprentice classification decision. And Chipotle does not dispute that it did. Instead, it argues that it is entitled to define its affirmative defense narrowly and in such a way as to remove its state of mind from being at issue. In this regard, Chipotle contends that this case is distinguishable from Wang v. The Hearst Corp., where the same legal question was presented, and the district court found an at-issue waiver of the attorney-client privilege. 12 Civ. 0793 (HB), 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012).

In Wang, a sophisticated corporate defendant asserted a § 260 defense to allegations of FLSA wage and hour violations, but invoked attorney-client privilege to block the plaintiff's discovery of the defendant's in-house counsel e-mails, claiming that its defense "would 'not rely, directly or indirectly, on legal advice for its good-faith defense in this case' and that it had offered to so stipulate." Id. at *1 (internal citations omitted). A witness from the defendant's human resources department, however, had indicated in a deposition that questions regarding the collection of school credit letters for unpaid interns (who were allegedly misclassified as such) would be better posed to the legal department. Id. at *2. The court soundly rejected the defendant's attempt to plead around the requirements of § 260, which it found "amount[ed] to little more than semantics without any concrete examples provided by Defendants. On the other hand, [it found] it difficult to imagine that a good faith defense regarding the FLSA raised by a

corporation as large and as sophisticated as Hearst would not involve the advice of its legal department." Id.

Chipotle attempts to distinguish Wang on two grounds: there, (1) the defendant's affirmative defense explicitly invoked good faith, and (2) testimony was introduced that the legal department, not the human resources department, had responsibility for making the classification decisions at issue. These are not distinctions. As discussed above, Chipotle's affirmative defenses carry a good faith component even if none is so stated. And Mr. Gottlieb, himself an attorney and responsible for Chipotle's wage and hour determinations, testified that he was unaware of any communications regarding the apprentice determination that did not involve attorneys, and otherwise refused to answer relevant questions on attorney-client privilege grounds.

All told, there is far more evidence here than in Wang that the defendant had, and perhaps ignored, the advice of counsel in classifying its employees as exempt. Given the circumstances in this particular case, "legal advice that [the defendant] received may well demonstrate the falsity of its claim of good faith belief," Leviton, 2010 WL 4983183, at *3, putting Chipotle's state of mind at issue. The plaintiffs are therefore "entitled to know if [the defendant] ignored counsel's advice." Arista Records, 2011 WL 1642434, at *3 (internal citations and quotation marks omitted).

### B. Chipotle's policy concerns do not overcome the clear choice of Congress

Chipotle contends that even if Second Circuit case law favors a waiver in this case, such waiver should be overcome by policy considerations. It claims that, should the Court find a waiver here, "every employer in every FLSA case will have to choose between revealing such communications or forfeiting statutory defenses. This is akin to imposing, as a matter of law, an

expanded limitations period and 100% liquidated damages risk on every employer in every FLSA case." Def's. Reply at 6. Such concerns are misplaced and overstated.

First, as stated by both the Supreme Court and the Court of Appeals, liquidated damages are in fact the norm in FLSA cases. This is not a byproduct of a broad reading of the at-issue waiver doctrine. Rather, this is because, by act of the legislature, "the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945) (citations omitted); see also Herman, 172 F.3d at 142; Reich, 121 F.3d at 71; Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) ("'[d]ouble damages are the norm, single damages the exception . . . .'" (quoting Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986))). It is for this very reason, protection of workers as directed by Congress, that defendants face a high bar to mounting a good faith defense to FLSA wage and hour claims.

Second, defendants in such situations are not at all required to waive attorney-client privilege to defend against liability. For instance, defendants may assert defenses on bases other than good faith. See Crawford v. Coram Fire Dist., 12 Civ. 3850 (DRH)(WDW), 2014 WL 1686203 (E.D.N.Y. Apr. 29, 2014) (upholding denial of discovery of privileged communications where defendant had separate basis for defense that did not rely on good faith); Leviton, 2010 WL 4983183, at *5 (plaintiff did not waive privilege by filing claim where waiver would be useful but not essential to defendants' defense). In the case at hand, Chipotle has pled a panoply of defenses aside from the two affirmative defenses at issue. If it does not wish to waive its privilege, it may seek leave to amend its answer under Fed. R. Civ. P. 16(b) so that it can forego its good faith defenses and rely instead on its remaining 30 affirmative defenses. See Bilzerian,

15

926 F.2d at 1293-94 (defendant need not assert good faith defense, but if he does, he waives attorney-client privilege); Answer to Second Am. Compl. at 21-26 (listing Chipotle's affirmative defenses).

