Richard Simmons (admitted *pro hac vice*)
Lisa M. Lewis
Brian D. Murphy
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

Bruce A. Montoya (admitted *pro hac vice*)
John Karl Shunk (admitted *pro hac vice*)
Lou Grossman (admitted *pro hac vice*)
MESSNER & REEVES LLC
1430 Wynkoop St. No. 300
Denver, CO 80202
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

MAXCIMO SCOTT, JAY ENSOR, MATTHEW MEDINA, EUFEMIA JIMENEZ, KRYSTAL PARKER, and STACY HIGGS, on behalf of themselves and all others similarly situated,

　　　　　　　　　　Plaintiffs,

　　-against-

CHIPOTLE MEXICAN GRILL, INC.,

　　　　　　　　　　Defendant.

------------------------------------------------------------------ x

Case No. 12-CIV-8333(ALC)(SN)

**DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>RULE 72 OBJECTIONS TO THE DECEMBER 18 ORDER</u>**

## TABLE OF CONTENTS

                                                                         **Page**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF RELEVANT FACTS ..................................................................................2

ARGUMENT .................................................................................................................................5

    I.        Applicable Standard ...................................................................................................5

    II.       The Court Should Overrule the Order to the Extent it Requires Chipotle to Produce Privileged Communications ........................................................................5

    III.      The Court Should Overrule the Order to the Extent it Requires Chipotle to Produce Documents and Information Concerning its Decision to Classify California Apprentices as Non-Exempt ...................................................................12

CONCLUSION ............................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

Cases

Abbe v. City of San Diego
    No. 06-CV-0538 (DMS) (JMA), 2007 WL 4146696 (S.D. Cal., Nov. 9, 2007) .......................7

In re Air Cargo Shipping Svcs. Antitrust Litig.
    931 F. Supp. 458 (E.D.N.Y. 2013) ...............................................................................5

Beneficial Franchise Co., Inc. v. Bank One, NA.
    205 F.R.D. 212,216–17 (N.D. Ill. 2001) ........................................................................8

Chen-Oster v. Goldman Sachs & Co.
    No. 10-CIV-6950 (AT) (JCF), 2013 WL 3009489 (S.D.N.Y. June 18, 2013) ...................14

In re County of Erie
    546 F.3d 222 (2d Cir. 2008) .....................................................................................7, 9

Crawford v. Coram Fire Dist.
    No. 12-CV-3850 (DRH) (WDW), 2014 WL 1686203 (E.D.N.Y. Apr. 29, 2014) ..............8, 10

Easley v. Cromartie
    532 U.S. 234 (2001) ..................................................................................................5

Gardner v. Major Auto. Companies, Inc.
    No. 11-CIV-1664 (FB) (VMS), 2014 WL 1330961 (E.D.N.Y. Mar. 31, 2014) .......................7

Genentech, Inc. v. Insmed, Inc.
    236 F.R.D. 466 (N.D. Cal. 2006) ..................................................................................8

Gerawan Farming, Inc. v. Prima Bella Produce, Inc.
    No. 10-CV-0148 (LJO) (JLT), 2011 WL 2531072 (E.D. Cal., Jun. 23, 2011) ....................8

In re Grand Jury Proceedings
    219 F.3d 175 (2d Cir. 2000) .........................................................................................7

Gucci America, Inc. v. Guess?, Inc.
    No. 09-CIV-4373 (SAS), 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011) ....................................5

Leviton Mfg. Co. v. Greenberg Traurig LLP
    09-CIV-8083 (GBD) (THK), 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010) .........................10

Mireles v. Frio Foods, Inc.
    899 F.2d 1407 (5th Cir. 1990) ......................................................................................6

Samad Bros., Inc. v. Bokara Rug Co., Inc.
  No. 09-CIV-5843 (JFK), 2010 WL 5095356 (S.D.N.Y. Dec. 13, 2010)...................................5

Sorensen v. Black & Decker Corp.
  No. 06-CV-1572 (BTM) (CAB), 2007 WL 1976652 (S.D. Cal., Apr. 9, 2007) .......................8

Trimmer v. Barnes & Noble, Inc.
  13-CIV-0579 (JGK), 2014 WL 3537867 (S.D.N.Y. July 18, 2014)................................. 12-13

United States v. Adlman
  134 F.3d 1194 (2d Cir. 1998)..................................................................................................9

United States v. Bilzerian
  926 F.2d 1285 (2d Cir. 1991).............................................................................................7, 11

