# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAXCIMO SCOTT, JAY ENSOR, MATTHEW MEDINA, EUFEMIA JIMENEZ, KRYSTAL PARKER, STACY HIGGS, and CHRISTINA JEWEL GATELEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., and CHIPOTLE SERVICES, LLC,<br><br>Defendants. | Case No. 12 Civ. 8333 (ALC)(SN) |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement" or "Settlement Agreement") is entered into by and between Named Plaintiffs (as hereinafter defined), on behalf of Collective Members (as hereinafter defined); and Defendants (as hereinafter defined).

## RECITALS

WHEREAS, Plaintiff Maxcimo Scott filed this class and collective action litigation against Defendants on November 15, 2012 asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL");

WHEREAS, Plaintiff Maxcimo Scott was joined by Plaintiffs Jay Ensor, Matthew Medina, Eufemia Jimenez, Krystal Parker, Stacy Higgs, and Christina Jewel Gateley asserting claims under the FLSA and class claims under the NYLL, Missouri Labor Law ("MLL"), C.R.S. 8-4-101, et seq. and Colorado Wage Order No. 29, 7 C.C.R. 1103-1 ("Colorado Wage Laws"), Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1, et seq., the Illinois Wage Payments and Collections Act, 820 Ill. Comp. Stat. §§ 115/1, et seq. (collectively, "Illinois Wage Laws"), North Carolina's Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq. (collectively, "North Carolina Wage Laws"), Washington's Minimum Wage Act, Rev. Code Wash. §§49.46.005, et seq. Washington's Industrial Welfare Act, Rev. Code Wash. §§49.12.005, et seq.; Washington's Wage Rebate Act, Rev. Code Wash. §§49.52.050, et seq.; and Washington Administrative Code §§296-126-092 (collectively, "Washington Wage Laws"), and the FLSA;

WHEREAS, Named Plaintiffs sought recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs;

{04901054 / 1} 1

WHEREAS, Defendants deny Named Plaintiffs' allegations. Nonetheless, without admitting or conceding any liability whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement so as to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiffs' Counsel (as hereinafter defined) has conducted extensive formal discovery including, but not limited to, interviewing Named Plaintiffs and Collective Members, and reviewing and analyzing hundreds of thousands of documents produced by Defendants, and taking and defending depositions;

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Named Plaintiffs and the Collective Members;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Collective Members, and that would not occur for several more years, or at all, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Collective Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Agreement**. "Agreement" or "Settlement Agreement" shall mean this Joint Stipulation of Settlement and Release, and all exhibits hereto.

1.2    **Applicable Workweeks**. "Applicable Workweeks" shall mean the following, as reflected on Defendants' records: weeks worked by a Collective Member for Defendants as an exempt-classified Apprentice at any of Defendants' Chipotle restaurant locations during the Collective Period. The settlement is estimated to include a total of no more than 18,000 Collective Member workweeks.

1.3    **Apprentice**. "Apprentice" shall mean the "apprentice manager" or "apprentice" job title held by Named Plaintiffs and Collective Members at various times during their employment within the Collective Period.

1.4    **Approval Order**. "Approval Order" shall mean the Order entered by the Court approving the settlement and the manner and timing of providing notice and payment to Collective Members, and entering Judgment pursuant to this Agreement and in accordance with Fed. R. Civ. P. 58.

1.5 **Claims Administrator**. "Claims Administrator" shall mean the entity selected by the Parties to provide notice to the Collective Members, calculate settlement shares, and administer payment of the settlement to Collective Members in accordance with this Agreement. Rust Consulting has been selected to serve as the Claims Administrator.

1.6 **Court**. "Court" shall mean the United States District Court for the Southern District of New York.

1.7 **Collective Fund**. "Collective Fund" shall mean One Million Nine Hundred Thousand Dollars ($1,900,000.00) taken from the Total Settlement Amount to cover payments to Collective Members, approved service awards, Employer Payroll Taxes associated with W-2 portions of Collective Members' settlement payments, and settlement administration costs.

1.8 **Collective Period**. "Collective Period" shall mean three years prior to the date of the filing of a Collective Member's consent to join form in this Litigation plus any applicable tolling period, through the date of settlement approval.

1.9 **Defendants**. "Defendants" shall mean Chipotle Mexican Grill, Inc. and Chipotle Services, LLC.

1.10 **Defendants' Counsel**. "Defendants' Counsel" shall mean Kendra N. Beckwith with Messner Reeves LLP and Elizabeth Bulat Turner with Martenson, Hasbrouck & Simon LLP.