Finally, Chipotle claims that a finding of at-issue waiver will discourage companies from seeking advice from counsel. Chipotle predicts that companies will instead be "incentivized to make important decisions concerning critical issues such as employee pay on their own lest they be forced to reveal their confidential and privileged communications." Def's. Br. at 2. The Court sees things differently. To the extent Chipotle is found to be liable for overtime violations (a question that is far from answered), and to the extent Chipotle's counsel advised it against the classification decision it wrongly made, the decision on this motion will only serve to encourage companies to receive competent legal advice and follow it.

### III.     The California Classification

Although not raised as part of Chipotle's motion for a protective order, the parties have separately raised a dispute regarding discovery on Chipotle's decision to classify its California apprentices as exempt. Chipotle objects to the California discovery on relevancy grounds because California apprentices are explicitly *excluded* from this action. The parties brought this dispute to the Court's attention in both letters and oral arguments. See Transcript of Nov. 20, 2014 hearing at 81:10-82:18, 88:24-99:8; Pls. Nov. 18, 2014 Ltr. at 6-8; Def's. Nov. 18, 2014 Ltr. at 5-6.

In California, unlike in other states, Chipotle has classified its apprentices as nonexempt and thus entitled to overtime. The plaintiffs assert that Chipotle's analysis of apprentices in California, who have the same title and job description as apprentices in other states, is relevant to Chipotle's good faith argument. Pls. Ltr. at 7. Indeed, even if the California duties are unique,

the plaintiffs contend that they should be permitted to discover the information Chipotle relied upon and the analyses it conducted in making the California classification decision. The plaintiffs cite to Trimmer v. Barnes & Noble, Inc., 13 Civ. 0579 (JGK), 2014 WL 3537867 (S.D.N.Y. July 18, 2014), a recent district court decision finding a genuine issue of material fact as to whether the defendant acted recklessly in classifying the plaintiffs as exempt employees where the employer had classified the same category of employees as non-exempt in California. The Court found that "the failure to reclassify ASMs [Assistant Store Managers] as nonexempt in the rest of the country, after doing so in California, is at least some evidence that a jury could consider on the issue of willfulness." Id. at *9. The court continued: "[o]n its face, California law is sufficiently similar to the FLSA to place the defendants on notice that the ASMs in other states were misclassified as exempt employees." Id. Notice of misclassification in one state certainly speaks to an employer's good faith belief in maintaining the misclassification in other states.

The Federal Rules define "relevance" broadly. Fed. R. Civ. P. ("Rule") 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."[9] "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (internal quotation marks omitted)). Information about Chipotle's decision to classify California apprentices as non-exempt while maintaining an exemption classification for all other states is

---

[9] Chipotle has not asserted a privilege defense to the California discovery. But to the extent that it might in the future, the same at-issue waiver analysis represented in the rest of this opinion applies and the privilege is waived.

plainly relevant defendant's Eleventh and Twelfth Affirmative Defenses. Such discovery may also lead to information bearing on plaintiffs' claims.

## CONCLUSION

The defendant has invoked two statutory defenses requiring showings of good faith. Although the defendant attempts to disclaim any reliance on the advice of counsel, the parties have demonstrated that the defendant did in fact possess the advice of counsel on this issue. Where the defendant has clearly benefited from the advice of counsel on the very issue on which it asserts good faith, it puts its relevant attorney-client communications at issue and thereby waives its privilege. Therefore, the defendant's Motion for a Protective Order is DENIED. Chipotle shall produce all responsive documents previously withheld on privilege grounds by January 9, 2015. Chipotle shall also respond to Request No. 10 of Plaintiffs' Sixth Request for the Production of Documents by the same date.

The Clerk of Court is directed to terminate the motion at Docket Number 781.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
          December 18, 2014