United States v. Int'l Bd. of Teamsters
  119 F.3d 210 (2d Cir. 1997)....................................................................................................9

Upjohn Co. v. United States
  449 U.S. 383 (1981)................................................................................................................9

Wang v. The Hearst Corp.
  12-CIV-0793 (HB), 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012)..........................................9

Zachary v. Rescare Okla., Inc.
  471 F. Supp. 2d 1175 (N.D. Okla. 2006)................................................................................7

Statutes

28 U.S.C. § 636...............................................................................................................................5

29 U.S.C. § 201 et seq............................................................................................................ *passim*

29 U.S.C. § 259...............................................................................................................1, 3, 5, 8

29 U.S.C. § 260...................................................................................................................1, 4, 5

Other Authorities

Federal Rule of Civil Procedure 16(b)............................................................................................5

Federal Rule of Civil Procedure 72(a)............................................................................................5

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") respectfully submits this Memorandum of Law in Support of its Rule 72 Objections to the December 18, 2014 Order of the Hon. Sarah Netburn (the "Order").

### PRELIMINARY STATEMENT

Chipotle submits that the Order is contrary to law. The Order undermines the significant public and private interests embodied in the attorney-client and work-product privileges by holding them to be automatically waived merely because of an employer's choice to assert two statutory defenses provided for under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA"). Specifically, the Order held that Chipotle waived privileges covering communications and work-product related to Chipotle's classification of its Apprentices as exempt from the FLSA because the statutory defenses available pursuant to 29 U.S.C. §§ 259 and 260 contain "good faith" elements, placing Chipotle's "state of mind" at issue. This is error insofar as it misconstrues the "implied waiver" doctrine far too broadly. Chipotle made the affirmative choice to disclaim any intent to rely on advice of counsel to support any legal defense specifically to eliminate any relevance its privileged materials may have had to any claim or defense in this case.[1] The Court's holding allows for a waiver of privilege over sensitive materials even in the absence of reliance, the traditional hallmark for a finding of "implied waiver." Thus, as a practical matter, the Order forces an employer to make the confounding and prejudicial choice of either waiving its FLSA defenses to secure its privileged communications or raising its FLSA defenses to oppose liquidated damages and an expanded three-year statute of

---

[1] Chipotle's decision to disclaim an intent to rely on advice of counsel does not constitute an admission that Chipotle received and ignored legal advice or that any of the privileged materials did not support its treatment of salaried Apprentices as exempt under the FLSA. There is nothing in the record pertaining to legal advice that even remotely supports a suggestion that salaried Apprentices do not satisfy applicable exemption standards. Instead, Chipotle's decision to disclaim an intent to rely on advice of counsel reveals only the importance with which it regards its privileged communications.

limitations under the FLSA and waiving its privileges. This broad holding eliminates a defendant's ability to meet its burden with evidence of its choice and, more importantly, undermines the public policy considerations that treat the attorney-client and work-product privileges as two of the most fundamental at law.

Second, the Order directed Chipotle to produce an untold number of documents and other information concerning its decision to classify Apprentices who worked in California as exempt approximately 12 years ago. This aspect of the Order is particularly troubling because Plaintiffs expressly excluded California Apprentices from this case and because the decision took into consideration the unique provisions of California law in or around 2002, before even the most expansive limitations period at issue in the instant matter. Further, the Court's analysis was limited to a relevance inquiry, without consideration of the more complex attorney-client privilege issues necessarily attendant to a classification decision. Simply put, under these circumstances, the tangential relevance of such information must yield to considerations of undue burden, expense, and privilege.

For these reasons, and those below, Chipotle respectfully submits that the Order should be overruled in its entirety.

### STATEMENT OF RELEVANT FACTS

Plaintiff Maxcimo Scott filed a Complaint alleging putative collective and class claims under the FLSA and New York Labor Law on November 15, 2012. See Docket No. 1. Plaintiff Scott filed an Amended Complaint on February 13, 2013, adding Plaintiff Jay Ensor and putative claims under the Missouri Labor Law. See Docket No. 17. Plaintiffs allege that Chipotle willfully misclassified Apprentices across the country, except in California which Plaintiffs specifically exclude from the collective and proposed classes, as exempt from the overtime provisions of the FLSA and state law. See Docket No. 751.