1.11 **Collective; Collective Member**. "Collective" shall mean: (1) all persons who joined the Litigation by filing consent to join forms; (2) who worked as an Apprentice for Defendants; <u>and</u> (3) who have not been dismissed by the Court. A member of the Collective is a "Collective Member." For avoidance of doubt, employees who did not work for Defendants as an Apprentice are not Collective Members. Individuals who are also members of the *Alvarez v. Chipotle Mexican Grill, Inc., et al.*, No. 2:17-cv-04095-KM-JBC (D. N.J.) settlement collective may be Collective Members and may make claims from both the *Scott* settlement and the *Alvarez* settlement.

1.12 **"Employer Payroll Taxes"** means all taxes and withholdings from earned income an employer is required to make in order to make payments for FICA, FUTA, and SUTA obligations.

1.13 **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the amount offered to each Collective Member pursuant to Section 3 of this Agreement.

1.14 **Litigation**. "Litigation" shall mean *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-cv-8333 (ALC)(SN) (S.D.N.Y.).

1.15 **Named Plaintiffs**. "Named Plaintiffs" shall mean Maxcimo Scott, Jay Ensor, Matthew Medina, Eufemia Jimenez, Krystal Parker, Stacy Higgs, and Christina Jewel Gateley.

**1.16**  **Net Collective Fund**. "Net Collective Fund" shall mean the Collective Fund less Court approved service awards and settlement administration costs.

**1.17**  **Notice of Calculation**. "Notice of Calculation" shall mean the proposed Notice advising Collective Members of their estimated pro rata settlement share and their employment dates and opt-in dates on which that calculation is based, attached hereto as Exhibit A.

**1.18**  **Notice of Calculation Period**. "Notice of Calculation Period" shall mean: (1) the forty-five (45) day period[1] from the issuance of the Notice of Calculation; or (2) the thirty (30) day period from the re-issuance of the Notice of Calculation, whichever is greater, pursuant to Section 2 of this Agreement.

**1.19**  **Parties**. "Parties" shall refer to Named Plaintiffs and Defendants.

**1.20**  **Plaintiffs' Counsel**. "Plaintiffs' Counsel" shall mean Outten & Golden LLP; Shavitz Law Group, P.A.; and Fitapelli & Schaffer, LLP.

**1.21**  **Qualified Settlement Fund**. "Qualified Settlement Fund" or "QSF" shall mean the account established by the Claims Administrator from the Total Settlement Amount paid by Defendants. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will revert to Defendants and any taxes thereon will be paid by Defendants.

**1.22**  **Reserve Fund**. "Reserve Fund" shall mean the One Hundred Thousand Dollars ($100,000.00) set aside from the Net Collective Fund to cover potential errors and omissions, including disputes related to Applicable Workweeks used to calculate Individual Settlement Amounts

**1.23**  **Settlement**. The "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

**1.24**  **Settlement Administration Expenses**. "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator in effectuating the Settlement.

**1.25**  **Total Settlement Amount**. The "Total Settlement Amount" shall be the settlement amount Defendants are directed to pay by the Court in the Approval Order of up to Eight Million Dollars and Zero Cents ($8,000,000.00).

**1.26**  **Unclaimed Funds**. "Unclaimed Funds" shall mean amounts remaining in the Collective Fund six (6) months after the first or second mailing of the settlement checks to claimants, whichever is later.

---

[1]  Unless otherwise indicated, all time periods provided by this Agreement are stated in calendar days, not business days.

4869-8653-6706, v. 3

2.    **APPROVAL AND NOTICE**

2.0   **Stipulation to Certification.** The Parties stipulate for settlement purposes only, to the final certification by the Court of a collective action as to all claims encompassed by this Settlement pursuant to the FLSA for the Collective Members. If for any reason the Court does not approve this settlement or does not enter an Approval Order, the collective action certification status shall remain as it was as of the time of this Agreement.