Chipotle filed its Answer to the Amended Complaint on March 4, 2013 and asserted various Affirmative Defenses. See Docket No. 32. More than a year after conditional certification of a collective action under the FLSA, Plaintiffs filed a Second Amended Complaint. See Docket No. 741. Plaintiffs added four new Named Plaintiffs and asserted putative class claims arising under Washington, North Carolina, Colorado and Illinois state law. See id. Chipotle filed its Answer to the Second Amended Complaint on July 24, 2014. See Docket No. 756. In the operative Answer, Chipotle eliminated its previously asserted Tenth Affirmative Defense setting forth a general good faith defense and affirmatively limited and clarified the scope of its Eleventh Affirmative Defense as follows:

> Pursuant to 29 U.S.C. § 259 and other applicable law, Chipotle's alleged failure to pay Plaintiffs or any putative class or collective member any of the wages on which Plaintiffs' claims are based, if at all, was in conformity with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Department of Labor and any Department of Labor in any of the states in which Plaintiffs allege claims under state law, but not upon advice of counsel.

See id. at 22-23 (emphasis added). Chipotle continued to assert its Twelfth Affirmative Defense regarding liquidated damages without change.[2] See id. at 23.

By letter to the Court dated September 4, 2014, Plaintiffs argued that Chipotle automatically waived its ability to assert a privilege over any communications with its counsel concerning exemptions merely by setting forth the above-referenced affirmative defenses. See Docket No. 774. Chipotle responded by letter dated September 10, 2014. See Docket No. 776. Chipotle briefed the issue on September 19, 2014, emphasizing its reliance on both the attorney-client and work-product privileges and seeking a protective order preventing the disclosure of

---

[2] In the Answer to the Second Amended Complaint and the prior Answer to the Amended Complaint, the Twelfth Affirmative defense asserts that Plaintiffs are not entitled to liquidated damages because Plaintiffs did not assert allegations sufficient to support willfulness.

various documents included on its privilege log, which post-dated the classification decision by approximately 20 years.  See Docket Nos. 781-82.

The Court issued its Order on December 18, 2014, denying Chipotle's Motion for a Protective Order.  See Docket No. 839 at 2-16.  The Court reasoned that Chipotle placed privileged communications with its attorneys concerning the classification of Apprentices "at issue," effectuating an implied waiver of the attorney-client privilege, merely by asserting FLSA affirmative defenses under 29 U.S.C. §§ 259 and 260.  Id. at 11-14.  In addition, the Court held that public policy considerations, which would amount to requiring an employer to choose between asserting statutory defenses to FLSA claims or protecting privileged communications, did not overcome the automatic implied waiver notwithstanding Chipotle's unambiguous representation that it would not rely upon advice of counsel to support the affirmative defenses.  Finally, the Court directed Chipotle to produce documents and information related to its decision to classify California Apprentices as non-exempt, even though they are expressly excluded from the collective and class definitions in the Second Amended Complaint.  The Court found that such information may theoretically bear on Chipotle's statutory defenses and Plaintiffs' claims, even though California Apprentices have been classified as non-exempt under California law for over a decade.  See id. at 16-18.

# ARGUMENT[3]

## I. APPLICABLE STANDARD

A District Judge must set aside a Magistrate Judge's ruling on a non-dispositive matter where the ruling is "clearly erroneous or contrary to law." See FED. R. CIV. P. 72(a); accord 28 U.S.C. § 636(b)(1)(A); Gucci America, Inc. v. Guess?, Inc., No. 09-CIV-4373 (SAS), 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011) (setting aside denial of motion for protective order). The "clearly erroneous" prong of the analysis focuses on the Magistrate Judge's factual findings and is satisfied when the reviewing court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Air Cargo Shipping Svcs. Antitrust Litig., 931 F. Supp. 458, 462 (E.D.N.Y. 2013) (citing Easley v. Cromartie, 532 U.S. 234, 242 (2001)); Samad Bros., Inc. v. Bokara Rug Co., Inc., No. 09-CIV-5843 (JFK), 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010). The "contrary to law" prong of the analysis focuses, in turn, on whether the Magistrate Judge's legal conclusions "run counter to controlling authority." In re Air Cargo, 931 F. Supp. at 462.