2.1   **Retention and Duties of Claims Administrator.** The Claims Administrator shall be selected by the Parties and shall be responsible for the notice administration process, calculating settlement payments, and making distributions to Collective Members as provided herein, as well as for making any mailings and performing other services as required under this Agreement. The Claims Administrator shall have sole responsibility to compute Applicable Workweeks and Collective Periods and to resolve any disputes with Collective Members concerning the same; and determine which individuals are Collective Members, based on the Claims Administrator's review of the list of Collective Members, the Defendants' data delivered to the settlement administrator by Plaintiffs' counsel, applicable statutory period(s), and the litigation docket, including opt-in dates, Court dismissals, and tolling if any (*see* ECF No. 76). The Claims Administrator shall also be responsible for calculating and paying all appropriate taxes, including Employer Payroll Taxes and Collective Members' withholdings from the W-2 portion and excluding taxes on any interest that reverts to Defendants, and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms. The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement, and the Claims Administrator shall perform any other duties as jointly requested by the Parties or as are specified herein. All Settlement Administration Expenses shall come out of the Collective Fund. The Parties mutually selected Rust Consulting as the Claims Administrator after soliciting bids from claims administration firms, based upon quality of services and the costs of administration.

2.2   **Approval by the Court.** No more than thirty (30) days following the execution of this Agreement, Plaintiffs' Counsel will submit to the Court a Motion for an Order approving the settlement ("Approval Motion"), provided that the Approval Motion will be filed on a Friday. At least one week before filing the Approval Motion, Plaintiffs will submit it to Defendants for review and comment. In connection with the Approval Motion, Plaintiffs' Counsel will submit to the Court, among other things: (a) a proposed Notice of Calculation (to be distributed to Collective Members) which is attached as Exhibit A; and (b) a proposed Approval Order.

2.3   **Notice of Calculation**

      (A)   Within fourteen (14) days of the Approval Order, Defendants will provide the Claims Administrator and Plaintiffs' Counsel with a list of Collective Members' last known and if available: (1) address; (2) telephone numbers; (3) email addresses; and (4) social security number. On the same date, Plaintiffs' Counsel shall send the Claims Administrator the employment data produced by Defendants on July 31, 2020 and December 22, 2020 (collectively with Defendants' production

"Notice List"). If the Claims Administrator determines that any additional data are required to calculate settlement shares or otherwise discharge its duties, and such data are reasonably available, Defendants will make a supplemental production of such data by fourteen (14) days of the Claims Administrator's request unless it is impracticable to provide it within this time period.

(B)     Prior to issuing the Notice of Calculation, the Claims Administrator will update the addresses for those on the Collective List using the social security numbers provided by Defendants, the National Change of Address database and other available resources deemed suitable by the Claims Administrator.

(C)     Within twenty-eight (28) days of the Approval Order, or as soon thereafter as practicable, the Claims Administrator shall send the applicable Notice of Calculation to each Collective Member. The Notice of Calculation shall be sent via First Class United States mail, postage prepaid, electronic mail, and text message. In addition, the Claims Administrator shall create a website allowing for live submission of workweek disputes and contact information updates by Collective Members as outlined in Section 2 of this Agreement. In the same packet, the Claims Administrator will send Service Award Plaintiffs who are not Named Plaintiffs the Service Award Claim Form and General Release described in Section 3.6 of this Agreement, in the form attached as Exhibit B.

(D)     Within seventy-three (73) days after the Approval Order, Defendants will pay the Total Settlement amount into the QSF established by the Claims Administrator.

(E)     The Claims Administrator shall give the Plaintiffs' Counsel and Defendants' Counsel two (2) business days' notice before issuing the Notice of Calculation to Collective Members. The Notice of Calculation shall inform all Collective Members of their: (1) rights under this Agreement; (2) estimated Individual Settlement Amount; and (3) the dates of employment and opt-in date on which the Individual Settlement Amount is based. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Collective Members for whom the Notice of Calculation is returned by the post office as undeliverable and shall attempt re-mailings as described below.   Defendants' Counsel and Plaintiffs' Counsel have the right to make inquiries and receive any information from the Claims Administrator as is necessary to the administration of this Settlement. Plaintiffs' Counsel shall also have the right to contact Collective Members as necessary in order to effectuate this Agreement.

(F)     If any Notice of Calculation is returned as undeliverable, the Claims Administrator shall forward the undeliverable notices to any forwarding addresses provided by the U.S. Postal Service.  If no such forwarding address is provided, or if the forwarding address(es) provided return undeliverable, the Claims Administrator shall perform skip traces using the Collective Member's social security number to attempt to obtain the most recent address for such Collective Member and re-mail the Notice. The Claims Administrator shall send one (1) reminder to all Collective Members who have not updated their contact information and/or disputed the

workweeks used to calculate their Individual Settlement Amount. The reminder shall be sent within thirty (30) days after the initial mailing of the Notice of Calculation. The reminder postcard shall be sent by mail, via First Class United States mail, postage prepaid, text message, and electronic mail.