## II. THE COURT SHOULD OVERRULE THE ORDER TO THE EXTENT IT REQUIRES CHIPOTLE TO PRODUCE PRIVILEGED COMMUNICATIONS

Chipotle respectfully submits that the Court's decision requiring Chipotle to disclose privileged communications as a condition to asserting the FLSA's statutory defenses under 29 U.S.C. §§ 259 and 260 is contrary to law. The Court held that Chipotle automatically waived its privileges despite affirmatively disclaiming any intent to rely upon advice of counsel in asserting any of its affirmative defenses because the content of any communications from its counsel

---

[3] Chipotle expressly reserves the right to seek leave to amend its Answer to the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 16(b), as proposed by the Court in the Order, Docket No. 839 at 15, in the event this Court denies Chipotle's Rule 72 Objections.

nevertheless informed its "state of mind." See Docket No. 839 at 11-14. Chipotle requests that the Court overturn the Order for two reasons.

First, the Court's decision amounts to a premature decision concerning the merits of Chipotle's affirmative defenses. In its Answer to the Second Amended Complaint, Chipotle eliminated the generalized good faith defense that it previously asserted as its Tenth Affirmative Defense and limited the scope of its Eleventh Affirmative Defense to preclude any attempt to establish "good faith" by reference to "advice of counsel." See Docket No. 756 at 22-23. Chipotle permissibly defined the scope of its affirmative defense and the evidence upon which it would rely in support thereof. The Court, however, held that Chipotle could not "plead around" an element of an affirmative defense by affirmatively disclaiming any intent to rely on advice of counsel. See Docket No. 839 at 10-11. The Court implicitly found that any privileged communications a defendant receives are a necessary element of a defense predicated on good faith or willfulness. Indeed, the Court stated that "[a] defendant may not succeed on an affirmative defense by pleading only some of the necessary elements." Id. at 11.

Chipotle's decision to limit the scope of an affirmative defense may ultimately result in a determination by a fact-finder that Chipotle did or did not carry its burden. That is, a fact-finder may inquire whether, absent evidence of consultation with counsel, Chipotle could act in good faith. However, it is premature to make that determination now, as the Order's language and holding suggest. See Docket No. 839 at 11. Further, this determination conflicts with decisions of numerous courts that have routinely found the good faith and/or willfulness defenses established even in the absence of advice of counsel. See, e.g., Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1416 (5th Cir. 1990) ("Simply failing to seek legal advice concerning its pay practice does not evidence a willful violation of the statute," and citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)); Abbe v. City of San Diego, No. 06-CV-0538 (DMS) (JMA),

2007 WL 4146696, * 17 (S.D. Cal., Nov. 9, 2007) (declining to find that assertion of a good faith defense to FLSA implicitly waived the attorney-client privilege); <u>Zachary v. Rescare Okla., Inc.</u>, 471 F. Supp. 2d 1175, 1183 (N.D. Okla. 2006) (finding lack of willfulness under FLSA established based on letter from Department of Labor stating that conduct did not violate the FLSA).

Second, the Order construes the "at issue" waiver too broadly and holds a waiver to be affected even where the purported legal advice is not relied upon. The Second Circuit "has recognized that implied waiver may be found where the privilege holder 'asserts a claim that <u>in fairness</u> requires examination of protected communications.'" <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000) (quoting <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991)) (emphasis in original). "The key to a finding of implied waiver [however] is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense." <u>In re County of Erie</u>, 546 F.3d 222, 228 (2d Cir. 2008) (emphasis added). By the very terms of its affirmative defenses, Chipotle has made clear that it will not rely on a privileged communication to establish any one of them. Thus, "fairness" does not require an examination of Chipotle's communications with its counsel and no waiver of the privilege should be implied. <u>See</u>, e.g., <u>Gardner v. Major Auto. Companies, Inc.</u>, No. 11-CIV-1664 (FB) (VMS), 2014 WL 1330961, at *4 (E.D.N.Y. Mar. 31, 2014) ("Requiring a party opposing privilege to show that the privilege proponent intends to invoke reliance upon counsel as a claim or defense is important because if it were otherwise, i.e., if the mere fact of the privilege proponent's reliance on counsel were enough to waive the privilege implicitly, then 'there would never be an enforceable privilege since the very point of the privilege is to enable clients to elicit and obtain (and presumably rely upon) the advice of their attorney.'").