(G)     Collective Members shall have forty-five (45) days from the issuance of the Notice of Calculation to update contact information and/or dispute workweeks used to determine their Individual Settlement Amount. Any Notice of Calculation reissued by the Claims Administrator shall provide the Collective Member with thirty (30) days from the reissuance of the Notice of Calculation or the original forty-five (45) day period, whichever is longer, to update contact information and/or dispute workweeks used to determine their Individual Settlement Amount.

(H)     During the Notice of Calculation Period, Collective Members may submit documentation challenging the Applicable Workweeks used to determine their Individual Settlement Amount. Defendants' records shall be presumed to be accurate. Any disputes regarding workweeks used to determine a Collective Member's Individual Settlement Amount will be resolved by the Claims Administrator who will be the final decision-maker in resolving workweek disputes.

(I)     Seven (7) days after the expiration of the Notice of Calculation Period for all mailings and re-issuances, the Claims Administrator shall prepare a final calculation of Collective Members' pro rata settlement share as set forth in Section 3.4(A) and send checks to Collective Members using the best address determined by the Claims Administrator or an updated address provided to the Claims Administrator by the Collective Member or Plaintiffs' Counsel during the Notice of Calculation Period.

(J)     For good cause shown, after the expiration of the Notice of Calculation Period and no later than one hundred eighty (180) days after the issuance of checks, Collective Members may submit disputes and/or self-identify as Collective Members and seek a settlement share from the Reserve Fund based on the same pro-rata workweek amount apportioned to other Collective Members.

2.4     **Effect of Failure to Grant Approval**.  In the event the Court fails to approve this Agreement, the Parties jointly agree to (a) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement and/or Settlement Agreement, and/or (b) seek reconsideration or appellate review of the decision denying approval of the Settlement and/or Settlement Agreement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, the Litigation will proceed on the date the reconsideration or appellate review is denied, or the Court issues an order failing to approve the settlement or modification, whichever is later, as if no Settlement Agreement had been entered.  In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose.

3.    **SETTLEMENT TERMS**

3.1   **Settlement Payment.**

(A)   Defendants agree to pay a maximum of Eight Million Dollars ($8,000,000.00), which shall resolve and satisfy all monetary obligations under this Agreement, including all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to Collective Members, the Employer Payroll Taxes, and all other applicable taxes, interest, and service awards. The Collective Fund, constituting One Million Nine Hundred Thousand Dollars ($1,900,000.00) of the Total Settlement Amount, shall be allocated to payments to Collective Members, approved service awards, Employer Payroll Taxes associated with W-2 portions of Collective Members' settlement payments, and settlement administration costs. The remainder of the Total Settlement Amount shall be allocated to Court-approved attorneys' fees, costs, and expenses and shall not exceed Six Million One Hundred Thousand Dollars ($6,100,000). Defendants shall only be required to pay those attorneys' fees, costs, and expenses approved by the Court.

(B)   Within seventy-three (73) days after the Court enters the Approval Order, Defendants shall deposit into the QSF Account the Total Settlement Amount.

(C)   Within eighty-three (83) days following the Court's Approval Order, the Claims Administrator will distribute the money in the QSF Account by making the following payments:

(1)   Paying Plaintiffs' Counsel Court-approved attorneys' fees as described in Section 3.2.

(2)   Reimbursing Plaintiffs' Counsel for all costs and expenses approved by the Court as described in Section 3.2.

(3)   Paying the Claims Administrator as described in Section 2.1.

(4)   Paying service awards in the amounts described in Section 3.3.

(5)   Paying Collective Members their Individual Settlement Amounts as described in Section 3.4.

(D)   The Parties agree that the QSF Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq.*, and will be administered by the Claims Administrator as such. With respect to the QSF Account, the Claims Administrator shall:  (1) calculate, withhold, remit and report each Collective Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes) and Employer Payroll

Taxes, and indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the QSF Account; and (3) satisfy out of the QSF Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the QSF Account and the performance of its duties and functions as described in this Agreement. The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF Account.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    Plaintiffs' Counsel shall petition the Court for attorneys' fees and reimbursement of reasonable litigation costs and expenses from the Total Settlement Fund. Plaintiffs' Counsel shall not seek more than Six Million One Hundred Thousand Dollars ($6,100,000) in fees, costs and expenses. Defendants will not oppose such applications provided that Plaintiffs' Counsel has abided by the terms of this Agreement. Defendants shall have no additional liability for attorneys' fees and costs relating to the Litigation, the Settlement, or any claims released by this Settlement. Defendants will pay fees, costs, and expenses approved by the Court, up to six million one hundred thousand dollars ($6,100,000), as part of the Total Settlement Amount.