To be sure, numerous Courts have found privilege preserved where there is no evidence of an intent to rely upon the same to establish a claim or defense. See, e.g., Crawford v. Coram Fire Dist., No. 12-CV-3850 (DRH) (WDW), 2014 WL 1686203, at *5-6 (E.D.N.Y. Apr. 29, 2014) (finding privilege preserved where defendants provided testimony indicating that they did not rely on advice of counsel); Gerawan Farming, Inc. v. Prima Bella Produce, Inc., No. 10-CV-0148 (LJO) (JLT), 2011 WL 2531072, *8 (E.D. Cal., Jun. 23, 2011) (upholding privilege where plaintiffs disavowed any effort to establish that actions were based on good faith reliance on attorney advice); Sorensen v. Black & Decker Corp., No. 06-CV-1572 (BTM) (CAB), 2007 WL 1976652, *2 (S.D. Cal., Apr. 9, 2007) ("The privilege is waived when a party chooses to utilize the information to advance a claim or defense. B & D does not assert advice of counsel as a defense, and it has not used attorney-client communications to prove this defense."); Genentech, Inc. v. Insmed, Inc., 236 F.R.D. 466, 469 (N.D. Cal. 2006) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."); Beneficial Franchise Co., Inc. v. Bank One, NA., 205 F.R.D. 212,216–17 (N.D. Ill. 2001) ("[W]e do not believe that merely asserting a defense or a claim is sufficient, without more, to waive the privilege. Were it otherwise, any party asserting a claim or defense on which it bears the burden of proof would be stripped of its privilege and left with the draconian choice of abandoning its claim and/or defense or pursuing and protecting its privilege…Such a rule would exact too stiff a price for the assertion of commonly-pled claims and defenses."). By excising its general good faith affirmative defense and by circumscribing its Section 259 defense to exclude "advice of counsel," Chipotle has sufficiently eliminated the relevance of any communications with counsel. See In re County of Erie, 546 F.3d at 229 ("We hold that a party must rely on privileged advice from his counsel to make his claim or defense.").

The Order attempts to avoid the affirmative requirement of reliance on the privileged communications by referring to Wang v. The Hearst Corp., 12-CIV-0793 (HB), 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012) and Bilzerian, 926 F.2d 1285, 1292. See Docket No. 839 at 3-4, 13.  In both, the respective courts held privileged communications should be disclosed because they had relevance to the defendant's "state of mind" – that is, whether the defendant had a good faith belief in the lawfulness of its conduct.  See Bilzerian, 926 F.2d at 1292; Wang, 2012 WL 6621717, at *2.  However, in Bilzerian, the Second Circuit touted the importance of the privilege and acknowledged that the defendant was free to deny criminal intent by resort to facts and testimony that did not place his "state of mind" at issue.  See id. at 1293.  Here, the statutory defenses under 29 U.S.C. §§ 259 and 260 are the only statutory means for avoiding liquidated damages, an extended limitations period, and a finding of willful conduct, thus eliminating the alternative defenses available in Bilzerian and imposing a prejudicial choice.

Wang is likewise distinguishable for two reasons.  To begin, Wang is factually different because the affirmative defenses at issue explicitly plead a good faith defense, whereas here advice of counsel was explicitly excluded.  Furthermore, the Wang Court did not consider the important public policy considerations that are undermined by finding an automatic waiver of attorney-client and work-product privileges in circumstances such as these.  The attorney-client privilege is one of the most fundamental at law.  It exists to "encourage full and frank communication between attorneys and their clients [and to] promote broader public interests in the observance of law and the administration of justice.  The privilege recognizes that sound legal advice or advocacy… depends on the lawyers' being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383 (1981); United States v. Int'l Bd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997). Similarly, the work-product privilege exists "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward

litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998). Affecting an automatic waiver of these privileges merely because of a company's decision to assert a statutorily authorized affirmative defense would effectively gut these defenses. An automatic waiver is particularly unwarranted when it pertains to communications made some 20 years after the decision in question is made, here the decision to treat Apprentices as exempt.

The Court minimized some of these significant concerns in its Order and overlooked others. See Docket No. 839 at 15-16. The Court first reasoned that "liquidated damages are in fact the norm in FLSA cases," and offered that this is the reason that "defendants face a high bar to mounting a good faith defense to FLSA wage and hour claims." Id. at 15. This is a proposition that effectively ignores the existence of the defense itself and the fact that it does not require reliance on the advice of counsel. Minimizing the importance of statutory defenses that are routinely relied upon in FLSA cases based on an assumption that they virtually never succeed is fundamentally unfair. Moreover, Congress did not require a defendant to choose between either asserting an FLSA defense and thereby waiving the attorney-client and work-product privileges, or foregoing the defenses altogether to preserve the privileges. If anything, as acknowledged above, Chipotle's decision to forego reliance on advice of counsel as a basis for its affirmative defenses may raise the bar even higher.[4] It is nevertheless a choice Chipotle should be permitted to make in an effort to preserve its privilege.