(B)    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement, affect its validity or any of its terms, or otherwise affect the Court's ruling on the Motion for Judgment and Approval. Plaintiffs' Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs. In the event Plaintiffs' Counsel appeals a determination of the Court regarding the application for attorneys' fees and costs, such appeal shall not affect the remainder of this Agreement. The Claims Administrator shall make all distributions required by Section 3.4 aside from the amount sought by Plaintiffs' Counsel. Any additional administration costs caused by such an appeal shall be borne by Plaintiffs' Counsel. In the event that the Court (or any appellate court) awards attorneys' fees and costs in amounts less than those requested, only the awarded amounts will be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.

**3.3    Service Awards.** Plaintiffs' Counsel will apply to the Court for the following service awards from the Collective Fund for services rendered to Collective: service awards in the amount of Fifteen Thousand Dollars ($15,000) to each of the Named Plaintiffs, Maxcimo Scott, Jay Ensor, Matthew Medina, Eufemia Jimenez, Krystal Parker, Stacy

{04901054 / 1}9

Higgs, and Christina Jewel Gateley; and service awards of up to Five Hundred Dollars ($500.00) to the 64 Opt-In Plaintiffs who appeared for a deposition (collectively with the Named Plaintiffs "Service Award Plaintiffs"). Defendants will not oppose such application provided it is made in accordance with the terms of this Agreement. The outcome of the Court's ruling on the application for a service award shall not terminate this Agreement, affect its validity or any of its terms, or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. The amount of service awards sought but not awarded shall remain in the Collective Fund.

**3.4**     **Distribution of Payments.**

(A)     The Net Collective Fund shall be the amount of money remaining from the Collective Fund after deducting (a) service awards approved by the Court pursuant to Section 3.3; and (b) amounts allocated for the Claims Administrator pursuant to Section 2.1. The Net Collective Fund shall be allocated as follows:

   (1)     Each Collective Member will receive one (1) point for each Applicable Workweek he or she worked during Collective Period as calculated by the Claims Administrator.

   (2)     The Net Collective Fund allocated to Collective Members will be divided by the aggregate number of points accrued by all of the Collective Members ("Collective Fund Point Value").

   (3)     Each Collective Member's total points will be multiplied by the Collective Fund Point Value to determine his or her Individual Settlement Amount.

   (4)     Employer Payroll Taxes shall be paid out the Net Collective Fund and each Collective Member's above-calculated allocation shall be reduced accordingly on a pro rata basis to account for payment of such Employer Payroll Taxes.

   (5)     No Collective Member will receive less than Five Hundred Dollars ($500.00) unless he or she did not work as an Apprentice at any point.

(B)     Defendants, Plaintiffs' Counsel, and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator and Defendants to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.1(D) and 3.5.

(C)     The Claims Administrator will calculate the amounts due to each Collective Member as the Individual Settlement Amount and issue checks payable to Collective Members.

(D)     Collective Members will have one-hundred and eighty (180) days after each check date to redeem or cash their settlement payments ("check cashing period").

(E)     Sixty (60) days after the initial distribution of settlement checks to Collective Members, the Claims Administrator will provide Plaintiffs' Counsel with a list of any Collective Members who have not cashed their checks.

(F)     After the expiration of the initial check cashing period, the Claims Administrator will inform the Parties of any amounts remaining in the Reserve Fund and the amount of any other unclaimed funds, and distribute on a pro rata basis the remaining amounts to Collective Members who previously cashed their settlement checks. Any unclaimed amounts remaining in the Net Collective Fund six (6) months after the first or second mailing of settlement checks to Collective Members, whichever is later, shall be returned to Defendants, along with any interest accrued on and any other amounts remaining in the QSF.

**3.5     Taxability of Settlement Payments.**

(A)     For tax purposes, the payments to Service Award Plaintiffs pursuant to Section 3.3 shall be treated as deemed appropriate by the Claims Administrator.

(B)     For tax purposes, the payments to Plaintiffs and Collective Members pursuant to Section 3.5 shall be allocated as follows: unpaid wages (50% of each settlement payment) and liquidated damages and/or interest (50% of each settlement payment).