The Court then reasoned that defendants "are not at all required to waive attorney-client privilege to defend against liability" and can instead rely on defenses other than good faith. Id. The Court cited Crawford, 2014 WL 1686203 and Leviton Mfg. Co. v. Greenberg Traurig LLP,

---

[4] This is so even if the advice supported the decision at issue, but a company, like Chipotle, values its privilege more than any evidentiary assistance the communications might provide.

09-CIV-8083 (GBD) (THK), 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010) for support. Neither case discusses the affirmative defenses at issue here and thus neither absolves a defendant from making the choice the Order imposes here. To be sure, no other affirmative defense is available under the FLSA that would eliminate liquidated damages and shrink the statute of limitations other than a full verdict on liability. Thus, the concern remains that all employers asserting these statutory defenses will waive their privileges.

Lastly, the Court dismissed Chipotle's policy concern that finding an at-issue waiver here would discourage companies from seeking legal advice to navigate the complexities of wage and hour compliance out of fear those privileged communications could be used against them in later litigation. See Docket No. 839 at 16. The Court stated that its decision "will only serve to encourage companies to receive competent legal advice and follow it" lest they be found liable for overtime violations. Id. Chipotle disagrees. Nothing in the automatic waiver of a privilege encourages a company to obtain advice that may fall into the hands of their adversaries in litigation. The Court's holding suggests that a company will only be insulated if the advice it receives, in the FLSA context, is to classify its employees as non-exempt and it does so. This perspective overlooks a defendant's concerns and ignores the very clear possibility that a company may receive advice that its employees are appropriately classified as exempt, but will still be forced to reveal privileged communications and work-product analysis even if they fully support its position. It also overlooks the advantage that will be bestowed upon an adversary if they are permitted to gain access to the analyses performed by skilled subject matter experts who provide a detailed examination of the matter at hand, which can then be exploited as a roadmap to an employer's potential defense. The Court's reasoning also ignores the Second Circuit's recognition of the importance of preservation of a privilege even in the face of relevance. See Bilzerian, 926 F.2d at 1292 ("The potential societal benefit [of upholding the privilege] may be

-11-

great in cases like the one at bar, where defendant seeks legal advice in order to act within the confines of highly complex federal securities laws. Often the importance of the interests promoted by the privilege justifies the exclusion of otherwise relevant evidence.").

For each of the foregoing reasons, Chipotle respectfully submits that the Court should overrule the Order insofar as it requires Chipotle to disclose privileged communications as a condition to asserting two critical FLSA defenses.

### III. THE COURT SHOULD OVERRULE THE ORDER TO THE EXTENT IT REQUIRES CHIPOTLE TO PRODUCE DOCUMENTS AND INFORMATION CONCERNING ITS DECISION TO CLASSIFY CALIFORNIA APPRENTICES AS NON-EXEMPT

The Court also directed Chipotle to produce documents and information related to Chipotle's decision to classify Apprentices working in California as non-exempt in or around 2002.[5] See Docket No. 839 at 16-17. The Court held that such information was discoverable, despite Plaintiffs having specifically excluded California Apprentices from this action, because it might be relevant to the good faith component of Chipotle's affirmative defenses.[6] See id. Chipotle respectfully submits that the Court's holding in this regard is contrary to law.

The Court relied exclusively on Trimmer v. Barnes & Noble, Inc., 13-CIV-0579 (JGK), 2014 WL 3537867 (S.D.N.Y. July 18, 2014), the lone case relied upon by Plaintiffs. There, the court held that the fact that Barnes & Noble reclassified its Assistant Store Managers in California as non-exempt might serve as "some evidence that a jury could consider on the issue of willfulness." Id. at *9. However, Trimmer's holding was limited to finding that "the fact of" reclassification might be relevant; the Trimmer court did not hold that information and

---

[5] The Court noted that this issue was not raised as part of Chipotle's Motion for a Protective Order and was not otherwise briefed. See Docket No. 839 at 16. Plaintiffs raised the issue by letter dated November 18, 2014 and requested permission to file a Motion to Compel. See Docket No. 824. The Court issued its ruling without requiring briefing.