(C)     Plaintiffs and Collective Members will be exclusively responsible for their own portion of payroll and income taxes. Defendants shall cooperate with the Claims Administrator to timely arrive at an amount equal to the Employer Payroll Taxes due that are traditionally borne by employers, with respect to the amounts treated as wages, which amounts shall be withheld by the Claims Administrator from the applicable wage payments as set forth in Section 3.4(A)(4). The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to Employer Payroll Taxes and all amounts payable to Collective Members required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF Account.

(D)     Payments treated as wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the FICA tax, and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099.

(E)     Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Claims Administrator on the applicable IRS Form 1099 as required by the Code and shall be made without withholding. Plaintiffs' Counsel shall provide the Claims Administrator with a duly completed Form W-9.

(F)     The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement and shall report the payments in accordance with applicable law.

## 3.6    Release

(A)     **Release of Claims by Collective Members.**  Each Collective Member who cashes a settlement check, shall fully release and discharge Defendants, including their current and former parents, subsidiaries, affiliates, and each of their respective directors, officers, employees, agents, successors and assigns (collectively "Releasees"), from all claims contained in the Complaint and any amendments thereto, and any additional wage and hour claims that could have been brought based on the facts alleged in the Complaint and any amendments thereto, that accrued during their employment as Apprentices during the statutory period applicable to their claim through the date of the Approval Order.

(B)     **General Release of Claims by Service Award Plaintiffs.**  In addition, to the maximum extent permitted by law, by accepting and cashing their service award as provided for in Section 3.3, the Service Award Plaintiffs generally release Defendant and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Defendants or Releasees the Service Award Plaintiffs and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that he or she has or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to relating to his or her employment or termination of employment, that accrued or accrue prior to the date of the Approval Order; provided, however, that Service Award Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Service Award Plaintiffs do not release any claim for breach of the terms of the Agreement.

(C)     Service Award Plaintiffs who are also Named Plaintiffs in this action will receive a separate General Release of all Claims (including known and unknown claims) against Defendants. The general release will be agreed to by the parties and provided to Service Award Named Plaintiffs at the time this Agreement is executed.

(D)     Service Award Plaintiffs who are not Named Plaintiffs will receive a service award Claim Form and General Release with the Notice of Calculation, with the mailed copy containing a self-addressed, stamped return envelope, and an electronic submission option. To receive their service award, Service Award Collective Members will need to execute and return the Claim Form within the forty-five (45)

day notice period. A Service Award Collective Member who does not return the Claim Form and General Release will be subject to the terms of the release in Section 3.6(A) of this Agreement.

(E)    Nothing in this Release shall prohibit or restrict Service Award Plaintiffs or Collective Members from: (i) providing information to or cooperating with Congress, the NLRB, the EEOC, or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"); (ii) reporting to Defendant's management or directors regarding conduct the employee believes to be in violation of the law or prohibits or restricts the employee from providing information to or cooperating with any Government Agencies; (iii) communicating with any Government Agencies or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above.

(F)    Service Award Plaintiffs who do not cash their settlement checks will not be bound by the Settlement and the Release in Section 3.6(B).

3.7    **No Assignment.** Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

3.8    **Non-Admission.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Named Plaintiffs and/or the Collective Members, individually or collectively and expressly deny any and all such liability. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Collective Members. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Settlement Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce the terms of this Settlement Agreement.

3.9    **Full Satisfaction of Fees and Costs.** Except as provided in this Agreement, upon payment of the attorneys' fees, and costs approved by the Court, Plaintiffs' Counsel, the Named Plaintiffs, and the Collective Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against Defendants

for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of Plaintiffs' or Collective Members or any other related parties in the Litigation. Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, and costs associated with Plaintiffs' Counsel's representation in the Litigation.

4.   **PUBLICITY**

Counsel for the Parties agree that they will not in any manner publicize the terms of this Agreement, which includes notifying any member of the media regarding the terms and conditions of the settlement or posting or disseminating the terms and conditions of the settlement on any social media (including Facebook, Law 360, LinkedIn, SnapChat, TikTok, Instagram, Twitter or similar media outlets (collectively, the "Media")). For avoidance of doubt, this provision shall not serve as a bar to Named Plaintiffs or Service Award Plaintiffs from making truthful statements to any source about their experience litigating the lawsuit or the underlying allegations.