[6] The Court also stated, without elaboration, that "[s]uch discovery may also lead to information bearing on plaintiffs' claims." Docket No. 839 at 18.

documents concerning who made the decision, why the decision was made, privileged communications, or any of the underlying documentation relied upon was discoverable as well. See id. The court's decision here goes far beyond that authorized by Trimmer and imposes an undue burden on Chipotle. If the Order is affirmed in this regard, Chipotle will have to undertake an effort to locate responsive documents concerning a decision made over 12 years ago, exceeding even the most expansive period of limitations at issue in this case, concerning a group of Apprentices who are not even party to this action. This is in addition to the enormous burden Chipotle has already been under given Plaintiffs' continuing document requests and interrogatories.[7]

In addition, the Trimmer court did not recognize the material differences between the FLSA and California law that make a decision with respect to California employees irrelevant to other employees. For example, as is relevant here, the exemption rules are far different. To be exempt under California law, employees must be paid a weekly salary of at least $720 whereas under the FLSA it is only $455.[8] Further, the "duties test" under California law is far more rigid than under the FLSA. As a result of these critical differences, employers in the hospitality and retail industries with whom Chipotle competes for qualified managerial employees often choose to classify them as non-exempt solely in California. It does not provide evidence that remotely indicates they are misclassified under the FLSA or otherwise impact an employer's perspective concerning the exemption status of employees in the remainder of the country.

---

[7] To date, Plaintiffs have served eight Requests for the Production of Documents and four Sets of Interrogatories. Each of these discovery mechanisms call for enormous amounts of information. For example, Plaintiffs' Seventh Request for the Production of Documents seeks all employment data (beyond simply personnel files) for 206 Declarants. To be sure, to date, Chipotle has produced 99,189 pages of discovery and 832 records related to training videos. The relevance of items of discovery must be balanced against the undue burden and expense of producing such information.

[8] The disparity will be even greater when the minimum wage increases to $800 per week on January 1, 2016.

Finally, the attorney-client and work-product privilege issues described above with respect to the classification decision of Apprentices outside of California will be greatly complicated if discovery is permitted into the California decision. Unlike the decision concerning the classification of Apprentices outside of California, which was made more than 20 years ago, and for which there is no evidence concerning the involvement of counsel, the decision concerning the classification of Apprentices in California occurred more recently and certainly involved extensive privileged conversations with counsel. The same considerations that prompted the Court to direct disclosure of privileged materials for Apprentices outside of California – that the assertion of a statutory defense effected an automatic and implied waiver – does not apply to California Apprentices because Chipotle has not asserted any statutory defenses concerning any belief or fact involving the classification of its California Apprentices. The Court's decision thus provides for an automatic waiver of privilege, even with respect to communications concerning a separate group of employees who are not included within the instant matter. This appears to go far beyond the scope of its intended holding. Chipotle cannot be sure whether the Court considered the privilege issue in the context of its analysis of California Apprentices. It is apparent only that the Court did not address it in the Order, limiting its analysis to a determination of relevance, which is an insufficient basis to require disclosure of privileged materials. See Chen-Oster v. Goldman Sachs & Co., No. 10-CIV-6950 (AT) (JCF), 2013 WL 3009489, at *7 (S.D.N.Y. June 18, 2013) ("[T]he fact that a privileged communication may simply be relevant to a claim or a defense is insufficient to effect forfeiture of the privilege.").

For each of these reasons, Chipotle respectfully submits that the Order directing discovery into the classification decision of California Apprentices is contrary to law.

## CONCLUSION

For each of the foregoing reasons, Chipotle respectfully submits that the Court should enter an Order pursuant to Rule 72(a) overruling the Order in its entirety and providing for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 2, 2014

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:  /s/ Brian D. Murphy
     Brian D. Murphy
     Richard Simmons (admitted *pro hac vice*)
     Brian D. Murphy
     30 Rockefeller Plaza
     New York, NY 10112-0015
     Tel:  (212) 653-8700
     Fax:  (212) 653-8701

     Bruce A. Montoya (admitted *pro hac vice*)
     John Karl Shunk (admitted *pro hac vice*)
     Lou Grossman (admitted *pro hac vice*)
     MESSNER & REEVES LLC
     1430 Wynkoop St. No. 300
     Denver, CO 80202
     Telephone:  (303) 623-1800
     Facsimile:  (303) 623-0552

     *Attorneys for Chipotle Mexican Grill, Inc.*