5.   **MISCELLANEOUS**

(A)   **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. Furthermore, the Parties agree to cooperate through settlement approval and administration of the settlement to expedite resolution of claims. The Parties specifically agree to cooperate in the filing of the necessary documents in the United States Supreme Court, No. 20-257, and in the Second Circuit Court of Appeals, Nos. 17-2208 and 18-359, to hold the pending petition for certiorari in abeyance and return jurisdiction to the Southern District of New York for purposes of approving the settlement agreement contemplated herein.

(B)   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)   **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Service Award Plaintiffs and Collective Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(D)   **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Settlement Agreement at arms' length. All terms and conditions of this Settlement Agreement in the exact form set forth in this Settlement Agreement are material to this Settlement Agreement and have been

relied upon by the Parties in entering into this Settlement Agreement, unless otherwise expressly stated.

(E) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(F) **Construction.** The determination of the terms and conditions of this Settlement Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Settlement Agreement, and therefore the terms and conditions of this Settlement Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(G) **Blue Penciling/Severability.** If any provision of this Settlement Agreement, other than the release of claims set forth in Section 3, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Settlement Agreement will remain in full force and effect. If the release of claims is found to be void, voidable, unlawful, or unenforceable, Defendants' obligations herein, including but not limited to their obligation to fund the settlement as set forth in Section 3.1, shall be entirely null, void and of no effect.

(H) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(I) **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(J) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(K) **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution by Defendants' authorized representative and any one of the Named Plaintiffs. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument. The Parties hereby represent that the

signatory executing this Settlement Agreement on behalf of such Party is fully authorized to execute this Settlement Agreement on behalf of such Party and to bind such Party hereto to the terms and conditions hereof.

(L)     **Facsimile/Electronic Signatures.**   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(M)    **Extensions of Time.**  If any deadlines related to this Settlement cannot be met, Plaintiffs' Counsel and counsel for Defendants shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(N)     The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as Releasees in Section 3.6 of this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**NAMED PLAINTIFFS:**

DATED: Dec 6, 2021

By:   Maxcimo Scott

DATED: _____

By:   Jay Ensor

DATED: _____

By:   Matthew Medina

DATED: _____

By:   Eufemia Jimenez

DATED: _____

By:   Krystal Parker

DATED: _____

By:   Stacy Higgs

DATED: _____

By:   Christina Jewel Gateley

**DEFENDANTS:**

DATED: _____

By:   _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____

By:   _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

4869-8653-6706, v. 3

**NAMED PLAINTIFFS:**

DATED: _____

By: _____
Maxcimo Scott

DATED: 12/02/2021 _____

By: _____
Jay Ensor

DATED: _____

By: _____
Matthew Medina

DATED: _____

By: _____
Eufemia Jimenez

DATED: _____

By: _____
Krystal Parker

DATED: _____

By: _____
Stacy Higgs

DATED: _____

By: _____
Christina Jewel Gateley

**DEFENDANTS:**

DATED: _____

By: _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____

By: _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

**NAMED PLAINTIFFS:**

DATED: _____      By:  _____
                                 Maxcimo Scott

DATED: _____      By:  _____
                                 Jay Ensor

DATED: __12/02/2021__       By:  _____
                                 Matthew Medina

DATED: _____      By:  _____
                                 Eufemia Jimenez

DATED: _____      By:  _____
                                 Krystal Parker

DATED: _____      By:  _____
                                 Stacy Higgs

DATED: _____      By:  _____
                                 Christina Jewel Gateley

**DEFENDANTS:**

DATED: _____      By:  _____
                                 Name:_____
                                 Title:_____
                                 On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____      By:  _____
                                 Name:_____
                                 Title:_____
                                 On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

**NAMED PLAINTIFFS:**

DATED: _____

By:   Maxcimo Scott
_____

DATED: _____

By:   Jay Ensor
_____

DATED: _____

By:   Matthew Medina
_____

DATED: ___12/01/2021___

By:   Eufemia Jimenez
_____

DATED: _____

By:   Krystal Parker
_____

DATED: _____

By:   Stacy Higgs
_____

DATED: _____

By:   Christina Jewel Gateley
_____

**DEFENDANTS:**

DATED: _____

By: _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____

By: _____
Name:_____
Title:_____
On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

**NAMED PLAINTIFFS:**

DATED: _____          By: _____
                                     Maxcimo Scott

DATED: _____          By: _____
                                     Jay Ensor

DATED: _____          By: _____
                                     Matthew Medina

DATED: _____          By: _____
                                     Eufemia Jimenez

DATED: Dec 6, 2021              *Krystal Parker*
                                Krystal Parker (Dec 6, 2021 14:12 EST)
                                By: _____
                                     Krystal Parker

DATED: _____          By: _____
                                     Stacy Higgs

DATED: _____          By: _____
                                     Christina Jewel Gateley

**DEFENDANTS:**

DATED: _____          By: _____
                                     Name:_____
                                     Title:_____
                                     On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____          By: _____
                                     Name:_____
                                     Title:_____
                                     On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

**NAMED PLAINTIFFS:**

DATED: _____          By:    Maxcimo Scott
                                        _____

DATED: _____          By:    Jay Ensor
                                        _____

DATED: _____          By:    Matthew Medina
                                        _____

DATED: _____          By:    Eufemia Jimenez
                                        _____

DATED: _____          By:    Krystal Parker
                                        _____

DATED: 12/02/2021               By:    Stacy Higgs
                                        _____

DATED: _____          By:    Christina Jewel Gateley
                                        _____

**DEFENDANTS:**

DATED: _____          By:    _____
                                        Name:_____
                                        Title:_____
                                        On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: _____          By:    _____
                                        Name:_____
                                        Title:_____
                                        On behalf of Defendant Chipotle Services, LLC

**NAMED PLAINTIFFS:**

DATED: _____

By: _____

Maxcimo Scott


DATED: _____

By: _____

Jay Ensor


DATED: _____

By: _____

Matthew Medina


DATED: _____

By: _____

Eufemia Jimenez


DATED: _____

By: _____

Krystal Parker


DATED: _____

By: _____

Stacy Higgs


DATED: __12/02/2021__

By: _____

Christina Jewel Gateley


**DEFENDANTS:**

DATED: _____

By: _____

Name:_____

Title:_____

On behalf of Defendant Chipotle Mexican Grill, Inc.


DATED: _____

By: _____

Name:_____

Title:_____

On behalf of Defendant Chipotle Services, LLC


{04901054 / 1}17

**NAMED PLAINTIFFS:**

DATED: _____        By:    _____

                                      Maxcimo Scott

DATED: _____        By:    _____

                                      Jay Ensor

DATED: _____        By:    _____

                                      Matthew Medina

DATED: _____        By:    _____

                                      Eufemia Jimenez

DATED: _____        By:    _____

                                      Krystal Parker

DATED: _____        By:    _____

                                      Stacy Higgs

DATED: _____        By:    _____

                                      Christina Jewel Gateley

**DEFENDANTS:**

DATED: Dec 7, 2021            By:    *Michael McGawn*
                                     Michael McGawn (Dec 7, 2021 13:51 PST)
                                     _____
                                     Name: Michael McGawn
                                     Title: Deputy General Counsel - Operations
                                     On behalf of Defendant Chipotle Mexican Grill, Inc.

DATED: Dec 7, 2021            By:    *Michael McGawn*
                                     Michael McGawn (Dec 7, 2021 13:51 PST)
                                     _____
                                     Name: Michael McGawn
                                     Title: Deputy General Counsel - Operations
                                     On behalf of Defendant Chipotle Services, LLC

{04901054 / 1}17

# Maxcimo Scott Revised Settlement Agreement 4870-3005-9013 v.1

Final Audit Report                                        2021-12-07

| | |
|---|---|
| Created: | 2021-12-07 |
| By: | Hayley Wells (hwells@martensonlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA0Pc8B0tZJW5FQJWL_-mIgBiNh_WiQ-OY |

## "Maxcimo Scott Revised Settlement Agreement 4870-3005-9013 v.1" History

📄 Document created by Hayley Wells (hwells@martensonlaw.com)
2021-12-07 - 6:47:57 PM GMT- IP address: 99.76.174.177

📧 Document emailed to Michael McGawn (mmcgawn@chipotle.com) for signature
2021-12-07 - 6:49:12 PM GMT

📄 Email viewed by Michael McGawn (mmcgawn@chipotle.com)
2021-12-07 - 9:50:09 PM GMT- IP address: 104.129.198.230

🖋 Document e-signed by Michael McGawn (mmcgawn@chipotle.com)
Signature Date: 2021-12-07 - 9:51:26 PM GMT - Time Source: server- IP address: 104.129.198.230

✅ Agreement completed.
2021-12-07 - 9:51:26 PM GMT

Adobe Sign